UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDNA TAJONERA, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF AVELINO TAJONERA, DECEASED, AND AS NEXT FRIEND OF MAVERICK TAJONERA AND EDRIAN TAJONERA, MINOR CHILDREN, and JADE TAJONERA<br>　　　　Plaintiffs,<br><br>　　v.<br><br>BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC<br><br>　　　　Defendants. | Civil Action No<br><br>**PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**I. PARTIES**

1.　Plaintiffs are Edna Tajonera, individually and on behalf of the estate of Avelino Tajonera, and as next friend of Maverick and Edrian Tajonera, minor children, and Jade Tajonera. The Plaintiffs are citizens of the Philippines. Edna Tajonera is the spouse of Avelino Tajonera. Maverick and Edrian Tajonera are minor children of Avelino Tajonera. Jade Tajonera is the daughter of Avelino Tajonera.

2.　Defendant Black Elk Energy Offshore Operations, LLC is a Texas corporation with its headquarters located in Houston, Texas. Its headquarters are located at 11451 Katy Freeway, Suite 500, Houston, Texas 77079.

**II. JURISDICTION AND VENUE**

3.　Avelino Tajonera was on the Black Elk Energy Offshore Operations LLC West Delta 32 Block platform ("the platform") in the Gulf of Mexico when he was critically injured by an explosion and fire on the platform. Mr. Tajonera was evacuated to a hospital in New Orleans,

1

Louisiana, where he died from the burns and injuries he suffered while working on the platform. The platform is located in the Gulf of Mexico, approximately 17 miles Southeast of Grand Isle, Louisiana, in 52 feet of water. The platform is owned and operated by Black Elk Energy Offshore Operations, LLC.

4.      The platform is a fixed platform located on the continental shelf off the coast of Louisiana and is attached to the seabed.  The platform is an artificial island pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. 1301 ("OCSLA").

5.      Upon information and belief, at the time of the explosion Avelino Tajonera was on the platform and was not engaged in a traditional maritime activity.

6.      Pursuant to 43 U.S.C. 1333 (2)(A), state laws are declared to be the law of the United States for fixed structures that would be within the area of the state if its boundaries were extended seaward to the outer margin of the continental shelf.  Consequently, this matter is governed by the State Law of Louisiana.

7.      While Louisiana civil law governs this matter, this Court has jurisdiction over this action pursuant to 14 U.S.C. 1333 (2)(A) (giving federal courts jurisdiction over OCSLA claims while applying state law).

8.      Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.  Venue is also proper in this District pursuant to 18 U.S.C. 1965(a) because Defendant has agents and/or transacts affairs in the Eastern District of Louisiana.

## III.  FACTUAL BACKGROUND

A.  **Black Elk Energy**

9. Black Elk Energy is an oil and gas company headquartered in Houston, Texas. According to Black Elk's CEO and President, John Hoffman, Black Elk is "part of an evolution in the Gulf of Mexico where [older] properties become unimportant, if you will, to the larger companies…and we go into these properties and continue to get additional reserves."  Its business model involves reworking old wells to make them more productive while plugging those that are no longer economically viable.  Since its founding in 2007, Black Elk expanded rapidly.  Black Elk acquired 98 platforms in the Gulf of Mexico in 2011 and its revenues increased to $339 million from $18 million two years earlier.

10. Black Elk was struggling to execute its strategy of wringing oil and gas from aging wells in the Gulf of Mexico at the time of the November 16, 2012 explosion on the West Delta 32 platform.  Black Elk faced difficulties ranging from operating losses, to management turmoil, to safety violations.

11. In September of 2012, Standard & Poor's Corp. downgraded Black Elk's notes to B-minus, citing the company's weak liquidity.  By the end of September 2012, Black Elk's credit lines were almost fully drawn and it had fallen out of compliance with a debt covenant.  In the third quarter of 2012, Black Elk's oil and gas production fell by about 13%, its revenues plunged 60%, and its operating losses topped $25 million.  The company cut costs related to drilling wells and maintaining platforms during the quarter.  Its November 13, 2012 Form 10-Q, filed with the SEC, cited initiatives that helped lower operating expenses by 7% from a year earlier.

12. Black Elk has a history of safety problems.  Since 2010, Black Elk has been cited 315 times for safety violations.  Of these 315 violations, the Bureau of Safety and Environmental

Enforcement labeled 157 of them as "severe or threatening." Twelve of the violations were deemed severe or threatening to the safety of personnel or the environment and required shut-ins of entire facilities until the violations were corrected. In October of 2012 alone, Black Elk was cited for 45 incidents of non-compliance.

13. The BSEE issued a $307,000 civil penalty fine to Black Elk for a 2010 incident of non-compliance. The penalty focused on a Surface-controlled Subsurface Safety Valve (SCSSV) that was not tested for leakage at the required interval of six months. When the SCSSV was tested, it was found leaking. The SCSSV was not repaired or replaced for 117 days.

14. In a November 21, 2012 letter, the BSEE proclaimed that the operating performance of Black Elk must be improved immediately. Failure to improve performance will subject Black Elk to additional enforcement actions including referral to the Bureau of Ocean Energy Management for revocation of Black Elk's status as an operator.

15. The BSEE has instructed Black Elk to keep facilities that are shut-in in such status until it provides the BSEE with documentation of corrective actions taken to safely return each facility to operations status. Black Elk has also been instructed to cease "hot work" on its facilities until it demonstrates that steps have been taken to improve hazard identification, training and oversight, and until a safety manager is in place whose responsibility it will be to improve hazard identification and training.

16. The BSEE stated, "Our determination of unacceptable performance follows numerous troubling safety incidents involving Black Elk facilities," including the November 16th explosion and the issuance of 45 incidents of non-compliance in October of 2012. The BSEE further cited a "number of significant safety violations that demonstrate a disregard for the safety of

personnel," such as an October 2011 incident involving the use of an acid-based chemical that resulted in the hospitalization of six workers.

**B.     The Black Elk Platform Explosion**

17.     On November 16, 2012, at approximately 8:45 a.m. CST, an explosion and fire occurred on the Black Elk Energy Offshore Operations LLC West Delta 32 Block platform, located in the Gulf of Mexico approximately 17 miles Southeast of Grand Isle, Louisiana, in 52 feet of water. The owner and operator of the platform is Black Elk Energy Offshore Operations, LLC.

18.     The platform is a fixed production platform and had been shut-in since Mid-August of 2012. According to Black Elk CEO and President John Hoffman, the platform was scheduled to be restarted on November 25, 2012. The platform was shut in while a pipeline from the platform to the shore was being replaced. Hoffman described the work being performed as general maintenance and upgrades on the water treatment facility. According to Hoffman, workers were cutting a line and installing a valve when oil vapor contained in one or more tanks was ignited and exploded.

19.     The force of the explosion blew three large tanks hundreds of feet into the air. Two tanks landed in the Gulf of Mexico. The other landed on a large industrial crane on the platform, bending the boom of the crane nearly ninety degrees before crashing to the platform. The force and heat from the explosion melted console equipment and warped and bent metal floors and I-beams.

20.     The explosion was caused by no fault of Avelino Tajonera and was caused solely by the negligence of the Defendants as set forth more fully herein.

21.     After the explosion, two workers were reported missing and seven workers were transported to hospitals. The body of missing worker Ellroy Corporal was recovered from the

sea floor underneath the platform on November 17, 2012. The body of missing worker Jerome Malagapo was recovered on November 28, 2012 and subsequently identified by dental records.

22.     Avelino Tajonera suffered severe burns and other injuries as a result of the fire and explosion and was transported to the hospital in New Orleans, Louisiana. After suffering for seven days, Mr. Tajonera died of his injuries on November 23, 2012. The Certification of Death states Tajonera's cause of death to be "Complications due to thermal injuries secondary to rig explosion on 11/16/12," and notes that the location of injury was "West Delta 32 Federal Waters, Grand Isle, LA 70358 United States." The Certification describes Tajonera as a "victim of rig explosion."

23.     At the time of the explosion, Avelino Tajonera was on the platform. The platform is a fixed production platform for the production of minerals and exists on the outer continental shelf. At the time of the explosion, Mr. Tajonera was not engaged in maritime activities but was, according to Black Elk, engaged in a construction project on the platform.

## IV.  CAUSES OF ACTION

**A.     Application of OCSLA**

24.     Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

25.     This action is governed by 43 U.S.C. 1301, the Outer Continental Shelf Lands Act, because the explosion and fire took place on a fixed platform on the continental shelf, maritime law does not apply of its own force, and the applicable laws of the State of Louisiana are not inconsistent with Federal law. Consequently, the law of the State of Louisiana applies as surrogate federal law under OCSLA.

**B.     Cause of Action – Survival Action for Negligence Pursuant to La. Civ. C. Art. 2315.1**

26.     Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

27.     Pursuant to La. Civ. C. Art. 2315.1, Edna Tajonera, surviving spouse of Avelino Tajonera, Jade Tajonera, a child of Avelino Tajonera, and Edna Tajonera as next friend of Maverick and Edrian Tajonera, children of Avelino Tajonera, bring claims for all damages for injury to Avelino Tajonera.

28.     The elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by Avelino Tajonera up to the moment of death.  If there is even a scintilla of evidence showing any pain or suffering by a victim prior to his death, damages are warranted in a survival action.

29.     It is undisputed that Avelino Tajonera endured incomprehensible pain and suffering as a result of burns sustained as a result of the explosion.  Mr. Tajonera suffered for seven days, in excruciating pain, before dying from his burns.  Mr. Tajonera also lost earnings and suffered other economic damages prior to his death.

**C.     Cause of Action – Wrongful Death Pursuant to La. Civ. C. Art. 2315.2**

30.     Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

31.     Pursuant to La. Civ. C. Art. 2315.2, Edna Tajonera, surviving spouse of Avelino Tajonera, Jade Tajonera, a child of Avelino Tajonera, and Edna Tajonera as next friend of Maverick and Edrian Tajonera, children of Avelino Tajonera, bring claims for all damages sustained as a result of the death of Avelino Tajonera.

32.      La. Civ. C. Art 2315.2 grants to designated beneficiaries the right to recover from a tortfeasor such damages as the beneficiaries have suffered if a person dies as a result of a tort. The wrongful death action is intended to compensate the beneficiaries for compensable injuries

suffered from the moment of death and thereafter. Avelino Tajonera died as a result of the negligence and gross negligence of the Defendant and the Plaintiffs have suffered damages as a result.

**D.     Cause of Action – Negligence Pursuant to La. Civ. C. Art. 2315 & 2316**

33.    Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

34.    The conduct of the Defendant created a dangerous condition on Black Elk Energy Offshore Operations LLC West Delta 32 Block platform. The Defendant's actions and omissions were the cause of the explosion, fire, and injuries to Avelino Tajonera.

35.    According to Black Elk CEO John Hoffman, the explosion occurred as a result of cutting into a pipe which was connected to tanks containing oil and/or gas vapor. The pipelines and tanks should have been depressurized, purged, and filled with an inert gas prior to any construction work on the lines. Depressurizing and purging the lines and tanks and providing hazard identification, training, and oversight to workers is the responsibility of the owner/operator, Black Elk and Avelino Tajonera's employer, Grand Isle Shipyards. Defendant's failure to perform these responsibilities, among others, caused the explosion and the death of Mr. Tajonera.

36.    Defendant owed a duty of care to the Plaintiff to provide a safe working environment, hazard identification, training, oversight, safety management procedures, proper supervision, sufficient personnel, and to exercise due care and caution. Defendant failed to adequately brief, instruct, and direct Tajonera on the Black Elk platform. Defendant breached its duties to Avelino Tajonera and the breach caused injury and death to Avelino Tajonera. As a result of his injury and death, Avelino Tajonera and his wife and children have suffered damages.

### E. Cause of Action – Strict Liability Pursuant to La. Civ. C. Art. 2317.1

37. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

38. The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. Civ. C. Art. 2317.1.

39. Black Elk Energy Offshore Operations, LLC is the owner of the West Delta 32 platform. That platform contained defects which presented an unreasonable risk of harm to workers on the platform, including Avelino Tajonera. Among those defects were pipelines and tanks which had not been properly purged prior to construction work. Those defects caused explosion, fire, and injuries to Mr. Tajonera. Black Elk knew, or in the exercise of reasonable care should have known, of the defects which caused the explosion. Black Elk failed to exercise reasonable care which would have prevented the explosion.

### F. Gross Negligence

40. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

41. La. Civ. C. Art. 3546 provides that a Louisiana court can award punitive damages if two of three criteria are met: (1) punitive damages are authorized by the state where the injury-causing conduct occurred; and/or (2) punitive damages are authorized by the state where the injury occurred; and/or (3) punitive damages are authorized by the state where the defendant is domiciled.

42. Black Elk is headquartered and domiciled in Houston, Texas. Conduct that caused these injuries, including but not limited to Black Elk's decisions regarding safety policies, procedures,

and protocol, occurred at its Houston, Texas headquarters. In Texas, corporate safety policies, or the lack of them, can serve as the basis for a gross negligence finding, as can failure to supervise employees, vice principals, and corporate operations. Louisiana law authorizes this Court to apply Texas exemplary damages law under La. Civ. C. Art. 3546.

43. Under Texas Law, Defendant is liable for exemplary damages for gross negligence pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a)(3). Avelino Tajonera's death resulted from Defendant's willful acts or omissions or from Defendant's gross negligence, which also entitles Avelino Tajonera's spouse and children to exemplary damages under Texas Constitution art. XVI, § 26.

44. The acts and omissions of Defendant involved an extreme degree of risk, considering the probability and magnitude of harm to others, and Defendant had actual, subjective awareness of the risks but proceeded with conscious indifference to the rights, safety, and welfare of others.

45. Application of Texas law is supported by La. Civ. C. Art. 3543, which provides that issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for another standard of conduct.

46. Application of Texas law is further supported by La. Civ. C. Art. 3547, which provides that issues of delictual obligations are governed by the law of the state whose policies would be more seriously impaired if, under the principles of La. Civ. C. Art. 3542, its law were not applied to the particular issue. Failure to apply the law of Texas would more seriously impair the policies of the State of Texas. Exemplary damages are a remedy enshrined in the Texas Constitution. Application of Texas law is supported by Texas' contacts to the parties and events giving rise to the injury, the place of conduct, the domicile, residence and place of business of

the parties, as well as the policies of deterring wrongful conduct and repairing the consequences of injurious acts.

## V. DAMAGES

47. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

48. Defendant proximately caused injury and death to Avelino Tajonera, which resulted in the following damages to the Plaintiffs:

The estate of Avelino Tajonera:

a. Physical pain in the past.

b. Mental anguish in the past.

c. Disfigurement in the past.

d. Physical impairment in the past.

e. Medical expenses in the past.

f. Loss of earning capacity in the past and future.

g. Loss of consortium in the past.

h. Exemplary & Punitive damages.

Edna Tajonera, Jade Tajonera, Maverick Tajonera, and Edrian Tajonera:

a. Loss of companionship and guidance in the past and future.

b. Mental anguish in the past and future.

c. Loss of earning capacity in the past and future.

d. Loss of consortium in the past and future.

e. Loss of household services in the past and future.

f. Exemplary and Punitive damages.

## VI. PRAYER

49. For these reasons, Plaintiffs ask for judgment against Defendant for the following:

    a.      Actual damages;

    b.      Exemplary damages;

    c.      Pre-judgment and post-judgment interest;

    d.      Costs of suit;

    e.      All other relief to which they may be entitled or which the Court deems appropriate.

## VII.  JURY TRIAL DEMAND

50.    Plaintiffs demand a trial by jury as to all claims.

Respectfully submitted,

/s/ *Joseph C. Peiffer*
Joseph C. Peiffer (LA Bar No. 26459)
Loretta G. Mince (LA Bar No. 25796)
Jeanette A. Donnelly (LA Bar No. 33806)
FISHMAN HAYGOOD PHELPS
WALMSLEY WILLIS & SWANSON, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jpeiffer@fishmanhaygood.com
lmince@fishmanhaygood.com
jdonnelly@fishmanhaygood.com

Peter B. Schneider
Trial Attorney (*pro hac vice pending*)
Ryan R. C. Hicks (*pro hac vice pending*)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 1100
Houston, Texas  77098
Telephone: (713) 338-2560
Facsimile: (866) 505-8036
pschneider@schneiderwallace.com
rhicks@schneiderwallace.com

*Attorneys for Plaintiffs*