UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDNA TAJONERA, et al.                            CIVIL ACTION

VERSUS                                           NO. 13-0366
                                                   c/w 13-0550, 13-5137, 13-2496,
                                                   13-5508, 13-6022, 13-6099, and
                                                   13-641

BLACK ELK ENERGY OFFSHORE OPERATIONS,            SECTION: "G"(5)
L.L.C., et al.

**ORDER**

This litigation arises out of an explosion that occurred on November 16, 2012 on the Black

Elk Energy West Delta 32 Block Platform, located in the Gulf of Mexico approximately 17 miles

southeast of Grand Isle, Louisiana. Before the Court is Grand Isle Shipyard, Inc.'s ("Grand Isle")

Motion for Partial Summary Judgment, wherein Grand Isle "moves this Court for Partial Summary

Judgment holding that Louisiana law applies to the Master Service Agreement between Black Elk

Energy, LLC and [Grand Isle] and dismissing the claims of Wood Group USA, Inc., Compass

Engineering and Consultants, LLC, and Shamrock Management, LLC for contractual defense and

indemnity, to the extent any of these parties are at fault in this matter."[1] After considering the

motion, the memoranda in support, the memoranda in opposition, the statements made at oral

argument, the record, and the applicable, the Court will deny the motion as premature.

**I. Background**

*A. Factual Background*

Grand Isle is a contractor whose services include offshore construction and maintenance

operations. Black Elk Energy LLC ("Black Elk") is an oil and gas company that owns a number of

---

[1] Rec. Doc. 145 at p. 1. All Record Documents refer to the Docket in Case No. 13-366, the lead case in this consolidated matter, unless otherwise indicated.

offshore platforms. On or about December 30, 2008, Grand Isle and Black Elk entered into a Master Service Agreement ("MSA") for various types of services that Grand Isle might perform on Black Elk's offshore platforms.[2] The MSA includes two indemnity provisions that are the subject of the pending motion. First, the MSA contains a provision that purportedly requires Grand Isle to indemnify Black Elk as well as Black Elk's contractors and subcontractors from claims

> . . . resulting from damage to, loss or destruction of any equipment or property owned, leased, rented or hired by any member of the contractor group . . . or the contractor groups's subcontractors or for personal or bodily injury to or death of any member of the contractor group or contractor group's subcontractors arising out of the performance of this agreement.[3]

Second, Exhibit A to the MSA includes an additional-insured provision, requiring that Grand Isle's insurance policies name "BLACK ELK GROUP as an additional insured and shall be primary with respect to all liabilities and indemnity obligation assumed by CONTRACTOR under this Agreement."[4]

On November 16, 2012, Grand Isle was working on the Black Elk Energy West Delta 32 Block Platform  (the "Platform") pursuant to the MSA[5] when an explosion and fire occurred, allegedly resulting in loss of life, personal injuries, and property damage.[6] Wood Group USA, Inc. ("Wood Group"), Compass Engineering & Consultants, LLC ("Compass"), Enviro Tech Systems,

---

[2] *See* Rec. Doc. 145-3, "Master Service Agreement" between Grand Isle Shipyard, Inc. and Black Elk Energy, LLC.

[3] *Id.* at p. 7.

[4] *Id.* at p. 14.

[5] Case No. 13-2496, Rec. Doc. 1 at ¶ XXIII.

[6] *See, e.g.*, *id.* at ¶ X.

LLC ("Enviro Tech"), and Shamrock Management, LLC ("Shamrock") were also contractors of Black Elk allegedly involved in work being done on the Platform that day.[7]

## B. Procedural Background

This litigation involves eight consolidated cases all arising out of the November 16, 2012 explosion. In cases 13-366 and 13-550, surviving spouses of workers allegedly killed during the explosion have brought negligence and wrongful death claims against Black Elk and its various contractors.[8] In 13-5137, 13-5508, 13-6022, 13-6099, and 13-6413, workers allegedly injured during the explosion have asserted negligence claims against Black Elk and the contractors.[9] In 13-2496, Grand Isle filed suit against Black Elk, Enviro Tech, Wood Group, and Compass claiming, among other things, that the defendants' "combined negligence, fault, and/or strict liability," was the cause of the explosion.[10]

In a number of the consolidated cases, contractors have brought claims for indemnity against Grand Isle pursuant to the terms of the MSA. In 13-366 and 13-550, Shamrock filed third-party complaints against Grand Isle seeking enforcement of the indemnity provision.[11] In 13-2496, Wood

---

[7] *Id.* at ¶¶ VIII–IX; *see also* Rec. Doc. 154 at p. 2.

[8] *See* Case No. 13-366, Rec. Doc. 1 (amended by Rec. Doc. 82); Case No. 13-550, Rec. Doc. 1 (amended by Case No. 13-366, Rec. Doc. 83).

[9] *See* Case No. 13-513, Rec. Doc. 1; Case No. 13-5508, Rec. Doc. 1; 13 Case No. 13-6022, Rec. Doc. 1 (transferred from the South District of Texas, Galveston Division by Case No. 13-6022, Rec. Doc. 40); Case No. 13-6413, Rec. Doc. 1.

[10] *See* Case. No. 13-2496, Rec. Doc. 1 at ¶ XI.

[11] Rec. Doc. 37 (applies to 13-366); Rec. Doc. 38 (applies to 13-550).

Group and Compass filed counterclaims against Grand Isle also seeking enforcement of the indemnity provision.[12]

Grand Isle filed the pending motion on January 6, 2014; it asserts that the motion relates to all cases in the consolidated litigation.[13] On January 14, 2014, Wood Group and Shamrock both filed memoranda in opposition.[14]   On January 15, 2014, Compass filed a memorandum adopting the oppositions of Wood Group and Shamrock.[15] Also on January 15, 2014, Enviro Tech filed a memorandum adopting the opposition of Wood Group and further noting that "while Enviro-Tech has made written demand by letter on [Grand Isle], through its counsel of record herein, Enivro-Tech has not filed a formal claim in this litigation against [Grand Isle] for such relief, to date."[16] With leave of the Court, Grand Isle filed a reply on January 22, 2014.[17] The Court heard oral argument regarding this motion on January 22, 2014.[18]

---

[12]   Case No. 13-2496, Rec. Doc. 4 (Wood Group counterclaim); Case. No. 13-2496, Rec. Doc. 5 (Compass counterclaim).

[13]   Rec. Doc. 145.

[14]   Rec. Doc. 152 (Wood Group); Rec. Doc. 154 (Shamrock).

[15]   Rec. Doc. 157.

[16]   Rec. Doc. 158.

[17]   Rec. Doc. 172.

[18]   Rec. Doc. 170.

## II. Parties' Arguments

### A. Grand Isle's Argument in Support

Grand Isle avers that "the indemnity provisions [in the MSA] are voided by the Louisiana Oilfield Indemnity Act (LOIA) to the extent any party seeking indemnity is found at fault."[19] According to Grand Isle, a "central issue in this motion for summary judgment is what law applies to the MSA between [Grand Isle] and Black Elk."[20] Grand Isle asserts "the undisputed facts in this matter require the Court to find that Louisiana law, by virtue of the Outer Continental Shelf Lands Act (OCSLA), applies to this matter and invalidates the indemnity provisions of the MSA pursuant to the LOIA."[21]

Looking first at OCSLA, Grand Isle contends that this Court must apply the three-part test set forth by the Fifth Circuit in *Union Texas Petroleum Corp. v. PLT Engineering, Inc.* to determine whether state law should apply as surrogate federal law.[22] Under the *PLT* test, as characterized by Grand Isle, the law of the "adjacent" state applies as surrogate federal law if (1) the controversy arises on a situs covered by OCSLA, (2) federal maritime law does not apply of its own force, and (3) state law is not inconsistent with federal law.[23] According to Grand Isle, these three elements are satisfied here and Louisiana law should be applied.

With respect to whether the controversy arose on a OCSLA situs, Grand Isle avers that under the Fifth Circuit's decision in *Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, "a contractual

---

[19] Rec. Doc. 145-2 at p. 1.

[20] *Id.* at p. 6.

[21] *Id.*

[22] *Id.* at p. 7 (citing *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043 (5th Cir. 1990)).

[23] *Id.* (citing *PLT Engineering, Inc.*, 895 F.2d at 1047).

indemnity claim (or other contractual dispute) arises on an OCSLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A)."[24] According to Grand Isle, a work order and the time tickets in this matter indicate that "all of the work was performed on the platform."[25]

Turning to the second element, Grand Isle submits that "[t]he Fifth Circuit has established a two-step inquiry for answering the question of whether a contract is maritime."[26] First, the Court must examine "the historical treatment of contracts of that type in the jurisprudence."[27] Second, the Court must "make a six factor fact-specific inquiry into the nature of the specific contracted issue."[28] The six factors Grand Isle identifies are:

1)   What does the specific Work Order in effect at the time of the injury provide;
2)   What work did the crew assigned under the Work Order actually do;
3)   Was the crew assigned to work aboard a vessel in navigable waters;
4)   To what extent did the work being done relate to the mission of that vessel;
5)   What was the principal work of the injured worker; and
6)   What work was the injured worker actually doing at the time of injury.[29]

Grand Isle asserts that "[i]t cannot be seriously disputed that platform construction or repair services are peculiar to the oil and gas industry, not maritime commerce."[30]

---

[24] *Id.* at p. 8 (quoting *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009) (en banc)).

[25] *Id.*

[26] *Id.* at p. 9.

[27] *Id.* (quoting *Armijio v. Tetra Technologies*, 2013 U.S. Dist. LEXIS 43446, *15 (E.D. La. Mar. 27, 2013)).

[28] *Id.* (quoting *Armijio*, 2013 U.S. District LEXIS 43446, at *15)).

[29] *Id.* at pp. 9–10.

[30] *Id.* at p. 10.

6

With respect to the third element, Grand Isle contends that "[i]t has been repeatedly held that the LOIA is not inconsistent with Federal law."[31]

In its OCSLA analysis, Grand Isle notes that the MSA contains a choice of law provision at Paragrph 23.4. However, Grand Isle avers that this provision "cannot supplant the specific congressional directive in OCSLA's choice of law provision."[32]

According to Grand Isle, "[b]ecause all three elements of the *PLT* test have been met, Louisiana law, and in particular the LOIA, applies to the contractual dispute at issue in this case."[33] Pointing out that the MSA "contains provisions requiring [Grand Isle] to indemnify, defend, and hold 'Black Elk Group' and 'Black Elk Group's other contractors' harmless in the event of personal injuries or death to [Grand Isle personnel] arising out of performance of the agreement,"[34] Grand Isle avers that "the LOIA provides that such provisions are void and unenforceable in contracts 'pertaining to wells for oil, gas, or water or drilling for materials."[35] Grand Isle argues that "[s]imilarly, provisions of the [MSA] requiring [Grand Isle] to provide insurance for Black Elk are likewise void."[36]

Grand Isle acknowledges that LOIA only applies to the extent that Black Elk or its contractors are found to be negligent.[37] However, it maintains that "it is not premature for the Court

---

[31] *Id.* at p. 12 (citing *Seacor Marine*, 589 F.3d at 789; *Hodgen v. Forrest Oil Corp.*, 87 F.3d 1515, 1529 (5th Cir. 1996)).

[32] *Id.* at p. 7.

[33] *Id.* at p. 12.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.* at p. 15.

to determine that Louisiana law applies to the contract and hold that to the extent any member of Black Elk Group or Black Elk Group's other contractors, including but not limited to, Wood Group, Compass, Shamrock, and Enviro Tech, are not entitled to indemnity or defense under the [MSA] if it is found negligent or at fault."[38]

### B. Wood Group's Argument in Opposition

In opposition, Wood Group asserts that "a number of factual issues will impact the law applicable to the contract at issue," and therefore "the motion is premature and should be denied for that reason alone."[39]

Looking to the choice of law provision in the MSA, Wood Group contends that "since the work in question was performed in federal offshore waters, the agreement calls for the applicability of the General Maritime Law which would clearly hold the provisions at issue enforceable."[40] Further, Wood Group argues that "[s]everal decisions have upheld, under certain circumstances, a choice of law provision other than that of Louisiana in the face of an allegation of the applicability of the Louisiana Oilfield Indemnity Act (LOIA)."[41] According to Wood Group, courts should considering a number of factors in determining "whether Louisiana law would allow a choice of law provision selecting federal law or another state's law," including where the contract was originally drafted, where the work under the contract was performed, the expectations of the parties, and whether inequity is "foisted" on the indemnifying party. [42] Wood Group maintains that "[t]hese and

---

[38] *Id.*

[39] Rec. Doc. 152 at pp. 1–2.

[40] *Id.* at 2.

[41] *Id.*

[42] *Id.* at pp. 2–3.

other issues relevant to whether Louisiana law would recognize and enforce the choice of law provision contained in the MSA require extensive additional discovery."[43]

If Louisiana law is applicable, Wood Group further avers that LOIA is not implicated because "[t]he work being performed by [Grand Isle], particularly the work which caused the explosion and fire, did not pertain to a well but, instead, pertained to work on equipment used after petroleum production had been so commingled as to prevent any identification with an individual well."[44]

Furthermore, Wood Group notes that LOIA does not apply in all situations even where the agreement pertains to a well. Wood Group points out that a portion of its claim relates to property damage, and asserts that "LOIA does not apply to property damage."[45] Additionally, Wood Group avers that "even in those instances where LOIA is applicable, it does not prevent indemnity in the case where the indemnitee is free from fault."[46]

Finally, Wood Group asserts that it could be protected under the additional insured provision of the MSA. Wood Group reasons: "The insuring obligation runs in favor of the entire Black Elk Group which would include Black Elk's invitees. Wood Group, Compass and Shamorck were alleged invitees of Black Elk to a platform owned by Black Elk; accordingly, they are included in the term 'Black Elk Group' and are to be provided coverage as additional assureds [sic.] against whom subrogation is waived by [Grand Isle]."[47] Although Wood Group acknowledges that LOIA

---

[43] *Id.* at p. 3.

[44] *Id.*

[45] *Id.* at p. 4.

[46] *Id.* at p. 6.

[47] *Id.* at p. 5.

sometimes prohibits additional insured clauses, it urges that "Louisiana courts have allowed such provisions under certain circumstances (by way of what is often termed the "*Marcel*" exception) whereby a contractor arranges to have a principal billed for the premium associated with the additional insurance."[48] Wood Group contends that "[i]n the instant case, discovery will be necessary to determine if [Grand Isle] did in fact make that arrangement and whether it notified Black Elk and its invitees prior to the commencement of work if such premium would be in excess of $500."

### C. Shamrock's Argument in Opposition

Like Wood Group, Shamrock urges that "any ruling on the merits of any portion of Shamrock's demand for contractual defense and indemnity would be premature at this time."[49] According to Shamrock, "courts have developed a two-part inquiry for determining the applicability of the LOIA."[50] For part one, "there must be an agreement that 'pertains to' an oil, gas or water well."[51] Next, "the agreement must be related to exploration, development, production, or transportation of oil, gas, or water."[52] Shamrock contends that "whether these requirements for application of LOIA are met, and particularly the question of whether an agreement pertains to a well, is a highly fact-intensive inquiry."[53] Thus, "this issue should be deferred until trial."[54]

---

[48] *Id.* (citing *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994)).

[49] Rec. Doc. 154 at p. 4.

[50] *Id.* at p. 5.

[51] *Id.*

[52] *Id.* (citing *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 911 (5th Cir. 1992)).

[53] *Id.* at p. 6 (emphasis in original)

[54] *Id.*

Further, Shamrock asserts that "[o]nce this test is met, <u>the applicability of the LOIA is still dependent on a judicial determination as to whether the indemnitee is at fault</u>."[55] According to Shamrock, "courts have repeatedly held that summary judgment on the merits of a defense and indemnity obligation to which the LOIA is alleged to apply is premature."[56]

### C. Compass's Argument in Opposition

Compass's memorandum adopts the oppositions of Wood Group and Shamrock.[57]

### D. Enviro Tech's Argument in Opposition

As noted above, Enviro Tech filed a memorandum adopting the opposition of Wood Group and further noting that "while Enviro-Tech has made written demand by letter on [Grand Isle], through its counsel of record herein, Enivro-Tech has not filed a formal claim in this litigation against [Grand Isle] for such relief, to date."[58]

### E. Grand Isle's Reply in Further Support

In response to the opposition briefs, Grand Isle asserts that "[n]o party in this matter disputes that OCSLA applies in this matter."[59] Further, Grand Isle reiterates the prongs of the *PLT* test and urges that "[t]his matter is indisputably resolved by finding that Louisiana law applies by virtue of OCSLA."[60] Additionally, Grand Isle contends that "Louisiana choice of law rules are inapplicable

---

[55] *Id.* at p. 5 (emphasis in original).

[56] *Id.* at pp. 6–7 (citing, e.g., *Alleman v. Omny Energy Services Corp.*, 434 F. Supp. 2d 405, 414–15 (E.D. La. 2006) (Vance, J.); *Peoples v. Pogo Gulf Coast, Ltd.*, No. 05-6891, 2007 WL 4522600, at *1 (E.D. La. Dec. 18, 2007) (Feldman, J.); *Exley v. Superior Engery Serv.*, No. 06-2526, 2007 WL 805794, at *5 (E.D. La. Mar. 3, 2007) (Feldman, J)).

[57] Rec. Doc. 157.

[58] Rec. Doc. 158.

[59] Rec. Doc. 172 at p. 1.

[60] *Id.* at p. 3.

to the determination of whether the contractual choice of law clause is enforceable under Louisiana law." According to Grand Isle, "[t]his issue was precisely addressed by the Fifth Circuit in the *en banc* decision in *Grand Isle Shipyard v. Seacor Marine, LLC*," where the majority "held" that:

> We see no basis to read this section of OCSLA [§1333(a)(2)(a)] to directly apply the state's law in a tort case while adopting the state's conflict of law rules in a contract case. The section unambiguously adopts the "civil and [criminal] laws of the adjacent state" without distinguishing between the types of civil cases. We see no reason to treat contract cases and tort differently for choice of state law purposes since they are both "civil" cases.[61]

Thus, Grand Isle maintains that "[a]ny reference to Louisiana choice of law rules would be contrary to the specific to [sic.] OCSLA's choice of law provision and the repeated direction of Courts that parties cannot contract around the OCSLA choice of law provision."[62]

### III. Law and Analysis

#### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[63] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[64] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[65] If the record, as a whole,

---

[61] *Id.* at p. 5 (quoting *Seacor Marine*, 589 F.3d at 788, n. 7).

[62] *Id.*

[63] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[64] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[65] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[66]

**B. Outer Continental Shelf Lands Act**

The Outer Continental Shelf Lands Act ("OCSLA") was enacted "to define a body of law applicable to the seabed, the subsoil, and the fixed structures . . . on the outer Continental Shelf."[67] As set forth in 43 U.S.C. §1333(a), OCSLA's choice of law provision states:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State . . . .

> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .[68]

Pursuant to the Fifth Circuit's decision in *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, three requirements must be met for state law to apply as surrogate federal law under OCSLA. First, "[t]he controversy must arise on a situs covered by the OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto)."[69] Second, "[f]ederal maritime law

---

[66] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[67] *Rodrigue v. Aetna Cas. and Surety Co.*, 395 U.S. 352, 355–56 (1969).

[68] 43 U.S.C. § 1333(a).

[69] *PLT Engineering, Inc.*, 895 F.2d at 1047.

must not apply of its own force."[70] Third, "[t]he state law must not be inconsistent with Federal law."[71] These three requirements constitute what is generally referred to as the "*PLT* test."

### 1. Whether the Controversy Arose on an OCSLA Situs

With respect to the first prong of the *PLT* test, the situs of the controversy in a contractual dispute depends on the focus of the contract.[72] Under the focus-of-the-contract test, a contractual dispute "arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses."[73] In articulating the focus-of-the-contract test in *Grand Isle Shipyard, Inc. v. Seacor Marine LLC*, the Fifth Circuit specifically explained, albeit in a footnote, the analysis to be used when the parties have entered into a blanket agreement that does not itself call for the performance of specific work, stating:

> As we discussed in *Davis & Sons v. Gulf Oil Corp.*, it is a common practice for companies contracting for work in the oilfield to enter into contracts in two stages. Typically, they first sign a "blanket contract" that may remain in place for an extended period of time. Later, they issue work orders for the performance of specific work, which usually incorporate the terms of the blanket contract. As we said in *Davis & Sons*, where the contract consists of two parts, a blanket "contract followed by later work order, the two must be interpreted together."

> Generally, each work order is for a discrete, relatively short-term job. Unless a contrary intent is reflected by the master contract and the work order, in determining situs in a contract case such as this, courts should ordinarily look to the location where the work is to be performed pursuant to the specific work order rather than the long term blanket contract.[74]

---

[70] *Id.*

[71] *Id.*

[72] *Seacor Marine*, 589 F.3d at 784.

[73] *Id.* at p. 787.

[74] *Id.* at 787 n. 6.

In *ACE American Insurance Co. v. M-I, L.L.C.*, the Fifth Circuit relied heavily on this *Seacor Marine* footnote, explaining that the *Seacor Marine* framework governs when the contract at issue is a general master services agreement.[75]

In the matter before this Court, Grand Isle contends that it is undisputed that "a majority, if not all of the work called for under the contract, was performed on stationary platforms on the OCS."[76] It further avers that "[t]he Work Order represented by Exhibit 'B' and the work actually performed by [Grand Isle] as evidenced in the time tickets signed by Black Elk's representative, unquestionably shows that all of the work was performed on the platform."[77] In its opposition, however, Wood Group does contest these facts, and it specifically denies that all of Grand Isle's work was performed on the West Delta 32 platform.[78] At oral argument, Wood Group and Shamrock repeatedly noted that only a limited amount of discovery has occurred in this matter, and relatively little information has been exchanged regarding what particular work Grand Isle was doing on the platform at the time of the explosion.

The Court agrees with Wood Group and Shamrock that it would be premature to determine whether the "focus" of the contract Grand Isle was operating under was on an OCSLA situs. As discussed at status conferences held in this matter, at this point in the litigation, discovery has primarily focused on damages sustained by the personal injury and wrongful death plaintiffs, not on liability.[79] Accordingly, the Court finds that there is a disputed issue of fact regarding what

---

[75] *ACE Am. Ins. Co. v. M-I, L.L.C.*, 699 F.3d 826, 831 (5th Cir. 2012).

[76] Rec. Doc. 145-2 at p. 8.

[77] *Id.*

[78] Rec. Doc. 152-2 at p. 1.

[79] *See* Rec. Doc. 58, Minute Entry for Status Conference held Sept. 25, 2013; Rec. Doc. 105, Minute Entry for Status Conference held Dec. 3, 2013.

contract—and  particularly, what work order—Grand Isle was operating under and where the majority of the work under that contract was to be done.

### 2. Whether Maritime Law Applies of Its Own Force

The second prong of the *PLT* test provides that in order for the OCSLA choice of law provision to apply, maritime law must not apply of its own force. As the Fifth Circuit has explained, "[d]etermining whether maritime law applies of its own force involves a two-step inquiry—first, an examination of the historical treatment of contracts of that type in the jurisprudence and second, a six-factor 'fact specific inquiry into the nature of the contract."[80] Under *Davis & Sons Inc. v. Gulf Oil Corp.*, the six factors are: (1) What does the specific work order in effect at the time of injury provide? (2) What work did the crew assigned under the work order actually do? (3) Was the crew assigned to work aboard a vessel in navigable waters? (4) To what extent did the work being done relate to the mission of that vessel? (5) What was the principal work of the injured worker? and (6) What work was the injured worker doing at the time of the injury?[81]

Again, the Court agrees with Wood Group and Shamrock that it would be premature to determine whether maritime law applies of its own force. Given that only limited discovery has occurred in this case, more information may be available regarding the specific work order in effect at the time of the explosion and the nature of the work that was actually being done. Accordingly, the Court finds that there are disputed issues of fact material as to whether maritime law applies of its own force.

---

[80] *ACE Am. Ins. Co.*, 699 F.3d at 831.

[81] *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1990).

### 3. Whether State Law is Inconsistent with Federal Law

The parties do not appear to dispute this issue as the Fifth Circuit has previously held that the Louisiana Oilfield Indemnity Act is not inconsistent with federal law.[82]

### 4. Whether OCSLA Gives Effect to the MSA Choice of Law Provision

Even if after resolving the disputed issues of fact outlined above, the Court finds that OCSLA would apply Louisiana law as surrogate federal law, the parties contest whether OCSLA would allow for the enforcement of the choice of law provision contained in the MSA. The MSA's choice of law provision states in pertinent part that:

> This agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the states in which the work is performed (excluding such states' conflicts of laws and choice of law principles), or if the work is performed in federal offshore waters, by the general maritime law of the United States.[83]

While Grand Isle urges that "the choice of law provision in the MSA cannot trump OCSLA's choice of law provision,[84] Wood Group maintains that "the choice of law provision in the contract is permissible under Louisiana law," or at least may be found to be permissible after additional discovery is conducted.[85] At oral argument, the Court noted that in support of its position, Grand Isle relied heavily on *dicta* set forth in a footnote in *Seacor Marine*.[86] The Court is reluctant to conclusively interpret this *dicta* as precluding a contractual choice of law provision from having effect.

---

[82] *See, e.g.*, *ACE Am. Ins.Co.*, 699 F.3d at 832; *Seacor Marine*, 589 F.3d at 789.

[83]  Rec. Doc. 143-3, "Master Service Agreement" between Grand Isle Shipyard, Inc. and Black Elk Energy, LLC, at p. 12.

[84] Rec. Doc. 145-2 at p. 7.

[85] Rec. Doc. 152 at p. 2–3.

[86] *See* Rec. Doc. 172 at p. 5 (quoting *Seacor Marine*, 589 F.3d at 788 n.7).

Upon further examination of the caselaw, however, it appears that the Fifth Circuit resolved this particular issue in *Union Texas Petroleum Corp. v. PLT Engineering, Inc.* In that case, Plaintiff Union Texas Petroleum Corp. argued that even if OCSLA applied Louisiana law as surrogate federal law, the parties had chosen admiralty law through the choice of law provisions in their contracts.[87] The Fifth Circuit expressly rejected the contention that the parties could select admiralty law if OCSLA applied:

> Although Louisiana's choice of law rules might enforce this choice of law provision, OCSLA will not. We find it beyond any doubt that OCSLA is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary.[88]

Therefore, although Compass Group contends that "extensive additional discovery" regarding "whether Louisiana law would recognize and enforce the choice of law provision contained in the MSA" is required, the Court notes that OCSLA would apply Louisiana substantive law without regard to Louisiana's choice of law rules or the MSA's choice of law provision.

### B. *Louisiana Oilfield Indemnity Act*

If OCSLA applies Louisiana law as surrogate federal law, the question then becomes whether the Louisiana Oilfield Indemnity Act ("LOIA") would void the indemnity provisions contained in the MSA. In their briefs and at oral argument, the parties dispute this issue.

---

[87] *PLT Engineering, Inc.*, 895 F.2d at 1049; *see also Synder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000) ("This Congressionally mandated choice of law provision trumps any contrary contractual provisions.").

[88] *Id.*

The Louisiana legislature enacted LOIA in order to address "inequities foisted on certain contractors . . . by . . . defense and indemnity provisions . . . contained in some agreements pertaining to wells for oil, gas, or water."[89] LOIA provides that:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.[90]

In general, LOIA is broadly written and broadly interpreted.[91]

### 1. Whether LOIA is Applicable to the Work Done by Grand Isle

In *Transcontinental Gas Pipe Line Corp. v. Transportation Insurance, Co.*, the Fifth Circuit developed a two-part test for determining whether LOIA applies to a specific agreement. First, the court must determine whether the agreement "pertains to" a well.[92] "If the contract does not pertain to a well, the inquiry ends."[93] Second, if the agreement does pertain to a well, then the court must determine whether the agreement is "related to the exploration, development, production, or transportation of oil, gas, or water."[94] The statute provides that "related to" may include, but is not limited to, activities such as "altering, plugging, or otherwise rendering services in connection with

---

[89]   La. R.S. § 9:2780(A).

[90]   La. R.S. § 9:2780(B).

[91]   *See Roberts v. Energy Dev. Corp.*, 104 F.3d 782, 784 (5th Cir. 1997).

[92]   *Transcon.Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 991 (5th Cir. 1992).

[93]   *Id.*

[94]   *Id.* (quoting La. R.S. § 9:2780(B)).

any well drilled for the purpose of produc[tion]," and that such services may also include collateral services such as "the furnishing or rental of equipment."[95]

Determining whether a contract pertains to a well "requires a fact intensive case-by-case analysis."[96] In *Transcontinental Gas Pipe Line Corp.*, which addressed LOIA in the context of drilling for natural gas, the Fifth Circuit delineated ten non-exhaustive factors for courts to consider:

(1)   whether the structures or facilities to which the contract applies or with which it is associated, e.g. production platforms, pipelines, junction platforms, etc., are part of an in-field gas gathering system;

(2)   what is the geographical location of the facility or system relative to the well or wells;

(3)   whether the structure in question is a pipeline or is closely involved with a pipeline;

(4)   if so, whether that line picks up gas from a single well or a single production platform or instead carries commingled gas originating from different wells or production facilities;

(5)   whether the pipeline is a main transmission or trunk line;

(6)   what is the location of the facility or structure relative to compressors, regulating stations, processing facilities or the like;

(7)   what is the purpose or function of the facility or structure in question;

(8)   what if any facilities or processes intervene between the wellhead and the structure or facility in question, e.g., "heater treaters," compressor facilities, separators, gauging installations, treatment plants, etc.;

(9)   who owns and operates the facility or structure in question, and who owns and operates the well or wells that produce the gas in question;

---

[95]   La. R.S. § 9:2780(C).

[96]   *Transcon.Gas Pipe Line Corp.*, 953 F.2d at 994.

> (10)     and any number of other details affecting the functional and geographic nexus between "a well" and the structure or facility that is the object of the agreement under scrutiny.[97]

As Wood Group and Shamrock point out, discovery in this case has been limited and the facts surrounding the nature of Grand Isle's work on the platform have yet to be developed. Accordingly, the Court agrees, that if Louisiana law applies, there are still genuine disputes regarding facts material to whether Grand Isle's agreement "pertains to" a well and whether the agreement is "related to the exploration, development, production, or transportation of oil, gas, or water."

### 2. Whether the Parties Seeking Indemnity Are at Fault

Even if an agreement "pertains to" a well and is "related to the exploration, development, production, or transportation of oil, gas, or water," LOIA will only apply if the party seeking indemnity is at fault. As the Louisiana Supreme Court explained in *Meloy v. Conoco, Inc.*:

> [T]he indemnitor's obligation for cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless. Whether an oil company (indemnitee) is free from fault and thus outside the scope of the [LOIA] *can only be determined after trial on the merits*.[98]

In light of *Meloy*, judges in this District have declined to rule on whether an indemnity provision is enforceable prior to a determination of fault.[99]  Thus, considering *Meloy* as applied in this District,

---

[97]   *Id.* at 994–95; *see also Broussard v. Conoco, Inc.*, 959 F.2d 42 at 45 (5th Cir. 1992) (applying the *Transcontinental Gas Pipe Line* factors); *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 253 (5th Cir. 2001) (same).

[98]   *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987) (emphasis added).

[99]   *See, e.g.*, *Alleman v. Omni Energy Serv. Corp.*, 434 F. Supp. 2d 405, 414–15 (E.D. La. 2006) (Vance, J.) (concluding that summary judgment on the enforceability of certain indemnity provision was "premature" and denying summary judgment); *Peoples v. Pogo Gulf Coast, Ltd.*, No. 05-6891, 2007 WL 4522600, at *1–2 (E.D. La. Dec. 18, 2007) (Feldman, J.) (denying summary judgment "at this point" where there was no evidence that related to negligence or fault).

the Court agrees with Wood Group and Shamrock that determining the enforceability of the indemnity provisions would be premature since there has been no finding of fault.

### IV. Conclusion

As discussed above, only limited discovery has occurred in this litigation. Thus, there are numerous issues of disputed fact material to whether Louisiana law applies as surrogate federal law under OSCLA and whether LOIA applies to the agreement between Grand Isle and Black Elk. Further, any decision on the enforceability of the indemnity provision would be premature prior to a determination of negligence or fault. Accordingly,

**IT IS HEREBY ORDERED** that Grand Isle's Motion for Summary Judgment is **DENIED AS PREMATURE**;

**IT IS FURTHER ORDERED** that Grand Isle may reurge its Motion for Summary Judgment following discovery in this matter and a judicial determination of the parties' negligence or fault.

**NEW ORLEANS, LOUISIANA**, this _4th_ day of February, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

22