## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EDNA TAJONERA, et al.**                    **CIVIL ACTION**

**VERSUS**                                              **NO. 13-0366**
                                                                    **c/w 13-0550, 13-5137, 13-2496,**
                                                                    **13-5508, 13-6022, 13-6099, and**
                                                                    **13-641**

**BLACK ELK ENERGY OFFSHORE OPERATIONS,**     **SECTION: "G"(5)**
**L.L.C., et al.**

## ORDER AND REASONS

This litigation arises out of an explosion that occurred on November 16, 2012 on the Black

Elk Energy West Delta 32 Block Platform, located in the Gulf of Mexico approximately 17 miles

southeast of Grand Isle, Louisiana. Before the Court is Shamrock Management, L.L.C.'s

("Shamrock") "Motion for Summary Judgment" in Case Numbers 13-366, 13-550, 13-5137, and 14-

374.[1] In the motion, Shamrock "submits that the undisputed facts in this case establish that Shamrock

had no involvement in the events giving rise to plaintiffs' claims and plaintiffs will therefore be

unable at trial to bear their burden of proof regarding their claims of negligence against Shamrock."[2]

Also before the Court are two motions to strike: (1) Shamrock's "Motion to Strike the

Tamayo and Illagan [sic] Plaintiffs' Memorandum in Response to Shamrock Management, L.L.C.'s

Motion for Summary,"[3] and (2) Shamrock's "Motion to Strike Grand Isle Shipyard, Inc.'s Opposition

to Shamrock Management, L.L.C.'s Motion for Summary Judgment."[4]

---

[1] Rec. Doc. 310.

[2] *Id.* at p. 1.

[3] Rec. Doc. 339.

[4] Rec. Doc. 340.

After considering the pending motions, the memoranda in support, the memoranda in opposition, the statements made at oral argument, the record, and the applicable law, the Court will grant Shamrock's "Motion to Strike the Tamayo and Illagan [sic] Plaintiffs' Memorandum in Response to Shamrock Management, L.L.C.'s Motion for Summary"[5] and deny Shamrock's "Motion to Strike Grand Isle Shipyard, Inc.'s Opposition to Shamrock Management, L.L.C.'s Motion for Summary Judgment"[6] and "Motion for Summary Judgment."[7]

## I. Background

**A.    Factual Background**

On November 16, 2012, an explosion and fire occurred on the Black Elk Energy West Delta 32 Block Platform, located in the Gulf of Mexico approximately 17 miles southeast of Grand Isle, Louisiana.[8] The platform was owned by Black Elk Energy Offshore Operations, LLC ("Black Elk").[9] Wood Group USA, Inc. ("Wood Group"), Compass Engineering & Consultants, LLC ("Compass"), Enviro Tech Systems, LLC ("Enviro Tech"), Grand Isle Shipyard, Inc. ("GIS"), and Shamrock Management, LLC ("Shamrock") were contractors of Black Elk allegedly involved in work being done on the Platform that day.[10]

---

[5]  Rec. Doc. 339.

[6]  Rec. Doc. 340.

[7]  Rec. Doc. 310.

[8]  Rec. Doc. 82 at ¶28.

[9]  *Id.* at ¶ 8.

[10]  *Id.* at ¶¶ 22–27.

**B.     Procedural Background**

This litigation involves nine consolidated cases all arising out of the November 16, 2012 explosion. In cases 13-366 and 13-550, surviving spouses of workers allegedly killed during the explosion have brought negligence and wrongful death claims against Black Elk and its contractors.[11] In 13-5137, 13-5508, 13-6022, 13-6099, 13-6413, and 14-374 workers allegedly injured during the explosion have asserted negligence claims against Black Elk and its contractors.[12] In 13-2496, GIS filed suit against Black Elk, Enviro Tech, Wood Group, and Compass claiming, among other things, that the defendants' "combined negligence, fault, and/or strict liability," was the cause of the explosion.[13]

Throughout this litigation, the parties have referred to the plaintiffs in the various cases as follows:

- 13-366: Tajonera Plaintiffs

- 13-550: Corporal Plaintiffs

- 13-5137: Canencia Plaintiffs

- 13-5508: Tamayo and Ilagan Plaintiffs

- 13-6022: Plaintiff Voclain

- 13-6413: Srubar and Gipson Plaintiffs

- 14-374: Plaintiff Dominguez

---

[11]  *See* Case No. 13-366, Rec. Doc. 1 (amended by Rec. Doc. 82); Case No. 13-550, Rec. Doc. 1 (amended by Case No. 13-366, Rec. Doc. 83).

[12]  *See* Case No. 13-513, Rec. Doc. 1; Case No. 13-5508, Rec. Doc. 1; 13 Case No. 13-6022, Rec. Doc. 1 (transferred from the South District of Texas, Galveston Division by Case No. 13-6022, Rec. Doc. 40); Case No. 13-6413, Rec. Doc. 1; Case No. 14-374, Rec. Doc. 1 (transferred from the Southern District of Texas, Galveston Divsion by Case No. 14-374, Rec. Doc. 37).

[13]  *See* Case. No. 13-2496, Rec. Doc. 1 at ¶ 11.

3

Recognizing the number of individual plaintiffs spread out across each of these cases, the Court will continue with the parties' naming convention for simplicity.

### 1.    Shamrock's Motion for Summary Judgment

Shamrock is named as a defendant in 13-366, 13-550, 13-5137, and 14-374, which are personal injury or wrongful death cases brought by the Tajonera Plaintiffs, the Corporal Plaintiffs, the Canencia Plaintiffs, and Plaintiff Dominguez, respectively. Shamrock filed the pending "Motion for Summary Judgment"[14] on June 17, 2014. In its motion, Shamrock asserts that "the undisputed facts in this case establish that Shamrock had no involvement in the events giving rise to plaintiffs' claims," and Shamrock seeks dismissal of all claims against it in all four cases in which it is a named defendant.[15]

On July 1, 2014, GIS filed a memorandum in opposition.[16] Also on July 1, 2014, Plaintiff Dominguez,[17] the Canencia Plaintiffs,[18] the Tajonera and Corporal Plaintiffs,[19] and the Tamayo and Ilagan Plaintiffs[20] filed memoranda in opposition. These memoranda all adopted the arguments set forth in GIS's opposition. The Clerk's Office deficiented the oppositions filed by the Canencia

---

[14]  Rec. Doc. 310.

[15]  *Id.*

[16]  Rec. Doc. 329.

[17]   Rec. Doc. 330.

[18]  Rec. Doc. 331.

[19]   Rec. Doc. 332.

[20]  Rec. Doc. 333.

Plaintiffs,[21] the Tajonera and Corporal Plaintiffs,[22] and the Tamayo and Ilagan Plaintiffs[23] for failure to include a list of contested/uncontested issues of fact. On July 2, 2014, the Canencia Plaintiffs refiled their opposition with a list of contested issues of fact; the refiled memorandum again adopted GIS's opposition.[24] On July 8, 2014, the Tajonera and Corporal Plaintiffs refiled their opposition with a list of contested issues of fact; the refiled memorandum again adopted GIS's opposition.[25] The Tamayo and Ilagan Plaintiffs did not refile their opposition. With leave of the Court, Shamrock filed a reply memorandum on July 8, 2014.[26]

The Court heard oral argument on the motion for summary judgment and the motions to strike on July 9, 2014.[27] Following oral argument, supplemental memoranda were filed by GIS on July 14, 2014,[28] and Shamrock on July 17, 2014.[29]

### 2. Shamrock's Motion to Strike the Tamayo and Ilagan Plaintiffs' Opposition to Shamrock's Motion for Summary Judgment

On July 7, 2014, Shamrock filed its "Motion to Strike the Tamayo and Illagan [sic] Plaintiffs' Memorandum in Response to Shamrock Management, L.L.C.'s Motion for Summary Judgment."[30]

---

[21] Rec. Doc. 331.

[22] Rec. Doc. 332.

[23] Rec. Doc. 333.

[24] Rec. Doc. 334.

[25] Rec. Doc. 345.

[26] Rec. Doc. 348.

[27] Rec. Doc. 349.

[28] Rec. Doc. 354.

[29] Rec. Doc. 357.

[30] Rec. Doc. 339.

In this motion, Shamrock requests that the Court strike the Tamayo and Ilagan Plaintiffs' opposition to Shamrock's motion for summary judgment because "the Tamayo and Ilagan plaintiffs have asserted no claims against Shamrock in this litigation and thus have no standing to file a response in opposition to Shamrock's Motion for Summary Judgment."[31]

Shamrock's motion to strike was initially set for submission on July 23, 2014, but upon motion by Shamrock, the Court expedited the submission date to July 9, 2014 at 10:00 a.m.

On July 8, 2014, the Tamayo and Ilagan Plaintiffs filed a response to the Motion to Strike, stating: "Plaintiffs do not at this time object to the striking of their Memorandum in Opposition to Shamrock's Motion for Summary Judgment, to the extent various other parties have properly opposed the same. Shamrock is correct that plaintiffs herein have not filed a direct claim against Shamrock and for this reason the plaintiffs may be without standing to oppose the Motion as suggested by Shamrock."[32]

The Court heard oral argument on the motion for summary judgment and the motions to strike on July 9, 2014.[33]

### 3. Shamrock's Motion to Strike GIS's Opposition to Shamrock's Motion for Summary Judgment

On July 7, 2014, Shamrock filed its "Motion to Strike Grand Isle Shipyard, Inc.'s Opposition to Shamrock Management, L.L.C.'s Motion for Summary Judgment."[34] In this motion, Shamrock requests that the Court strike GIS's opposition because "GIS has no standing to oppose Shamrock's

---

[31] *Id.*

[32] Rec. Doc. 346.

[33] Rec. Doc. 349.

[34] Rec. Doc. 340.

Motion for Summary Judgment."[35] Specifically, Shamrock argues "that GIS is a co-defendant of Shamrock (in only two of the matter [sic] to which Shamrock's Motion applies), that GIS has not asserted any claims against Shamrock in this litigation, and that Shamrock's Motion for Summary Judgment seeks no relief against GIS."[36]

Shamrock's motion to strike was initially set for submission on July 23, 2014, but upon motion by Shamrock, the Court expedited the submission date to July 9, 2014 at 10:00 a.m.

On July 8, 2014, GIS filed a memorandum in opposition to the Motion to Strike.[37]

The Court heard oral argument on the motion for summary judgment and the motions to strike on July 9, 2014.[38]

## II. Shamrock's Motion to Strike the Tamayo and Ilagan Plaintiffs' Opposition to Shamrock's Motion for Summary Judgment

### A.    Parties' Arguments

#### 1.    Shamrock's Arguments in Support

Shamrock requests that the Court strike the Tamayo and Ilagan Plaintiffs' opposition to Shamrock's motion for summary judgment because "the Tamayo and Ilagan plaintiffs have asserted no claims against Shamrock in this litigation and thus have no standing to file a response in opposition to Shamrock's Motion for Summary Judgment."[39] According to Shamrock, its motion for summary judgment applies to the four cases in which it has been named as a defendant: 13-366, 13-

---

[35] *Id.*

[36] *Id.*

[37] Rec. Doc. 344.

[38] Rec. Doc. 349.

[39] Rec. Doc. 339 at p. 1.

550, 13-5137, and 14-374.[40] Shamrock points out that the Tamayo and Ilagan Plaintiffs have asserted claims in Case No. 13-5508.[41]

### 2.      Tamayo and Ilagan Plaintiffs' Response

In response, the Tamayo and Ilagan Plaintiffs state that "Shamrock is correct that plaintiffs herein have not filed a direct claim against Shamrock."[42] They further represent that they "do not oppose the striking of their memorandum in opposition to Shamrock's motion for summary judgment."[43]

## B.      Law and Analysis

In the pending motion, Shamrock requests that the Court strike Record Document 333, the Tamayo and Ilagan Plaintiffs' opposition to Shamrock's motion to summary judgment. Record Document 333 was deficiented by the Clerk's Office for failure to include a statement of material facts, as required by Local Rule 56.2. The Tamayo and Ilagan Plaintiffs never refiled their opposition in compliance with the Local Rules, and thus, Record Document 333 is not properly before the Court. Further, the Tamayo and Ilagan Plaintiffs have acknowledged that they have no claims against Shamrock, and have indicated that they do not object to Shamrock's motion to strike. Accordingly, the Court will grant Shamrock's "Motion to Strike the Tamayo and Ilagan [sic] Plaintiffs' Memorandum in Response to Shamrock Management, L.L.C.'s Motion for Summary Judgment."[44]

---

[40] Rec. Doc. 339-1 at pp. 2–3.

[41] *Id.* at p. 3.

[42] Rec. Doc. 346.

[43] *Id.*

[44] Rec. Doc. 339.

### III. Shamrock's Motion to Strike GIS's Opposition to Shamrock's Motion for Summary Judgment

**A.     Parties' Arguments**

**1.     Shamrock's Arguments in Support**

Shamrock requests that the Court strike GIS's opposition, arguing "that GIS is a co-defendant of Shamrock (in only two of the matter [sic] to which Shamrock's Motion applies), that GIS has not asserted any claims against Shamrock in this litigation, and that Shamrock's Motion for Summary Judgment seeks no relief against GIS."[45] Thus, Shamrock maintains that "GIS has no standing to oppose Shamrock's Motion for Summary Judgment."

**2.     GIS's Arguments in Opposition**

In response, GIS "contends that it has standing generally under Louisiana's comparative fault system whereby it is only liable for the percentage of damages attributable to its negligence and that it is entitled to have the fault of all parties apportioned."[46] GIS cites *Stone v. Marten Transport, LLC*[47] and *Diamond Services Corp. v. Oceanografia SA de CV*[48] in support of this proposition. Additionally, GIS points out that Shamrock has filed a third-party complaint against GIS for "contractual defense and indemnity based on an alleged Master Service Agreement between GIS and Black Elk."[49] According to GIS, Shamrock has acknowledged that if the Louisiana Oilfield Indemnity Act applies

---

[45]  Rec. Doc. 340 at p. 1.

[46]  Rec. Doc. 344 at p. 1.

[47]  *Stone v. Marten Transport, LLC*, No. 12-396, 2014 WL 1666420, at *1 (M.D. Tenn., Apr. 25, 2014) (Trauger, J.).

[48]  *Diamond Serv. Corp. v. Oceanografia SA de CV*, No. 10-177, 2014 WL 1120792, at *2 (W.D. La., Mar. 19, 2014) (Doherty, J.).

[49]  *Id.* at p 2.

and Shamrock is not found liable, it will be entitled to reimbursement of its defense costs from GIS pursuant to the Master Service Agreement.[50]

## B.  Law and Analysis

Federal Rule of Civil Procedure 56 does not expressly address whether a co-defendant may oppose another co-defendant's motion for summary judgment in the absence of a cross-claim, and it does not appear that the Fifth Circuit has addressed this issue. However, the two cases cited by GIS provide persuasive authority suggesting that GIS may oppose Shamrock's motion for summary judgment.

In *Stone v. Marten Transport, LLC*, the plaintiff sued three defendants seeking damages for injuries sustained during an accident at a trucking distribution center.[51] One of the defendants moved for summary judgment.[52] The plaintiff did not contest the motion for summary judgment, but the other two defendants filed oppositions.[53] The court concluded that the two defendants had standing to oppose the motion:

> Although some courts seem to hold that 'standing' to oppose a motion requires that parties be on opposite sides of the 'v.', that approach is unnecessarily myopic. In a comparative fault jurisdiction such as Tennessee, a defendant has a stake in whether another entity will be listed on the verdict form, because that other entity (whether or not a party at trial) could be held liable for some measure of the plaintiff's damages, thereby relieving the defendant from being allocated that percentage of liability.[54]

---

[50] *Id.*

[51] *Stone*, 2014 WL 1666420, at *1.

[52] *Id.*

[53] *Id.*

[54] *Id.* at *4.

In the second case, *Diamond Services Corp. v. Oceanografia SA de CV*, the plaintiff sued defendants Oceanografia and CON-Dive for breach of contract, alleging joint and several liability.[55] The plaintiff moved for a default judgment against CON-Dive, and Oceanografia opposed.[56] The court determined that Oceanografia had standing to challenge the motion for a default judgment against CON-Dive because the plaintiff would be able to execute the default judgment against Oceanografia.[57]

Like the co-defendants in *Stone* and *Diamond Services*, GIS faces a situation in which its liability for the consequences of the November 16, 2012 explosion will be impacted by Shamrock's liability. Louisiana Civil Code Article 2323 establishes a comparative fault scheme in negligence cases, providing that "the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined . . . ."[58] Under this scheme, "courts [] calculate damages in such a manner that each tortfeasor pays only for that portion of the damage he has caused."[59] Thus, as more fault is allocated to Shamrock, less fault is allocated to GIS and the other defendants, thereby lowering GIS's liability.

If Shamrock is dismissed at the summary judgment stage, GIS will be precluded  from arguing that fault should be allocated to Shamrock when GIS presents its defense at trial. In *Bowie v. Young*, the Louisiana Court of Appeals held that once a defendant has been dismissed at the summary judgment stage because it was not negligent, it would be "illogical" to allow the jury to

---

[55] *Diamond Serv. Corp.*, 2014 WL 1120792, at  *2.

[56] *Id.* at *3.

[57] *Id.* at *3–*4.

[58] La. Civ. Code Art. 2323.

[59] *Miller v. LAMMICO*, 2007-1352 (La. 1/16/08), 973 So. 2d 693, 700.

consider that party in the allocation of fault.[60] The *Bowie* court explained that the effect would be that, while the plaintiff cannot recover from the dismissed defendant because it was not at fault, the remaining defendants could reduce their liability by arguing that the dismissed defendant was at fault; such a result would be inequitable.[61] *Bowie*'s analysis has been adopted by both state and federal courts applying Louisiana tort law.[62]

Additionally, the Court is cognizant that Shamrock has filed a third-party complaint against GIS, seeking indemnity pursuant to GIS's and Black Elk's Master Services Agreement ("MSA").[63] The MSA contains a provision that purportedly requires GIS to indemnify Black Elk as well as Black Elk's contractors and subcontractors, such as Shamrock, from claims

> . . . resulting from damage to, loss or destruction of any equipment or property owned, leased, rented or hired by any member of the contractor group . . . or the contractor groups's subcontractors or for personal or bodily injury to or death of any member of the contractor group or contractor group's subcontractors arising out of the performance of this agreement.[64]

In its opposition to GIS's motion for summary judgment on choice-of-law issues, Shamrock admitted that if the Louisiana Oilfield Indemnity Act applies to this matter, then whether Shamrock is at-fault will determine whether GIS may be held liable for Shamrock's defense costs under the MSA:

> Shamrock does not dispute that if the LOIA is applicable and it is found to be at fault,

---

[60] *Bowie v. Young*, 2001-0715 (La. App. 3 Cir. 3/20/02), 813 So. 2d 562, 568–69.

[61] *Id.* at 569–70.

[62] *See, e.g.*, *Edwards v. Permobil, Inc.*, No. 11-1900, 2013 WL 4548706, *2 (E.D. La. Aug. 27, 2013) (Vance, J.) (following *Bowie* in a case governed by Louisiana law); *Regan v. Starcraft Marine, LLC*, No. 06-1257, 2010 WL 4117184 (W.D. La. Oct. 12, 2010) (Hicks, J.) (following *Bowie* in a case governed by Louisiana law); *Duzon v. Stallworth*, 2001-1187 (La. App. 1 Cir. 12/11/02), 866 So.2d 837, 854 (finding *Bowie* "persuasive" and adopting it).

[63] Rec. Doc. 90

[64] *Id.* at p. 7.

12

it will not be entitled to a defense or indemnity from GIS. On the other hand, if it is found to be free from fault, it will be entitled to reimbursement of its defense costs from GIS.[65]

Thus, the pending motion for summary judgment, which is potentially dispositive of Shamrock's fault in cases 13-366, 13-550, 13-5137, and 14-374, directly impacts GIS's liability to Shamrock under the MSA.

Accordingly, the Court finds that the Shamrock's motion for summary judgment affects GIS's interests and GIS has standing to oppose the motion. Thus, Shamrock's motion to strike GIS's opposition to Shamrock's motion for summary judgment is denied.[66]

### IV. Shamrock's Motion for Summary Judgment

**A.    Parties' Arguments**

**1.    Shamrock's Arguments in Support**

Shamrock claims that it is entitled to summary judgment because "no witness has provided testimony that would suggest negligence on the part of Shamrock or its only employee who was present on the West Delta 32 platform during the events giving rise to the plaintiffs' claims, Harold Seghers, Jr. ('Seghers')."[67] According to Shamrock, work being conducted on the platform can be divided into two categories—construction and production.[68] On November 16, 2012, construction work was being done by Enviro-Tech employees and GIS employees; this work was supervised by

---

[65] Rec. Doc. 154 at p. 8.

[66] The Court additionally notes that the Tajonera, Corporal, and Canencia Plaintiffs, who undisputedly have standing, have adopted the arguments set forth in GIS's opposition. Further, even if the opposition was stricken as to GIS and the plaintiffs, the Fifth Circuit forbids a district court from granting summary judgment merely because the motion is unopposed. *See Hibernia Nat. Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[67] Rec. Doc. 310-5 at p. 3.

[68] *Id.* at p. 4.

Don Moss, a Compass employee.[69] Production work was being done by three Wood Group employees and Seghers; this work was supervised by Chris Srubar, another Wood Group employee.[70]

Shamrock argues that the November 16, 2012 explosion occurred when hot work performed by GIS employees in the LACT unit area caused oil vapor contained in nearby gas tanks to ignite.[71] According to Shamrock, Seghers had no involvement in this construction work.[72] Shamrock contends that Seghers and the Wood Group employees were running chemical lines from the WEMCO unit that day.[73] From the WEMCO unit, Seghers could not see the LACT unit.[74] Just before the explosion, Seghers allegedly left the WEMCO unit to get a valve from the mechanic's shack.[75] Seghers could not see the LACT unit from the mechanic's shack either.[76] Seghers had just exited the mechanic's shack when the explosion occurred.[77]

According to Shamrock, Seghers never went to the LACT unit on the day of the explosion and had no knowledge of the hot work being done in the LACT unit area.[78] Shamrock points to Seghers' testimony that "on the morning of the explosion, he attended the GIS safety meeting at

---

[69] *Id.*

[70] *Id.* at p. 5.

[71] *Id.* at p. 6.

[72] *Id.* at pp. 5–6.

[73] *Id.* at p. 5.

[74] *Id.*

[75] *Id.*

[76] *Id.* at pp. 5–6.

[77] *Id.* at p. 6.

[78] *Id.*

which no mention of work in the LACT unit area was made."[79] Further, Shamrock argues that Moss and Srubar, the individuals supervising the construction and production work "testified that they are not aware of any involvement on the part of Shamrock."[80] Shamrock also asserts that Curtis Dantin, a GIS supervisor, "could not identify Seghers by name, acknowledged that the Shamrock mechanic had nothing to do with any work performed on the LACT unit, and provided no testimony otherwise suggesting Shamrock's involvement in causing the explosion."[81]

### 2.    GIS's Arguments in Opposition

In opposition to the Motion for Summary Judgment, GIS asserts that there are a number of contested issues of fact "as to whether Shamrock's employee breached a duty while working aboard the platform," which prevent summary judgment here. First, Seghers' testified that Srubar instructed him to attend GIS safety meetings and to report on any changes to GIS's scope of work.[82] According to Seghers' testimony, he had never seen GIS's written scope of work,[83] and he never informed Dantin, the GIS supervisor, why he was attending GIS safety meetings.[84] Second, Dantin testified that the hot work on the LACT unit was discussed during the November 16, 2012 morning safety meeting.[85] A number of other witnesses confirmed Dantin's testimony.[86] Third, Seghers testified that

---

[79] *Id.*

[80] *Id.* at p. 11.

[81] *Id.*

[82] Rec. Doc. 329 at p. 2 (citing Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at p. 2).

[83] *Id.* at p. 3 (citing Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at p. 11).

[84] *Id.* (citing Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at p. 8).

[85] *Id.* at p. 4. (citing Rec. Doc. 329-3, Deposition of Curtis Dantin, dated Feb. 20, 2014, at pp. 2–3).

[86] *Id.* at pp. 4–8 (citing the testimony of Thaddeus Marks, Antonia Tamayo, Wilberto Ilagan, and Renato Dominguez).

after the safety meeting, a WP/SEA document was drafted. Seghers admitted that he did not read the WP/SEA even though Srubar relied on the document in issuing hot work permits.[87] Finally, Seghers stated that during the morning safety meeting "Don Moss come [sic] in at the end of the meeting, telling the guys to finish up today because he was ready to go home and drink a beer."[88] Seghers "took it kind of offensively, because it was—he was rushing these people up, and when you rush, mistakes are made."[89] Seghers testified that he did not address Moss's comment with Curtis Dantin, the GIS supervisor.

Thus, "GIS contends that Seghers, and Shamrock, owed a duty upon being assigned the specific task of attending the safety meetings and reporting any change in the scope of work."[90] According to GIS, Seghers breached this duty. Specifically, GIS cites: "[h]is failure to hear the discussion regarding work around the LACT unit; his failure to read the WP/SEA for November 16 and understand the reference to the four inch pipe; his failure to have an adequate grasp of the scope of work because he had never seen a written scope of work; and, his failure to properly convey his concerns regarding Don Moss' comments which he considered dangerous and offensive."[91]

### 3.     Shamrock's Arguments in Further Support

In its reply memorandum, Shamrock asserts that the contested issues of fact that GIS cites are not material. First, Shamrock argues that Mark Pregeant, GIS's corporate representative, admitted in deposition that it is GIS's position that Chris Srubar was aware that GIS was going to perform hot

---

[87]  *Id.* at p. 8 (citing Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at pp. 12–20).

[88]   Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at p. 6.

[89]   *Id.*

[90]  Rec. Doc. 329 at p. 15.

[91]  *Id.* at p. 14.

work on the LACT unit.[92] Second, Shamrock contends that Srubar's deposition testimony demonstrates that he "was aware of the work to be completed that day and acknowledged that he knew of the LACT unit work when he signed the WP/SEA on the date of the incident, prior to the work being conducted."[93] According to Shamrock, this evidence shows "that Srubar knew about the claimed work on the LACT unit before the explosion,"[94] and therefore any disputed issue of fact regarding whether Seghers adequately informed Srubar of GIS's work on the platform is immaterial.

### 4. Post-Hearing Briefs

In their post-hearing briefs, GIS and Shamrock reiterate the arguments stated in their original briefs and at oral argument. Additionally, GIS urges that "Shamrock has not established as an uncontested fact that by Chris Srubar reading the WP/SEA on November 16, 2012, Srubar knew GIS was going to perform work related to the LACT unit/LACT piping."[95] GIS cites deposition testimony from Srubar in which he admits that nothing on the WP/SEA form would have led him to believe that the GIS crew would be working on the LACT unit."[96]

## B. Law and Analysis

### 1. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[92] Rec. Doc. 348 at p. 8.

[93] *Id.* at p. 10.

[94] *Id.*

[95] Rec. Doc. 354 at p. 5.

[96] *Id.* (citing Rec. Doc. 354-1, Deposition of Chris Srubar, dated Apr. 2, 2014, at pp. 4–6).

17

matter of law."[97] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[98] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[99] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[100]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact.[101] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[102] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[103] The

---

97  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

98  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

99  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

100  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

101  *Celotex*, 477 U.S. at 323.

102  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991).

103  *Id.* at 1265.

18

nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[104]

### 2.    Negligence

The Tajonera Plaintiffs, Corporal Plaintiffs, Canencia Plaintiffs, and Plaintiff Dominguez all bring negligence claims against Shamrock in connection with the November 16, 2012 explosion.[105] In order to prevail on their negligence claims against Shamrock, Plaintiffs must show: (1) Shamrock's conduct was a cause-in-fact of the resulting harm; (2) Shamrock owed Plaintiffs a duty of care; (3) the requisite duty was breached by Shamrock; and (4) the risk of harm was within the scope of protection afforded by the duty breached.[106]

### 3.    Analysis

To prevail on their negligence claim, Plaintiffs must first show that Shamrock's conduct was a cause-in-fact of the November 16, 2012 explosion. Although Shamrock contends that it "had no involvement in the events giving rise to plaintiffs' claims,"[107] Plaintiffs have pointed to a number of contested issues of fact regarding causation. First, Plaintiffs have provided testimony that Seghers either knew about the LACT unit work or, at least, should have known about the LACT unit work. Specifically,  Curtis Dantin testified that the hot work on the LACT unit was discussed during the November 16, 2012 morning safety meeting,[108] and a number of other witnesses confirmed Dantin's

---

[104]    *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[105]    *See* Rec. Doc. 82 at pp. 12–15; Rec. Doc. 83 at pp. 11–15; Rec. Doc. 86 at pp. 8–11; Case No. 14-374, Rec. Doc. 1 at pp. 5–6.

[106]    *Peterson v. Gibraltor Sav. and Loan*, 98-1601 (La. 5/18/99), 733 So. 2d 1198, 1203–04.

[107]    Rec. Doc. 310-5 at p. 1.

[108]    Rec. Doc. 329-3, Deposition of Curtis Dantin, dated Feb. 20, 2014, at pp. 2–3.

testimony.[109] Additionally, Plaintiffs have called into question whether Seghers kept Srubar, the production supervisor, adequately apprised of the construction work being done on the platform. Although Seghers testified that Srubar instructed him to attend GIS safety meetings and to report on any changes to GIS's scope of work,[110] Seghers admitted he had never seen GIS's written scope of work,[111] and he never informed Dantin, the GIS supervisor, why he was attending GIS safety meetings.[112] Seghers also acknowledged that he did not read the WP/SEA even though Srubar relied on the document in issuing hot work permits.[113]

There is a contested issue as to whether this failure to keep Srubar informed was a cause of the explosion. Srubar testified that it would be a "major problem" for work to be done on the LACT unit or the LACT pipe without his knowledge.[114] According to Srubar, his team would need to take steps "just to be safe to work on the pipe."[115]Although Shamrock cites the testimony of GIS's corporate representative, no *fact witness* has testified that Srubar knew about the LACT work. In his deposition, Srubar did testify that he signed the WP/SEA; however, he also acknowledged that nothing in the WP/SEA would have led him to believe that the GIS crew would be working on the LACT unit.[116] Shamrock's argument that Srubar testified "that [he] knew about the claimed work on the LACT unit before the explosion"[117] appears to be an improper extrapolation.

---

[109] Rec. Doc. 329 at pp. 4–8 (citing the testimony of Thaddeus Marks, Antonia Tamayo, Wilberto Ilagan, and Renato Dominguez).

[110]  Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at p. 2.

[111] *Id.* at p. 11.

[112] *Id.* at p. 8.

[113] *Id.* at pp. 12–20.

[114] Rec. Doc. 354-1, Deposition of Chris Srubar, dated Apr. 2, 2014, at p. 7.

[115] *Id.* at p. 8.

[116] Rec. Doc. 348-4, Deposition of Chris Srubar, dated Apr. 2, 2014, at p. 3.

[117] Rec. Doc. 348-2 at p. 10.

Turning to whether Shamrock owed Plaintiffs a duty, under Louisiana law "[d]uty is defined as the obligation to conform to the standard of conduct associated with a reasonable person in like circumstances."[118] As the Louisiana Supreme Court explained in *Meany v. Meany*:

> In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving.[119]

In this case, Seghers testified that Srubar assigned him the responsibility of attending GIS safety meetings and reporting on any changes to GIS's scope of work to Srubar.[120] A reasonable person in such circumstances—working in the hazardous environment of an offshore oil platform—would accurately report on any changes in the scope of work after being given an express instruction.

Third, Plaintiffs have shown that there are contested issues of fact regarding whether Seghers breached his duty to report on changes to GIS's scope of work. As noted above, a number of witnesses testified that the hot work on the LACT unit was discussed during the November 16, 2012 morning safety meeting that Seghers attended.[121] Further, Seghers admitted that he did not read the WP/SEA even though Srubar relied on the document in issuing hot work permits.[122]

Finally, Plaintiffs have shown a contested issue of fact as to whether the risk of harm was within the scope of protection afforded by the duty breached. Srubar testified that it would be a

---

[118] *Richardson v. Lloyds*, 48,715 (La. App. 2 Cir. 3/26/14), 136 So. 3d 953, 955.

[119] 94-0251 (La. 7/5/94), 639 So. 2d 299, 233.

[120]  Rec. Doc. 329-2, Deposition of Harold Seghers, dated Apr. 8, 2014, at p. 2.

[121] Rec. Doc. 329-3, Deposition of Curtis Dantin, dated Feb. 20, 2014, at pp. 2–3; *see also* Rec. Doc. 329 at pp. 4–8 (citing the testimony of Thaddeus Marks, Antonia Tamayo, Wilberto Ilagan, and Renato Dominguez).

[122] *Id.* at pp. 12–20.

"major problem" for work to be done on the LACT unit or the LACT pipe without his knowledge.[123] Plaintiffs have pointed to testimony suggesting that Seghers' failure to inform Srubar meant that LACT work was done without Srubar's knowledge.[124] As Shamrock acknowledges, work being done to the LACT unit ultimately precipitated the the November 16, 2012 explosion.[125]

Accordingly, the Court finds that there is a genuine dispute as to the material facts noted above, and Shamrock is not entitled to judgment as a matter of law on Plaintiffs' negligence claims.

## V. Conclusion

As discussed above, the Court will grant Shamrock's motion to strike the Tamayo and Ilagan Plaintiffs' opposition (Record Document 333). That opposition was deficiented by the Clerk's Office for failure to comply with the Local Rules, and further, the Tamayo and Ilagan Plaintiffs have indicated that they have no objection to Shamrock's motion. With respect to Shamrock's motion to strike GIS's opposition (Record Document 329), the Court will deny the motion as Shamrock's fault, or lack thereof, will directly impact GIS due to Louisiana's comparative-fault scheme and due to Shamrock's third-party claim for indemnity and defense costs. Finally, with respect to Shamrock's motion for summary judgment, the Court finds that there is a genuine dispute as to material facts concerning whether Seghers knew about the LACT unit work, whether Seghers should have known about the LACT unit work, and whether Seghers kept Srubar adequately apprised of the construction work being done on the platform. These disputed facts are material because it is undisputed that it was the work being done on the LACT unit that precipitated the incident here. Accordingly,

---

[123] Rec. Doc. 354-1, Deposition of Chris Srubar, dated Apr. 2, 2014, at p. 7.

[124] *See, e.g.*, Rec. Doc. 348-4, Deposition of Chris Srubar, dated Apr. 2, 2014, at p. 3.

[125] Rec. Doc. 310-5 at p. 6.

**IT IS HEREBY ORDERED** that Shamrock's "Motion to Strike the Tamayo and Illagan [sic] Plaintiffs' Memorandum in Response to Shamrock Management, L.L.C.'s Motion for Summary"[126] is **GRANTED**;

**IT IS FURTHER ORDERED** that Shamrock's "Motion to Strike Grand Isle Shipyard, Inc.'s Opposition to Shamrock Management, L.L.C.'s Motion for Summary Judgment"[127] is **DENIED**;

**IT IS FURTHER ORDERED** that Shamrock's "Motion for Summary Judgment"[128] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this <u>25th</u> day of July, 2014.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[126] Rec. Doc. 339.

[127] Rec. Doc. 340.

[128] Rec. Doc. 310.

23