**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EDNA TAJONERA,** *et al.* | **CIVIL ACTION NO: 13-366 c/w 13-0550, 13-2496, 13-5137, 13-5508, 13-6022, 13-6099, 13-0366, 13-6413, 14-374, 14-1714** |
| **v.** | |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC,** *et al* | **APPLIES TO ALL CASES** |
| | **JUDGE JOLIVETTE BROWN** |
| | **MAG. JUDGE NORTH** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN OPPOSITION TO**</u>
<u>**MOTION TO COMPEL SECOND DEPOSITION OF STEVE ARENDT**</u>

D&R Resources, LLC ("D&R") has moved this Honorable Court for an Order compelling Black Elk Energy Offshore Operations, LLC ("Black Elk") to re-produce its liability expert, Steve Arendt, for another deposition, with sanctions, because its counsel, Bill Brockman, was allegedly not given time to question Mr. Arendt during his 8.5 hour deposition, that included seven (7) hours of testimony. To the contrary, the record clearly shows that all counsel were given a fair opportunity to question Mr. Arendt. In fact, several attorneys for other parties questioned Mr. Arendt twice, without any complaint or comment by Mr. Brockman. As reflected by the transcript, Mr. Brockman never spoke up until after the conclusion of the deposition.

After failing to even ask to question Mr. Arendt during the 8.5 hour deposition, D&R now seeks to bring Mr. Arendt back for a follow-up deposition. D&R's Motion to Compel should be denied on the grounds that its request is overly burdensome, and it seeks only to harass Black Elk and Mr. Arendt by demanding that all parties reconvene to re-depose Mr. Arendt, who located in Houston, Texas. Alternatively, if the Court grants D&R's motion, Black Elk respectfully requests a protective order be issued limiting the questioning to counsel for D&R on

topics not already asked. Black Elk further requests that all costs incurred for any follow-up deposition be taxed to D&R for failing to ask its questions when originally given the opportunity.

## I.    RELEVANT FACTUAL BACKGROUND

On October 14, 2014, Black Elk offered its liability expert, Steve Arendt, for his discovery deposition in Houston, Texas, for all cases.[1] The deposition was noticed for one day (thus, seven hours) by counsel for the Tajonera/Corporal Plaintiffs.[2] Counsel for all defendants (and other New Orleans-based plaintiffs counsel) flew to Houston to be present for Mr. Arendt's deposition; Mr. Brockman attended by phone. As the court can imagine, scheduling and coordinating depositions with a large number of attorneys is often difficult; thus, when depositions are to last more than seven hours, those accommodations have been scheduled well in advance. No such request or accommodation was made here.

Mr. Arendt's deposition began at 9:24 am.[3] At 12:31 pm, after three hours of questioning from Plaintiffs' counsel, there was a break in the deposition for lunch, wherein the videographer calculated that there had been three hours of testimony given thus far.[4] At that point, counsels for Wood Group and GIS both requested two hours, thereby absorbing the remaining four hours of the available testimony time.[5] At this point, Mr. Brockman did not speak up to reserve time for questions.[6] The deposition was resumed at 12:58 pm and Plaintiffs' counsel continued his questioning.[7]

Around 1:15 pm, GIS' counsel, Bob Reich, began questioning Mr. Arendt, covering many of the topics already discussed. It should be noted that D&R and GIS are essentially

---

[1] *See* Affidavit of Charles Talley at ¶ 3, attached hereto as Exhibit "A."
[2] *See* Notice of Deposition, attached as Exhibit "B."
[3] *See* Deposition Transcript of Steve Arendt at p. 1, pertinent pages of which are attached as Exhibit "C."
[4] *See id.* at pp. 160-61.
[5] *See id.* at p. 161.
[6] *See* Talley Affidavit at ¶ 8.
[7] *See* Arendt Deposition at p. 161.

aligned in this litigation. D&R is a sub-contractor of GIS, and the two entities are so entwined that D&R's corporate representative constantly deferred to a GIS employee as being the only individual able to respond to certain D&R-related questions. Thus far, in the 35+ depositions that have been taken, D&R's counsel has rarely asked questions, as GIS' counsel typically covers topics germane to both parties.[8]

At 3:35 pm, after over two hours of repetitive and argumentative questioning by Mr. Reich (five total hours of testimony), Your Honor was called at the request of Wood Group's counsel seeking the Court's assistance in time management of this deposition, as Mr. Reich had no intention of restraining his time or passing the witness to the potential detriment of all other parties.[9] Your Honor instructed Mr. Reich to conclude his questioning in the next five minutes to afford all other counsel time to question Mr. Arendt.[10] During this off-the-record break, the length of the deposition was again discussed, and again, Mr. Brockman was silent.[11] Upon tendering the witness to counsel for Wood Group at approximately 3:45 p.m., Mr. Reich claimed that he had another hour of questioning.[12] Counsel for Shamrock was given an opportunity to question Mr. Arendt next.[13] After approximately 6.5 hours of testimony, with no other lawyers stating that they had any questions, Mr. Reich began his second round of questions,[14] followed by Wood Group[15] and the Plaintiffs.[16] At no point prior to the second round of questioning did Mr. Brockman give any indication that he intended to question Mr. Arendt.[17] Finally, around 5:40 p.m., after 8.5 hours of deposition time and seven (7) complete hours of testimony, the

---

[8] *See* Talley Affidavit at ¶ 9.
[9] *See* Arendt Deposition at pp. 307-312; *see also* Talley Affidavit at ¶ 10.
[10] *See id.* at p. 313; *see* Talley Affidavit at ¶ 11.
[11] *See* Talley Affidavit at ¶ 12.
[12] *See* Arendt Deposition at p. 316, lns. 1-2.
[13] *See id.* at p. 377.
[14] *See id.* at p. 395.
[15] *See id.* at p. 403.
[16] *See id.* at p. 404.
[17] *See* Talley Affidavit at ¶ 13.

deposition was concluded under the Rules and in accordance with Judge Brown's Minute Entry. Only then did Mr. Brockman speak up for the first time asking to question Mr. Arendt.[18]

It was understood from the onset that Mr. Arendt's deposition was going to be limited to one day and to be concluded after seven hours of testimony.[19] On and off the record, all counsel were advised of how much time remained for Mr. Arendt's deposition.[20] At no point did Mr. Brockman ever speak up to state that he had questions until after the seven (7) hours were exhausted.[21] Had he stated at any point during the over 8.5-hour day that he would like to reserve time, such time would have been reserved for him. But again, he remained silent. Undeniably, with so many parties and lawyers, complying with the seven-hour limit has been challenging; but in nearly every case, it has been accomplished. In other depositions that lasted longer than seven (7) hours, such was agreed-to in advance. Here, no such agreement or stipulation was made.[22] In nearly every deposition, discussions off the record about how much time was left for testimony and which parties wanted to ask questions has become routine to facilitate an orderly and appropriate deposition. Mr. Arendt's deposition was no different.

Here, Mr. Arendt's deposition was noticed for one day, and he is protected by the seven-hour limit for testimony. Black Elk's counsel, Chuck Talley, represented on the record that Mr. Arendt would possibly be re-offered for questioning if a showing of good cause was made as to why Mr. Brockman made no effort to speak up to question Mr. Arendt during the seven (7) hours of testimony (8.5 hours of actual deposition time).[23] D&R has failed to show the requisite "good cause." Thus, Black Elk should not be compelled to incur the significant expense of returning to

---

[18] *See* Arendt Deposition at p. 408; *see* Talley Affidavit at ¶ 15.
[19] *See* Talley Affidavit at ¶ 4.
[20] *See id.* at ¶ 7.
[21] *See* Talley Affidavit at ¶ 15.
[22] *See id.* at ¶ 6.
[23] *See* Arendt Deposition at p. 415.

Houston, Texas to defend another deposition of Mr. Arendt, who is charging $475/hour for deposition time. And undoubtedly, without a protective order, if Mr. Arendt is ordered to be deposed again, he will be subjected to another seven (7) hours of argumentative, repetitive, and harassing questions. The Rules of Civil Procedure are designed to prevent that from happening.

## II.   LAW AND ANALYSIS

### A.   APPLICABLE STANDARD.

Federal Rule 30(d) provides that "unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." At Mr. Arendt's deposition, there was no stipulation that his deposition would last past seven (7) hours, as several attorneys had flights to catch back to New Orleans that night. D&R has asserted that Judge Brown eliminated the seven rule in a minute entry.[24] However, Judge Brown removed the limit for the "**total number of deposition hours for each witness as long as it is reasonable**."[25] She expressly and clearly reiterated the rule that "**no witness shall be deposed for more than seven (7) hours in a single day**."[26] Further, the Court instructed the parties to "contact the Court if issues with respect to the length of depositions arise."[27]

To that end, D&R has requested the Court's intervention to force Black Elk to incur the expense of producing its liability expert for another round of questioning, now that all counsel have received and reviewed the transcript of the first deposition. In response, Black Elk requests – per the Court's Minute Entry – for guidance as to what is *reasonable*, urging that the production of Mr. Arendt will open the door for another seven (7) hours of deposition that will be used only to harass Black Elk and Mr. Arendt. These rules have been respected for the other deposed liability experts, but unsurprisingly, that courtesy is not being reciprocated to Black Elk.

---

[24] *See* Rec. Doc. 565-4 (emphasis added).
[25] Rec. Doc. 105 (emphasis added).
[26] *Id.* (emphasis added).
[27] *Id.*

And, with the upcoming deposition of Wood Group's liability expert, guidelines need to be defined; especially given the view of some parties that of the protections of the Federal Rules for depositions have been weakened by the Court's Minute Entry.

**B.** **MR. ARENDT'S DEPOSITION WAS REASONABLY TERMINATED AFTER SEVEN HOURS OF REPETITIVE AND ARGUMENTATIVE QUESTIONING.**

From early on in Mr. Arendt's deposition, it was clear that time may be an issue. As has been customary in this case, the attorneys who wished to question Mr. Arendt vocalized their desire to do so, and they provided their estimation of time needed. Mr. Brockman did not speak up. Again, when the first round of questioning completed, Mr. Brockman was silent and the same attorneys who had initially questioned Mr. Arendt proceeded to question him again. Yet, it was not until after the seven (7) hours had run that Mr. Brockman spoke up. Fearing that allowing D&R to question Mr. Arendt would only lead to further demands for questioning far beyond the seven (7) hours from all other counsel (Mr. Reich reiterated that he had another hour of questions), the deposition was terminated per the rules.

A review of the transcript shows that it was not Mr. Arendt who prolonged the deposition, but others. Namely, when Mr. Reich took over, the questioning of Mr. Arendt became more repetitive, harassing, argumentative and irrelevant, wasting valuable time that could have been used by Mr. Brockman or others to ask their questions.[28] For example, Mr. Reich continued to badger Mr. Arendt, demanding responses in the fashion he wanted them, and

---

[28] *See* Arendt Deposition at pp. 193-194 (several objections as to argumentative questioning); p. 250 ("REICH: Well, I understand that Black Elk has destroyed the evidence, so there is something about a presumption. But we don't have the evidence. You don't have the evidence. All I can do is assume that that is correct. If that is correct, that would be creating an unsafe scenario on the platform, right? SHEARMAN: Misstating the testimony of the witnesses. TALLEY: And object to the form of the question once again. REICH: You can answer."). Black Elk submits that Mr. Arendt's deposition was videotaped, thus, the argumentative tone and conduct on behalf of Mr. Reich that is not captured by the deposition transcript was captured by the video and can be supplied to the Court.

belittling the witness by arguing that his hypothetical, compound questions were "simple."[29] He would also demand that Mr. Arendt respond to his compound, confusing questions with nothing but a "yes" or "no," and interrupt Mr. Arendt when he did not start his answer with a "yes" or "no."[30] Such behavior would never be allowed at trial, yet Mr. Reich continues to exhibit such behavior in depositions, to the detriment of everyone participating.[31] For example:

> **REICH: But first of all, as I understand, you were originally hired by Black Elk's counsel of Vinson & Elkins to analyze the casualty and find out what happened and make recommendations as to how Black Elk could do something to avoid it happening again, correct?**
>
> **ARENDT: We – we were hired to do an accident investigation to determine what caused the accident and to come up with suggestions on how to prevent future accidents from happening.**
>
> **REICH: Ok. When I ask a "yes" or "no" question that can be answered "yes", or "no" you need to answer it "yes" or "no," not answer it with one little changed word that makes me have to ask it again. Okay? So, you can explain your answer, but I'm going to have to have her read the question back and answer my question, because you notice a difference in your answer and my question was I specifically asked you whether you were called upon or asked to make recommendations as to things Black Elk could do to avoid similar casualties. And your answer you specifically excluded that word. So, she is going to read my question back again, and answer my question, okay?**
>
> **TALLEY: And, Mr. Arendt, Mr. Reich has misstated the rules that apply to depositions. If your answer requires more than a "yes" or "no," or cannot be answered "yes" or "no," you are more than free to answer your question in any way you best see fit.**
>
> **REICH: Oh, that answer could be answered "yes" or "no." It is a pretty simple question. She will read it back.**
>
> **TALLEY: Object to the instruction.**

---

[29] *See* Arendt Deposition at p. 192 (After disliking Arendt's response to a particular question, Reich stated: Q: I wasn't asking you time. I asked you: What question would you have asked? … Answer my question."); p. 195 (Q: "Let me object to the responsiveness of the answer. Answer my question, sir. … The question was simple."); p. 249 (Q: Let me object to responsiveness. Simple question. …"); p. 262-3 ("Q: But you, of your own personal knowledge, do not know what was or wasn't moved. Fair statement? … A: We were told that nothing was moved. Q: Object to responsiveness. Simple question."); p. 304 ("Q: Object to the responsiveness. Simple question, sir.");

[30] *See id.* at pp. 178-180; 199-200; p. 315 ("I think if I get yes, no answers it is 30 minutes. But if we get 10-minute answer to what should be a 30-second answer ---" ); pp. 312-13.

[31] *See Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-3209, 2011 WL 164636, *4 (E.D. La. Jan. 19, 2011) (Knowles, M.J.) (sanctions against Reich for "instigat[ing] . . . discovery disputes" during depositions, and noting that Reich "did not treat the deponents here as he would have been required to treat them at a trial in a courtroom.").

**(Question read back.).**

**TALLEY: Object to the form of the question. Compound question.**

**ARENDT: No.[32]**

**…**

**REICH: So if Black Elk did a proper audit, it should have audited all of the GIS personnel, whether they were payroll employees or contract employees, correct?**

**ARENDT: Unless, as we were ---**

**REICH: But first answer "yes" or "no," then you can say – give the – the caveat.**

**TALLEY: Object ---**

**REICH: Is my statement correct? Yes or no?**

**TALLEY: Object to the instruction.**

**ARENDT: Yes.**

**REICH: Thank you.**

**ARENDT: Except that they would have to be known that, if fact, that contractors – subcontractor employees were going to be used by the contractor firm for those oil company projects.[33]**

Mr. Reich did this on several occasions, along with interrupting the witness's testimony to prevent Mr. Arendt from further explaining his testimony.[34] For instance:

**REICH: So, is it in your opinion, as somebody who specializes in hot work permits, is it a proper and valid hot work permit or not?**

**TALLEY: Same objection.**

**ARENDT: But there are some omissions that you would want to ask ---**

**REICH: So, it is not valid?**

**ARENDT: The permit is valid, but it is not complete ---**

**REICH: Okay.**

**ARENDT: --- in terms of the – some of the things that should have been ---**

**REICH: That permit indicates that ---**

**ARENDT: --- included on here ---**

---

[32] Arendt Deposition at pp. 178-180.
[33] *Id.* at pp. 199-200.
[34] *See e.g., id.* at p. 190-192; 202 (lns. 14-20); 210 (lns. 10-18); 216 (lns. 1-22) through 217 (lns. 1-14); p. 231 (lns. 1-9); pp. 237-240; p. 243 (lns. 12-25); p. 256 (lns. 7-22) through p. 257 (lns. 1-14); p. 275 (lns. 19-25) through p. 276 (lns. 1-25); p. 281 (lns. 1-12).

**TALLEY: Let the witness finish his answer, Bob.**

**REICH: That permit indicates ---**

**SHEARMAN: He still hasn't finished his answer.**

**REICH: He has already finished. He ---**

**SHEARMAN: No, he isn't. You are making him finish.**

**TALLEY: When I tell you this, you have to give him ---**

**REICH: He finished.**

**TALLEY: --- time to finish.**

**REICH: He finished.**

**SHEARMAN: What you wanted to hear him say.**

**REICH: He put – no. He put a period.**

**SHEARMAN: No, he didn't.**

**REICH: That ---**

**SHEARMAN: No, he didn't.**

**TALLEY: Mr. Arendt, are you finished?**

**ARENDT: No.**

**SHEARMAN: Thank you.**

**ARENDT: --- the – the work authorized. There is no signature for the work being authorized.[35]**

This is a typical exchange, instigated by Mr. Reich that has needlessly prolonged depositions. When it was evident that Mr. Reich would not restrain himself so that other parties would have time to question Mr. Arendt, the Court was called and Your Honor instructed Mr. Reich to limit his remaining questioning to five (5) more minutes. Upon return to questioning, this time limit prompted Mr. Reich to again demand that Mr. Arendt tailor his answers as counsel wanted them.

**REICH: Now, hypothetically assume, if you will, that as the witnesses have testified, the line was cut, water came out, they – they used a gas detector and it was free of hydrocarbons. At that point, you would agree that there were no hydrocarbons in the line that were flowing out, correct?**

**ARENDT:  Well, there were two ends of the –**

**REICH: You need to answer –**

---

[35] *Id.* at pp. 238-240.

> **ARENDT: --- piping.**
>
> **REICH:Yes or no. I've got five minutes. I need a "yes" or "no" answer.**
>
> **WELCH: You can't instruct him.[36]**

As evident from the few excerpts above, and as D&R acknowledges in its letter, the deposition continued to be held up by arguments of counsel; mainly by and with Mr. Reich. Indeed, as the Court is aware, this is not the first deposition in this case during which this Court has been contacted regarding Mr. Reich's behavior.[37]   Black Elk acknowledges and respects the Court's directive that the total number of hours for each deposition should not be limited to seven hours when reasonable, but as history in this case has indicated, certain counsel have been unable to show any restraint without the Court's involvement. Now that the depositions involve retained experts, these lengthy depositions are becoming increasing costly. As stated, Mr. Arendt is charging $475/hour for deposition time that is being charged to Black Elk; not to mention the cost of a court reporter and videographer. Should Black Elk be compelled to produce Mr. Arendt for a follow-up deposition, the expenses associated therewith should be taxed to D&R, as Mr. Brockman had ample time during the course of the 8.5 hour day to speak up and ask questions, despite the delays outlined above, But again, he remained silent.

### C.    SANCTIONS ARE NOT WARRANTED AGAINST BLACK ELK.

The sanctions requested by D&R should be taxed against those parties who actually delayed, impeded and frustrated the deposition of Mr. Arendt, contributing to the exhaustion of the seven hours; namely, GIS. Mr. Talley only stopped the deposition at the completion of seven

---

[36] *Id.* at pp. 312-13.
[37] *See also, Landers v. Kevin Gros Offshore, LLC*, No. 08-1293, 2009 WL 2046587 (E.D. La. July 13, 2009) (Shushan, M.J.) (sanctions imposed on Reich for behavior in depositions, including asking argumentative, cumulative, and harassing questions, interrupting witnesses, using an argumentative tone of voice, accusing the witness of changing testimony, and yelling at the witness); *Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-3209, 2011 WL 164636, *6 (E.D. La. Jan. 19, 2011) (imposing sanctions against Reich for his behavior at depositions, and noting that Reich "did not treat the deponents here as he would have been required to treat them at a trial in a courtroom."); *Thomas v. Ockin D. Marine Serv's. LLC*, No. 12-1315, 2013 WL 2459217, at *1 (E.D. La. Jun. 6, 2013) (Reich's deposition behavior was admonished but not sanctioned).

(7) hours of testimony per the Court's Minute Entry. And, Mr. Talley requested that D&R simply show good cause for its demand to re-open Mr. Arendt's deposition. D&R has provided no explanation for Mr. Brockman's failure to speak up at the October 14, 2014 deposition, but asserts that he has "several lines of questioning" that he wishes to pursue that were not covered. Anticipating that all counsel will take an opportunity to re-depose Mr. Arendt for another seven (7) hours if allowed, Black Elk thought better to allow the Court to address this issue, per its instruction to contact the court "if issues with respect to the length of depositions arise."[38] Black Elk respectfully submits that given the Court's Order and the lack of good cause shown by D&R, sanctions are not warranted in this instance against Black Elk.

Finally, Black Elk respectfully requests that D&R could more easily – and much more cost effectively – put its questions in writing to be answered by Black Elk or Mr. Arendt, rather than seeking to depose Mr. Arendt again in Houston. Alternatively, should the Court grant D&R's motion, Black Elk requests that pursuant to Rule 26, the Court limit the scope of Mr. Arendt's deposition to questions from D&R, and only and on grounds not already covered in the October 14, 2014 deposition, as well as assessing the costs of the deposition upon D&R.

## III.   CONCLUSION

Black Elk Energy Offshore Operations, LLC respectfully request that the Motion to Compel filed by D&R be denied. Alternatively, if the motion is granted, Black Elk respectfully requests that the follow-up deposition of Steve Arendt be done at D&R's cost and limited to only questions from D&R pertaining to new lines of questioning.

Respectfully submitted,

_____/s/ Tod J. Everage_____
**CHARLES R. TALLEY (#12634) T.A.**
**MICHAEL J. O'BRIEN (#27588)**

---

[38] *See* Rec. Doc. 105.

11

**TOD EVERAGE (#32445)**
**DYLAN T. THRIFFILEY (#31995)**
**SHANNON A. SHELTON (#34762)**
KEAN MILLER LLP
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone:  (504) 585-3050
Fax:  (504) 585-3051
chuck.talley@keanmiller.com
michael.obrien@keanmiller.com
tod.everage@keanmiller.com
dylan.thriffiley@keanmiller.com
shannon.shelton@keanmiller.com
**Attorneys for Black Elk Energy Offshore Operations, LLC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 25th day of November, 2014 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

/s/ Tod J. Everage
TOD J. EVERAGE