UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EDNA TAJONERA, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF AVELINO TAJONERA, DECEASED, AND AS NEXT FRIEND OF MAVERICK TAJONERA AND EDRIAN TAJONERA, MINOR CHILDREN, and JADE TAJONERA<br>      Plaintiffs,<br><br>-v-<br><br>BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC<br>      Defendants. | CIVIL ACTION NO.: 2:13-CV-00366<br>**APPLIES TO:** 13-00366<br><br>SEC "G"; MAG. 5<br><br>JUDGE JOLIVETTE BROWN<br><br>MAG: JUDGE NORTH |

## TAJONERA PLAINTIFFS' THIRD AMENDED COMPLAINT

### I. PARTIES

1.     Plaintiffs are Edna Tajonera, individually and on behalf of the estate of Avelino Tajonera, and as next friend of Maverick and Edrian Tajonera, minor children, and Jade Tajonera. The Plaintiffs are citizens of the Philippines. Edna Tajonera is the spouse of Avelino Tajonera. Maverick and Edrian Tajonera are minor children of Avelino Tajonera. Jade Tajonera is the daughter of Avelino Tajonera.

2.     Defendant Black Elk Energy Offshore Operations, LLC is a Texas corporation with its headquarters located in Houston, Texas. Its headquarters are located at 11451 Katy Freeway, Suite 500, Houston, Texas 77079. It has filed an answer in this matter.

3.     Defendant Wood Group PSN, Inc. d/b/a Wood Group Production Services, Inc., is a Texas corporation with its headquarters located at 17000 Katy Freeway, Ste. 150, Houston, Texas 77094. Defendant conducts business and maintains offices in this District. Its registered

1

agent for service is Corporation Service Company, 320 Somerulos St., Baton Rouge, Louisiana, 70802-6129.  It has filed an answer in this matter.

4. Defendant Enviro-Tech Systems, LLC is a Louisiana corporation with its headquarters located at 78219 Oak Ridge Rd., Folsom, Louisiana, 70437.  Its registered agent for service is Frank Richarand, 78219 Oak Ridge Rd., Folsom, LA  70437.  It has filed an answer in this matter.

5. Defendant Compass Engineering & Consultants, LLC is a Louisiana corporation with its headquarters located at 2505 Southeast Evangeline Thruway, Lafayette, Louisiana, 70508.  Its registered agent for service is Hewitt Brooks Bernard, 2505 Southeast Evangeline Thruway, Lafayette, Louisiana, 70508.  It has filed an answer in this matter.

6. Defendant Shamrock Management, LLC is a Louisiana corporation with its headquarters located at 4800 Highway 311, Houma, Louisiana, 70360.  Its registered agent for service is Jeffery L. Trahan, 4800 Hwy. 311, Houma, Louisiana, 70360.  It has filed an answer in this matter.

7. Defendant Grand Isle Shipyards, Inc. is a Louisiana corporation with its corporate headquarters located at 18838 Highway 3235, Galliano, Louisiana.  It is authorized to do business and presently doing business in the State of Louisiana and may be served through its registered agent for service of process in Louisiana, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, Louisiana, 70808.  It has filed an answer in this matter.

## II.  JURISDICTION AND VENUE

8. Avelino Tajonera was on the Black Elk Energy Offshore Operations LLC West Delta 32 Block platform ("the platform" or "WD 32") in the Gulf of Mexico when he was critically injured by an explosion and fire on the platform.  Mr. Tajonera was evacuated to a hospital in

New Orleans, Louisiana, where he died from the burns and injuries he suffered while working on the platform. The platform is located in the Gulf of Mexico, approximately 17 miles Southeast of Grand Isle, Louisiana, in 52 feet of water. The platform is owned and operated by Black Elk Energy Offshore Operations, LLC.

9. The platform is a fixed platform located on the continental shelf off the coast of Louisiana and is attached to the seabed. The platform is an artificial island pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. 1301 ("OCSLA").

10. Upon information and belief, at the time of the explosion Avelino Tajonera was on the platform and was not engaged in a traditional maritime activity.

11. Pursuant to 43 U.S.C. 1333 (2)(A), to the extent they are not inconsistent with Federal laws, state laws are declared to be the law of the United States for fixed structures that would be within the area of the state if its boundaries were extended seaward to the outer margin of the continental shelf. Consequently, this matter is governed by the State Law of Louisiana.

12. While Louisiana civil law governs this matter, this Court has jurisdiction over this action pursuant to 14 U.S.C. 1333 (2)(A) (giving federal courts jurisdiction over OCSLA claims while applying state law).

13. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Venue is also proper in this District pursuant to 18 U.S.C. 1965(a) because Defendant has agents and/or transacts affairs in the Eastern District of Louisiana.

## III.  FACTUAL BACKGROUND

A.  **Black Elk Energy**

14.     Black Elk Energy is an oil and gas company headquartered in Houston, Texas, and was the designated operator of WD 32.  According to Black Elk's CEO and President, John Hoffman, Black Elk is "part of an evolution in the Gulf of Mexico where [older] properties become unimportant, if you will, to the larger companies…and we go into these properties and continue to get additional reserves."  Its business model involves reworking old wells to make them more productive while plugging those that are no longer economically viable.  Since its founding in 2007, Black Elk expanded rapidly.  Black Elk acquired 98 platforms in the Gulf of Mexico in 2011 and its revenues increased to $339 million from $18 million two years earlier.

15.     Black Elk was struggling to execute its strategy of wringing oil and gas from aging wells in the Gulf of Mexico at the time of the November 16, 2012 explosion on the West Delta 32 platform.  Black Elk faced difficulties ranging from operating losses, to management turmoil, to safety violations.

16.     In September of 2012, Standard & Poor's Corp. downgraded Black Elk's notes to B-minus, citing the company's weak liquidity.  By the end of September 2012, Black Elk's credit lines were almost fully drawn and it had fallen out of compliance with a debt covenant.  In the third quarter of 2012, Black Elk's oil and gas production fell by about 13%, its revenues plunged 60%, and its operating losses topped $25 million.  The company cut costs related to drilling wells and maintaining platforms during the quarter.  Its November 13, 2012 Form 10-Q, filed with the SEC, cited initiatives that helped lower operating expenses by 7% from a year earlier.

17.     Black Elk has a history of safety problems.  Since 2010, Black Elk has been cited at least 315 times for safety violations.  Of these violations, the Bureau of Safety and Environmental

Enforcement labeled 157 of them as "severe or threatening." Twelve of the violations were deemed severe or threatening to the safety of personnel or the environment and required shut-ins of entire facilities until the violations were corrected. In October of 2012 alone, Black Elk was cited for 45 incidents of non-compliance.

18. The BSEE issued a $307,000 civil penalty fine to Black Elk for a 2010 incident of non-compliance. The penalty focused on a Surface-controlled Subsurface Safety Valve (SCSSV) that was not tested for leakage at the required interval of six months. When the SCSSV was tested, it was found leaking. The SCSSV was not repaired or replaced for 117 days.

19. In a November 21, 2012 letter, the BSEE proclaimed that the operating performance of Black Elk must be improved immediately. Failure to improve performance will subject Black Elk to additional enforcement actions including referral to the Bureau of Ocean Energy Management for revocation of Black Elk's status as an operator.

20. Following the WD 32 explosion, BSEE instructed Black Elk to keep shut-in facilities in such status until it provides the BSEE with documentation of corrective actions taken to safely return each facility to operations status. Black Elk was instructed to cease "hot work" on its facilities until it demonstrates that steps have been taken to improve hazard identification, training and oversight, and until a safety manager is in place whose responsibility it will be to improve hazard identification and training.

21. The BSEE stated, "Our determination of unacceptable performance follows numerous troubling safety incidents involving Black Elk facilities," including the November 16th explosion and the issuance of 45 incidents of non-compliance in October of 2012. BSEE further cited a "number of significant safety violations that demonstrate a disregard for the safety of personnel,"

such as an October 2011 incident involving the use of an acid-based chemical that resulted in the hospitalization of six workers.

**B.     Wood Group, Enviro-Tech, Compass, Shamrock, and Grand Isle Shipyards**

22.    Wood Group is a production services company that provides, among other things, operations and management personnel for offshore platforms.  Wood Group personnel were on the platform at the time of the explosion.  Wood Group contracted with Black Elk to manage production operations at the WD 32 complex.  A Wood Group employee was designated at the Person-in-Charge, or "PIC", on the platform.

23.    Enviro-Tech provides water treatment services.  Enviro-Tech personnel were on the platform at the time of the explosion.  Enviro-Tech contracted with Black Elk to replace the existing flotation cell on the WD 32 E platform.

24.    Compass Engineering provides management and consulting services.  Compass Engineering personnel were on the platform at the time of the explosion.  Compass was retained by Black Elk to manage and oversee construction work at the WD 32 complex and to coordinate work among the contractors working at WD 32.

25.    Shamrock Management provides management and production personnel.  Shamrock personnel were on the rig at the time of the explosion.  Upon information and belief, Shamrock personnel were performing work at the same time as Avelino Tajonera.

26.    Grand Isle Shipyards (GIS) provides construction services.  Grand Isle Shipyards contracted with Black Elk to provide workers for the various construction projects at the WD 32 complex.

27.    At all material times, Wood Group and/or Compass Engineering and/or Shamrock Management and/or Enviro-Tech and/or GIS acted as Black Elk's company man, agent,

6

representative or designee in connection with overseeing the work performed by Avelino Tajonera.

**C.     The Black Elk Platform Explosion**

28.     On November 16, 2012, at approximately 8:45 a.m. CST, an explosion and fire occurred on the Black Elk Energy Offshore Operations LLC West Delta 32 Block platform, located in the Gulf of Mexico approximately 17 miles Southeast of Grand Isle, Louisiana, in 52 feet of water. The owner and operator of the lease and platform is Black Elk Energy Offshore Operations, LLC.

29.     The platform is a fixed production platform consisting of three bridge-connected platforms (A, D, and E). Hydrocarbons from WD 32 are sold through a pipeline owned by Energy XXI. Black Elk purchased the lease in 2008. In November 2011, Black Elk developed a project to upgrade the LACT (Lease Automatic Custody Transfer system). On February 20, 2012, Black Elk had workers in place and ready to begin the LACT upgrade, but the work was cancelled because Black Elk failed to submit the safety flow diagrams to BSEE. Black Elk used the delay to identify ways the project could be completed without welding on the platform, eventually deciding to fabricate and weld pipe onshore and move it to the rig, which would negate hazards associated with welding and save installation time.

30.     In August of 2012 the WD 32 platform was shut in due to hurricane damage on the Energy XXI pipeline. Black Elk used the shut in to upgrade several systems on WD 31. On October 31, 2012 Energy XXI, the company repairing hurricane damage to the pipeline to WD 32, notified Black Elk that it expected to complete pipeline repairs on November 15, 2012. Black Elk was working under a project completion deadline of November 16, 2012. The LACT

upgrade was added to the original scope of work in early November, after workers first arrived on the platform.

31. When GIS and D&R workers arrived on the platform they were told by Compass Engineering that the platform was shut-in, pipes were purged, and the platform was safe. On November 10, 2012, the Compass consultant was unable to locate the prefabricated LACT piping, which would negate the need for welding work on the LACT upgrade. On November 12, at the instruction of Black Elk, the Compass consultant ordered new LACT piping from GIS, which would have to be welded onboard. The piping arrived November 14th or 15th.

32. Black Elk was aware that performing the LACT upgrade work with onboard welding posed a greater risk than performing the upgrade with piping that did not require welding. After failing to find the missing piece of LACT piping that did not require welding, Black Elk chose to order piping that required welding in order to save time and money, assuming fabrication of the piece that did not require welding would take more time to fabricate and cost more money. This decision is contrary to Black Elk's policy of fabricating materials onshore to avoid field welds when feasible. Despite the increased risk due to welding, Black Elk did not issue a Management of Change. Black Elk employee Monte Richard gave Compass specific, step by step instructions on how to perform the LACT upgrade and specifically instructed Compass regarding how to perform the upgrade with field welds.

33. At around 9:00 a.m. on November 16, 2012, welding work to install a flange on the inlet piping to the wet oil tank (part of the LACT project) commenced and explosions occurred. According to Black Elk CEO and President John Hoffman, workers were cutting a line and installing a valve when oil vapor contained in one or more tanks was ignited and exploded.

34. The force of the explosion blew three large tanks hundreds of feet into the air. Two tanks landed in the Gulf of Mexico. The other landed on a large industrial crane on the platform, bending the boom of the crane nearly ninety degrees before crashing to the platform. The force and heat from the explosion melted console equipment and warped and bent metal floors and I-beams.

35. The explosion was caused by no fault of Avelino Tajonera and was caused solely by the negligence of the Defendants as set forth more fully herein.

36. After the explosion, two workers were reported missing and seven workers were transported to hospitals. The body of missing worker Ellroy Corporal was recovered from the sea floor underneath the platform on November 17, 2012. The body of missing worker Jerome Malagapo was recovered on November 28, 2012 and subsequently identified by dental records.

37. Avelino Tajonera suffered severe burns and other injuries as a result of the fire and explosion and was transported to the hospital in New Orleans, Louisiana. After suffering for seven days, Mr. Tajonera died of his injuries on November 23, 2012. The Certification of Death states Tajonera's cause of death to be "Complications due to thermal injuries secondary to rig explosion on 11/16/12," and notes that the location of injury was "West Delta 32 Federal Waters, Grand Isle, LA 70358 United States." The Certification describes Tajonera as a "victim of rig explosion."

38. At the time of the explosion, Avelino Tajonera was on the platform. The platform is a fixed production platform for the production of minerals and exists on the outer continental shelf. At the time of the explosion, Mr. Tajonera was not engaged in maritime activities but was, according to Black Elk, engaged in a construction project on the platform.

39. Upon information and belief, and as cited by BSEE, the failure to properly secure the oil tanks, purge their pipelines, and follow established hot work procedures allowed the flammable vapors to reach the hot work area where workers were tack welding a flange, causing explosions and fires.

40. Upon information and belief, and as cited by BSEE, Defendants did not adhere to welding and burning regulations outlined in 30 CFR 250.113. Defendants, including but not limited to Black Elk, the Compass consultant, Wood Group PIC, and GIS supervisor, failed to inspect the area in which the work was to be performed for fire and explosion hazards. The Wood Group PIC did not issue written authorization for the work using the company's Welding and Burning Authorization Form. Defendants, including but not limited to Black Elk, Compass, GIS, and Wood Group, allowed hot work to be performed on piping that contained a flammable substance, but did not isolate or render the piping inert. Defendants failed to properly designate a Fire Watch. Only one person was designated Fire Watch for three separate hot work areas. Only one hot work permit was issued for multiple hot work locations. The Fire Watch did not have a portable gas detector in use the day of the incident.

41. Upon information and belief, and as cited by BSEE, there was a lack of supervision by Defendants, including Black Elk, Compass, GIS, and Wood Group. Black Elk did not ensure that all persons on the platform followed Safe Work Practices. Hot work was performed without adequate supervision and guidance from the Defendants. Failure to supervise resulted in welding work proceeding under the faulty assumption that appropriate safety measures had been taken. Wood Group placed an inexperienced C operator in charge of issuing hot work permits without providing him with training and guidance. Wood Group also sent a Shamrock employee, who had never seen the Scope of Work, to attend the morning safety meetings on Wood Group's

behalf and report whether there were any changes to the scope of work. The Shamrock employee failed to report the LACT work was taking place on November 16, 2012. Defendants were not properly involved in the planning and execution of the hot work being performed.

42. The Defendants' planning was inadequate to properly complete the LACT modification. The JSA and hot work permits were not written specific to the task. Hot work permits were improperly filled out, resulting in failure to identify hazards. Hot work permits were not reviewed by the Wood Group PIC, allowing errors to go uncorrected. The Wood Group PIC failed to communicate effectively with the other contractors aboard the WD 32 complex by failing to participate in safety meetings and not performing regular walkthroughs of construction sites. Compass told Black Elk that the LACT unit upgrade requiring hot work and welding would be completed by 8:00 or 9:00 p.m. on November 16, 2012, and Black Elk knew, based on the arrival of the fabricated LACT piping and the amount of time the job would take, that the hot work would be taking place on November 16, 2012. Despite its knowledge that the hot work was taking place, it undertook no efforts to ensure that HWPs were properly issued, or lines were made safe for hot work.

43. According to BSEE, Black Elk's failure to manage contractors and failure to adhere to established polices created a "poor at best" safety culture aboard WD 32, and the lack of a safety culture contributed to the explosion and fire. Some of the Defendants' failures included but are not limited to the following: Black Elk failed to perform actions necessary to ensure a BSEE approved hot work plan was being followed. Black Elk failed to communicate changes in the Scope of Work to Wood Group. The Compass consultant did not effectively communicate changes in the project to other contractors. The Compass consultant failed to properly perform walkthroughs of the construction project areas, resulting in a reduced ability to identify hazards.

The Wood group operators failed to maintain adequate control over WD 32 and failed to maintain effective communication with all workers onboard. The Compass consultant did not sign daily JSA's. The GIS supervisor cannot confirm if GIS or DNR employees read the JSA's. The GIS supervisor made no effort to ensure hot work areas were clear of hydrocarbons or flammable material. GIS provided non-functioning gas detectors.

44. Black Elk failed to demand accountability for implementation of, or provide resources for, an effective SEMS (Safety and Environmental Management Systems) program. The Black Elk SEMS program failed to include a mechanism for the establishment of safe work practices designed to minimize the risks associated with operating, maintenance, and modification activities and handling of materials that could affect safety of personnel. The Black Elk SEMS program failed to include a mechanism to ensure Defendants followed Black Elk safe work practices. Black Elk failed to document the existence of an agreement with Defendants on appropriate contractor safety policies and practices. Black Elk failed to verify that Defendants were using established safety procedures. Black Elk's SEMS program failed to include procedures and verification that Defendants understood and performed their assigned duties. Upon information and belief, the Black Elk SEMS program was created in Houston, Texas, and decisions regarding its implementation on WD 32 were made in Houston, TX.

## IV. CAUSES OF ACTION

**A.      Application of OCSLA**

45.     Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

46.     This action is governed by 43 U.S.C. 1301, the Outer Continental Shelf Lands Act, because the explosion and fire took place on a fixed platform on the continental shelf, maritime law does not apply of its own force, and the applicable laws of the State of Louisiana are not

inconsistent with Federal law. Consequently, the law of the State of Louisiana applies as surrogate federal law under OCSLA.

### B. Cause of Action – Survival Action for Negligence Pursuant to La. Civ. C. Art. 2315.1

47. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

48. Pursuant to La. Civ. C. Art. 2315.1, Edna Tajonera, surviving spouse of Avelino Tajonera, Jade Tajonera, a child of Avelino Tajonera, and Edna Tajonera as next friend of Maverick and Edrian Tajonera, children of Avelino Tajonera, bring claims for all damages for injury to Avelino Tajonera.

49. The elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by Avelino Tajonera up to the moment of death. If there is even a scintilla of evidence showing any pain or suffering by a victim prior to his death, damages are warranted in a survival action.

50. It is undisputed that Avelino Tajonera endured incomprehensible pain and suffering as a result of burns sustained as a result of the explosion. Mr. Tajonera suffered for seven days, in excruciating pain, before dying from his burns. Mr. Tajonera also lost earnings and suffered other economic damages prior to his death.

### C. Cause of Action – Wrongful Death Pursuant to La. Civ. C. Art. 2315.2

51. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

52. Pursuant to La. Civ. C. Art. 2315.2, Edna Tajonera, surviving spouse of Avelino Tajonera, Jade Tajonera, a child of Avelino Tajonera, and Edna Tajonera as next friend of Maverick and Edrian Tajonera, children of Avelino Tajonera, bring claims for all damages sustained as a result of the death of Avelino Tajonera.

53. La. Civ. C. Art 2315.2 grants to designated beneficiaries the right to recover from a tortfeasor such damages as the beneficiaries have suffered if a person dies as a result of a tort. The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter. Avelino Tajonera died as a result of the negligence and gross negligence of the Defendants and the Plaintiffs have suffered damages as a result.

**D.     Cause of Action – Negligence Pursuant to La. Civ. C. Art. 2315 & 2316**

54. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

55. The conduct of the Defendants created a dangerous condition on Black Elk Energy Offshore Operations LLC West Delta 32 Block platform. The Defendants' actions and omissions were the cause of the explosion, fire, and injuries to Avelino Tajonera.

56. According to Black Elk CEO John Hoffman, the explosion occurred as a result of cutting into a pipe which was connected to tanks containing oil and/or gas vapor. The pipelines and tanks should have been depressurized, purged, and filled with an inert gas prior to any construction work on the lines. Depressurizing and purging the lines and tanks and providing hazard identification, training, and oversight to workers is the responsibility of the owner/operator, Black Elk and/or Defendants Wood Group, Compass Engineering, Shamrock Management, GIS, and/or Enviro-Tech. Defendants' failure to perform these responsibilities, among others, caused the explosion and the death of Mr. Tajonera.

57. Defendants owed a duty of care to the Plaintiff to provide a safe working environment, hazard identification, training, oversight, safety management procedures, proper supervision, sufficient personnel, and to exercise due care and caution. Defendants failed to adequately brief, instruct, and direct Tajonera on the Black Elk platform. Defendants breached their duties to

Avelino Tajonera and the breach caused injury and death to Avelino Tajonera. As a result of his injury and death, Avelino Tajonera and his wife and children have suffered damages.

### E.  Cause of Action – Strict Liability Pursuant to La. Civ. C. Art. 2317.1

58. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

59. The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. Civ. C. Art. 2317.1.

60. Black Elk Energy Offshore Operations, LLC is the owner of the West Delta 32 platform. Defendants acted as custodian of the platform. That platform contained defects which presented an unreasonable risk of harm to workers on the platform, including Avelino Tajonera. Among those defects were pipelines and tanks which had not been properly purged prior to construction work. Those defects caused explosion, fire, and injuries to Mr. Tajonera. Defendants knew, or in the exercise of reasonable care should have known, of the defects which caused the explosion. Defendants failed to exercise reasonable care which would have prevented the explosion.

### F.  Punitive Damages for Gross Negligence of Black Elk and Wood Group

61. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

62. La. Civ. C. Art. 3546 provides that a Louisiana court can award punitive damages if two of three criteria are met: (1) punitive damages are authorized by the state where the injury-causing conduct occurred; and/or (2) punitive damages are authorized by the state where the injury occurred; and/or (3) punitive damages are authorized by the state where the defendant is domiciled. Comment (f) notes that the Article 3546 does not designate the measure of punitive

damages nor does it designate the state whose substantive law is to provide such measure. The choice of law from among differing standards of punitive damages is left to the court and should be guided by the principles of Article 3542. Thus, the Court is free to apply measures and principles of Louisiana punitive damages law, or the laws of another state, to Defendants' conduct..

63. Black Elk is headquartered and domiciled in Houston, Texas. Wood Group is headquartered and domiciled in Houston, Texas. Conduct that caused these injuries, including but not limited to Black Elk and Wood Group's decisions regarding safety policies, procedures, and protocol, occurred at their Houston, Texas headquarters. In Texas, corporate safety policies, or the lack of them, can serve as the basis for a gross negligence finding, as can failure to supervise employees, vice principals, and corporate operations. Louisiana law authorizes this Court to award punitive damages under La. Civ. C. Art. 3546.

64. Black Elk employees based in Houston, Texas made a conscious and deliberate decision to proceed with work in a manner that they knew involved increased risk, and did so in order to save time and money. Black Elk decided to proceed with a change in the LACT upgrade work that would involve hot work, and Black Elk knew the work would take place on November 16, 2012. Despite knowing that welding deviated from the scope of LACT work originally contemplated, and knowing the increased risk, they took no steps to issue a Management of Change order or ensure that hot work was performed safely. The acts and omissions of Defendants involved an extreme degree of risk, considering the probability and magnitude of harm to others, and Defendants had actual, subjective awareness of the risks but proceeded with conscious indifference to the rights, safety, and welfare of others.

65. While La. Civ. C. Art. 3546 allows the Court to decide which substantive law to apply, under Texas Law Defendants Black Elk and Wood Group are liable to Plaintiffs for exemplary damages for gross negligence pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a)(3). Avelino Tajonera's death resulted from Defendants' willful acts or omissions or from Defendants' gross negligence, which also entitles Avelino Tajonera's spouse and children to exemplary damages under Texas Constitution art. XVI, § 26.

66. Application of Texas law is supported by La. Civ. C. Art. 3543, which provides that issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for another standard of conduct.

## V. DAMAGES

67. Plaintiffs incorporate each allegation set forth above as if set fully forth herein.

68. Defendants proximately caused injury and death to Avelino Tajonera, which resulted in the following damages to the Plaintiffs:

> The estate of Avelino Tajonera:
>
> a. Physical pain in the past.
>
> b. Mental anguish in the past.
>
> c. Disfigurement in the past.
>
> d. Physical impairment in the past.
>
> e. Medical expenses in the past.
>
> f. Loss of earning capacity in the past and future.
>
> g. Loss of consortium in the past.
>
> h. Exemplary & Punitive damages.
>
> Edna Tajonera, Jade Tajonera, Maverick Tajonera, and Edrian Tajonera:

a. Loss of companionship and guidance in the past and future.

b. Mental anguish in the past and future.

c. Loss of earning capacity and support in the past and future.

d. Loss of consortium in the past and future.

e. Loss of household services in the past and future.

f. Exemplary and Punitive damages.

## VI. PRAYER

69. For these reasons, Plaintiffs ask for judgment against Defendants for the following:

a. Actual damages;

b. Exemplary damages;

c. Pre-judgment and post-judgment interest;

d. Costs of suit;

e. All other relief to which they may be entitled or which the Court deems appropriate.

## VII. JURY TRIAL DEMAND

70. Plaintiffs demand a trial by jury as to all claims.

Respectfully submitted,

/s/ Peter B. Schneider_____
Peter B. Schneider (*pro hac vice*)
Ryan R. C. Hicks (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS, LLP
3700 Buffalo Speedway, Suite 1100
Houston, Texas 77098
Telephone: (713) 338-2560
Facsimile: (866) 505-8036
gwallace@schneiderwallace.com
ccottrell@schneiderwallace.com
pschneider@schneiderwallace.com

>Joseph C. Peiffer (LA Bar No. 26459)
>PEIFFER ROSCA ABDULLAH
>CARR & KANE
>201 St. Charles Avenue, Suite 4610
>New Orleans, Louisiana 70170
>Telephone: (504) 523-2434
>Facsimile: (504) 523-2464
>jpeiffer@praclawfirm.com
>
>Ellaine A. Carr (*pro hac vice*)
>ELLAINE CARR & ASSOCIATES, PLLC
>2434 Pass Road, Suite A
>Biloxi, Mississippi 39531
>Telephone: (228) 273-4410
>Facsimile: (866) 929-9201
>ecarr@ellaineecarrlaw.com
>
>Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 17th day of February, 2015 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

>/s/ Peter Schneider_____