UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDNA TAJONERA, ET AL.                                    CIVIL ACTION

VERSUS                                                   NUMBER: 13-0366
                                                          AND CON. CASES

BLACK ELK ENERGY OFFSHORE                                SECTION: "G"(5)
OPERATIONS, LLC, ET AL.

**<u>ORDER AND REASONS</u>**

Before the Court is Black Elk's Motion for Protective Orders or Alternatively, an Order Establishing Deposition Limitations.  (Rec. doc. 583).  The motion seeks certain protections concerning the length and scope of questioning in a follow-up deposition of Black Elk's CEO, John Hoffman, along with an allocation of time among the parties for the upcoming seven-hour deposition of another witness, Keith King.  In a minute entry issued following the February 25, 2105 hearing on the motion (rec. doc. 616), the Court ruled upon the merits of the motion, but reserved a ruling on what it found to be the sanctionable deposition conduct of one of the lawyers in the case.

This Order and Reasons concerns the allegations of unprofessional and harassing conduct by counsel for Grand Isle Shipyards ("GIS"), Robert Reich ("Reich"), in the deposition of Mr. Hoffman.  Those allegations are central to Black Elk's prayer for relief in the present motion and represent the second time Reich's conduct has caused a party in

this case to seek relief in a discovery motion before this Court.[1]  As the Court noted from the bench at the hearing held on this motion February 25, 2015, the conduct complained of, while not the subject of a motion for sanctions, was entirely improper and cannot be tolerated by the Court.  As such, for the reasons stated in open court and for the following reasons, Reich will be sanctioned herein.

## I.     The Relevant Law

There are numerous mechanisms by which district courts exercise sanction powers, including the Federal Rules of Civil Procedure (through Rules 11, 26, 30 and/or 37); 28 U.S.C. §1927; and the inherent power of the courts to manage their own proceedings and to control the conduct of those who appear before them.  Regardless of the source, it is widely accepted that the primary purpose of sanctions is to deter frivolous litigation and abusive tactics.  Sanctions seek to deter both the culpable attorney and members of the bar in general.  *See, e.g., Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126-27 (1989)(the primary purpose of Rule 11 is deterrence, not compensation); *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988)("the most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive practices of attorneys"); Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse §47(A) (2d ed.)(the purpose of Rule 37 is four-fold: "(1) penalizing the culpable party or attorney; (2) deterring others from engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery"); *Id.* at §20 (the purpose of 28 U.S.C. §1927 is to deter unnecessary delays in litigation).

---

[1]  See rec. doc. 569.  In addition, the undersigned is aware that Reich's conduct during discovery in this case has been the subject of complaints before the District Judge, which has resulted, at least in part, in the issuance of two orders – rec. docs. 245 and 247 – which will be discussed in more detail below.

One court recently put it more succinctly:  "The purpose of court-imposed sanctions is to stop reinforcing winning through obstruction."  *Security National Bank of Sioux City, Iowa v. Abbott Laboratories*, 299 F.R.D. 595, 597 (N.D. Iowa 2014).

Whether a district court wields it sanction powers under the Federal Rules of Civil Procedure, 28 U.S.C. §1927, or its inherent power, it does so at its "broad discretion." *Topalian v. Ehrman,* 3 F.3d 931, 934 (5th Cir. 1993).  "The discretion vested in the trial court is granted so its thoughtful exercise will carry out the educational and deterrent functions of the rule." *Jennings v. Joshua I.S.D.*, 948 F.2d 194, 199 (5th Cir. 1991), *cert. denied*, 504 U.S. 956 (1992).

Because the present motion concerns Reich's conduct during a deposition (and because his deposition conduct has been the subject of at least one previous motion), it is properly analyzed under Rule 30 and the cases construing it.  Rule 30(c)(1) provides that "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence...."  Fed.R.Civ.P. 30(c)(1).  "During the taking of a deposition the witness has, in general, the same rights and privileges as would a witness testifying in court at a trial."  8A Wright, Miller and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994).

It is well-established – and should be equally well-understood by federal practitioners – that:

> [a]s officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition.  A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent.  In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom.  Thus, the witness is placed under oath and a court reporter is present.  Conduct that is not permissible in the

courtroom during the questioning of a witness is ordinarily not permissible at a deposition ....  A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.

> *Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-CV-3209, 2011 WL 164636 at *5 (E.D. La. Jan. 9, 2011)(*citing Ethicon Endo–Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995)).

Under Rule 30(d)(2),

[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

> Fed.R.Civ.P. 30(d)(2).

As will be discussed in detail below, Reich violated these rules, and the Louisiana Rules of Professional Conduct, in the Hoffman deposition.  The impact of his sub-standard conduct in this case is exacerbated by the numerous occasions on which he has been sanctioned by other judges of this district for similar – and in some cases identical – conduct.

For instance, in *Bordelon Marine, Inc. v. F/V KENNY BOY*,[2] Magistrate Judge Knowles sanctioned Reich for a multitude of transgressions in two depositions, including behavior that he has repeated here.  The conduct Judge Knowles found sanctionable in *Bordelon* included objecting "all too frequently," with the "majority" of those objections lacking a valid basis; failing to treat the deponents in that case "as he would have been required to treat them at a trial in a courtroom"; "storming out of the room"; improperly instructing

---

[2]  2011 WL 164636 (E.D. La. Jan. 9, 2011).

witnesses not to answer questions and being an "instigator of discovery disputes" that continued for "pages upon pages of the deposition transcripts." *Id.* at *5-6. Judge Knowles found that Reich's conduct "impeded and frustrated the fair examination of the two deponents" in that case and sanctioned Reich for conduct that crossed the bounds of zealous advocacy. *Id.* at *6. In so deciding that matter some four years ago, Judge Knowles observed (as the Court does here) that "this is not the first time that Reich's behavior at a deposition has been called into question and resulted in the imposition of sanctions." *Id.* at *6 n. 3 (*citing Landers v. Kevin Gros Offshore, L.L.C.*, No. 08-CV-1293, 2009 WL 2046587 (E.D. La. July 13, 2009)).

In *Landers,* Magistrate Judge Shushan of this court was confronted with a motion for sanctions against Reich and his client arising out of Reich's conduct in multiple depositions of the plaintiff in that case. After citing much of the same authority and caselaw cited herein, Judge Shushan found that Reich's conduct in those depositions was sanctionable in a number of ways. In so finding, Judge Shushan wrote:

> [t]he behavior of [Reich] in the deposition was improper. He repeatedly interrupted the witness and would not let him complete his answer and provide his explanation. His tone of voice can best be described as yelling. Many of his questions were improper. The instruction by [opposing] counsel not to answer certain questions was improper, Fed R. Civ. P. 30(c)(2), but, under the circumstances, it was understandable. The record demonstrates that [Reich] repeatedly failed to conduct his examination of [Plaintiff] as he would at the trial and denied him the same rights and privileges due a witness testifying in court at a trial. Sanctions will be imposed.
>
> *Landers v. Kevin Gros Offshore, L.L.C.*,
> No. 08-CV-1293, 2009 WL 2046587 at *4
> (E.D. La. July 13, 2009).

In addition to these two cases in which Reich was sanctioned for transgressions essentially identical to those in this case, there is at least one other recent instance in this District in which Reich was sanctioned by Chief Magistrate Judge Wilkinson for signing an unnecessary discovery motion, which Judge Wilkinson described as "another motion of the type that I've seen Mr. Reich file regularly for 19 years now."  *See XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-CV-2071, 2014 WL 2155242 at *2 n. 17 (E.D. La. May 21, 2014)(Vance, J.)(affirming Magistrate Judge Wilkinson's order assessing sanctions).[3]

Notably, in the three cases cited above, the courts sanctioned Reich personally, declining to sanction his client.

Against this backdrop, the Court turns to Reich's conduct in the Hoffman deposition.

## II.    REICH'S DEPOSITION CONDUCT

The particular exchange of which Black Elk complains in its brief took place well into Hoffman's deposition.  It involves Reich's asking Hoffman the same improper question some seven times over four pages of transcript:

> REICH: -- would you like to apologize to the families for the casualty and for the death of their loved ones?
>
> TALLEY: Let me object to the form of that question.  Bob, you're completely out of line.
>
> REICH: You can answer it.
>
> HOFFMAN: Certainly, I have sorry (sic) in my heart as to what happened.  I also have a degree of anger in my heart that Grand Isle Shipyard construction workers did not know basic rules of using plumbers plugs, about what was in the oil tanks, about talking about isolation.  There was a water release that was reported in the incident investigation which would have

---

[3] Judge Wilkinson's comments are found at rec. doc. 169-3, p. 7 in No. 12-CV-2071.

suggested that there was no energy isolation.  So, sir, I put it back to you, would Grand Isle Shipyard want to apologize to the families?

REICH: Let me object to responsiveness.

REICH: Sir, I ask you the question one more time.  It's a yes or no question.  Now that you know that Monte Richard made the decision to go away from flange-to-flange bolting connection and go to a connection that had hot work in the field, with that knowledge, because you told us today when you came in here that you didn't know that, now that you have that knowledge, do you want to apologize to the families for Black Elk's involvement in this casualty?

TALLEY: Let me object to the form of the question. It's also been asked and answered.

REICH: You can answer.

TALLEY: Answer it again, sir.

REICH: Yes or no?

TALLEY: And you're not limited to a yes or no despite counsel's instruction to have you answer it yes or no.  The proper instruction is that you may answer a question in any way you best see fit.  Mr. Reich knows that, given his 40 years of the practice of law.

REICH: Now, that's not true.

HOFFMAN: Hot work is done every day in the Gulf of Mexico and if proper procedures are followed and proper techniques are employed, hot work offshore can be done safely.

REICH: Are you finished?

HOFFMAN: Yes.

REICH: Object to responsiveness.  It's a simply yes or no, sir. Now that you know that, do you want to apologize or not? Does Black Elk want to apologize now that you know that the hot work that caused this explosion was mandated by Black Elk's procedure of field welds or at least –

HOFFMAN: If – if –

REICH: -- precipitate it?

HOFFMAN: If you read –

TALLEY: Let me object to the form of the question.

REICH: Just yes or no –

TALLEY: It's been asked and –

REICH: -- and then you can answer.

TALLEY: -- answered.  And once again, you're not limited to the yes or no that Mr. Reich is trying to instruct you.

HOFFMAN: If Grand Isle Shipyard would have followed the exact words and the procedure as laid out in Mr. Richard's e-mail we wouldn't be having this conversation today.

REICH: So even knowing what you know, you still don't want to apologize is what you're telling us?

TALLEY: Object to the form.

REICH: Even knowing what you know, even knowing that Black Elk is the one who chose the procedure that involved field welding, knowing that, you still don't want to apologize is what you're saying?

TALLEY: Let me object to the form of the question. It's been asked and answered, and it's a very improper question.

8

REICH: You can answer.

HOFFMAN: I would say that I carry a great deal of sorry (sic) in
my heart –

REICH: That's not my question. Do you want to apologize?

HOFFMAN: -- and I find it repulsive that you would suggest this
all fall on Black Elk's shoulders when it is very clear, very clear
to a first grader, that the technique used that day by Grand Isle
workers caused the explosion.  If a different technique would
have been employed, welding 101 offshore in a hydrocarbon
environment would have been followed, we wouldn't be
having this conversation.

(Tr. at 195-98).

As a threshold matter, the Court finds the initial question to be unprofessional and
offensive and agrees with counsel for Black Elk that Reich was "completely out of line" for
asking it.   There is no relevance or probity at all in such a question, nor is there any
legitimate purpose for Reich to ask such a question of a co-defendant.  It is, in the Court's
view, nothing more than a premeditated stunt with no legitimate objective.  Standing alone,
the Court finds this conduct violates the Code of Professionalism of the Louisiana State Bar
Association, which requires, in part, that counsel conduct themselves with "dignity, civility,
courtesy and a sense of fair play."[4]   Unfortunately, the subject question does not stand
alone.

Unsatisfied with Hoffman's answer to his improper question, Reich proceeded to ask
it again – six more times.  (*Id.* at 195-98).  In doing so, he repeatedly argued with the

---

[4] The Code was adopted by the Judges of the Eastern District of Louisiana on August 4, 1999.

witness and demanded a "yes or no" answer to his question.[5]  This is a violation of both the Federal Rules and the District Judge's April 9, 2014 Order that "counsel shall not engage in harassing or repetitive questioning."  (Rec. doc. 247).  It is also a hallmark of Reich's improper deposition technique.  In fact, in the 73 pages of transcript in which he questioned Hoffman, Reich objected to the responsiveness of an answer an astonishing 22 times.  The Court's review of these objections reveals that they are almost uniformly invalid and are simply a tool employed by Reich to set up his demands for "yes or no" answers.  Almost every single time he so objects, Reich follows with a statement that his question is "simple" and demands a "yes or no" answer.  This is improper.

The Court finds this to be a deliberate tactic employed in furtherance of Reich's intentionally combative deposition strategy.  Reich's "attacking" style is on full display throughout his examination of Hoffman, evident not only in the foregoing exchange but in the countless number of times he interrupts Hoffman while he attempts to answer Reich's often vague and compound questions.

The Court also must note that Reich has displayed similar conduct throughout this litigation, necessitating multiple telephone calls to this Court and at least one other discovery motion, in which his similarly harassing and argumentative conduct in the deposition of Steve Arendt was detailed and which resulted in this Court ordering that Reich was prohibited from participating in Arendt's follow-up deposition.  (Rec. docs. 565 (motion) and 569 (Order)).  Additionally, it is apt to note here that, on the same day this matter came on for hearing, the Court entertained argument on a motion for sanctions in

---

[5]  The Court also viewed a DVD of the deposition and notes that during the repetitive questioning of Hoffman at this point in the deposition, Reich was clearly arguing with Hoffman and repeatedly failed to treat Hoffman with "dignity, civility, courtesy and a sense of fair play," as required by the Code of Professionalism.

another case in which Reich's conduct in three depositions was the focus of the motion. The Court advised Reich at that hearing (as it did in the hearing on this motion) that his conduct was unprofessional and that he would be sanctioned.  (Rec. doc. 188 in No. 13-CV-4811).

It is inconceivable that a lawyer as experienced as Reich could believe that the conduct he displayed in the Hoffman deposition would be allowed in a courtroom.  He has been sanctioned or admonished for similar conduct far too many times to credibly argue that this is good-faith conduct that should be tolerated by the Judges of this Court.  It appears to this Court that, far from being deterred by the sanctions awarded against him in the past, Reich almost seems to wear them like a badge of honor in these depositions. Somehow, Reich (and others) must be made to understand that his unprofessional conduct cannot and will not be tolerated.   Money sanctions have done nothing thus far to accomplish this goal and the Court declines to try that approach again here.[6]  This Court's challenge, then, is to fashion a sanction that might have some deterrent effect on Reich and arrest this behavior.

The Court finds the following sanction appropriate in this matter:  Reich is to attend an additional ten (10) hours of continuing legal education in 2015 over and above what he is required to attend as a member of the Louisiana bar, all of which must be in the area of professionalism or ethics and offered either by the Federal Bar Association or the Louisiana State Bar Association.  No later than February 1, 2016, he is to provide the Court with documentation that he has complied with this order.  Reich is further ordered to provide a copy of this Order and Reasons to his client and to file into the record no later than March

---

[6]  The Court also notes that no party has requested monetary sanctions as a consequence of Reich's conduct here.

11, 2015 an affidavit confirming that he has complied with this directive and identifying by name the client representative to whom he provided the Order.

Reich is further cautioned that should similar deposition conduct or tactics by him come to the attention of this Court at any time in the future, in this case or any other, the sanction ordered (or, more likely, recommended) by the Court will be severe – in all likelihood more severe than this Court is empowered to employ.  Finally, a copy of this Order and Reasons will be circulated by this Court to the Chief District Judge and to all Magistrate Judges of the Eastern District.

New Orleans, Louisiana, this __3rd__ day of _____March_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE