## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDNA TAJONERA, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0366** |
| | **c/w 13-0550, 13-5137, 13-2496,** |
| | **13-5508, 13-6413, 14-374, and** |
| | **14-1714** |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS,** | **SECTION: "G"(5)** |
| **L.L.C., et al.** | |

## ORDER

Before the Court is Plaintiffs Edna Tajonera and Jade Tajonera's ("Tajonera Plaintiffs") "Motion to Exclude Calvin Barnhill's Opinions Regarding Welding Procedures"[1] seeking to exclude a portion of the expert report on the grounds that this portion and the opinions expressed therein are unreliable and not based on any objective standard, rule, or regulation.[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion.

### I. Background

This litigation arises out of an explosion that occurred on November 16, 2012 on the Black Elk Energy West Delta 32 Block Platform ("West Delta 32"), located in the Gulf of Mexico approximately 17 miles southeast of Grand Isle, Louisiana. The explosion killed three men and injured many more.

On May 6, 2015, Tajonera Plaintiffs filed the instant motion seeking to exclude a portion

---

[1] Rec. Doc. 662.

[2] Rec. Doc. 662-1 at 1.

of the expert report and testimony of Calvin Barnhill ("Barnhill"), an expert seeking to testify on behalf of Wood Group PSN, Inc. ("Wood Group").[3] Wood Group filed an opposition on May 19, 2015,[4] to which Tajonera Plaintiffs filed a reply on May 29, 2015.[5] In addition, on January 15, 2016, D&R Resources, LLC ("D&R") filed a motion adopting the motion to exclude Barnhill's expert opinions.[6] In response, on January 26, 2016, Wood Group filed a memorandum adopting and incorporating its opposition to Tajonera Plaintiffs' motion to exclude Barnhill's testimony.[7]

## II. Parties' Arguments

### A.   Tajonera Plaintiffs' Arguments in Support of Motion to Exclude Barnhill's Opinions Regarding Welding Procedures[8]

Tajonera Plaintiffs assert that, in his expert report, Barnhill makes essentially three conclusions: (1) the explosion "could have been prevented if [Grand Isle Shipyards] personnel had simply complied with the GIS WP/SEA" by ensuring "that the permit to work and the HWP [Hot Work Permit] reflected the current work location;" (2) "Prior to the actual hot work beginning[,] the welder, grinder and fire watch should have checked all potential supply routes and made sure they were either locked out, blanked off by skillet or otherwise secured and that any lines and or vessels were opened, purged and ready to receive hot work before striking an arc, cutting with a torch or grinding. Furthermore, a gas detector should have been utilized at the

---

[3] Rec. Doc. 662.

[4] Rec. Doc. 665.

[5] Rec. Doc. 672.

[6] Rec. Doc. 822.

[7] Rec. Doc. 846.

[8] Although D&R has adopted the arguments made in Tajonera Plaintiffs' motion, for the sake of brevity, the Court will refer to the motion as one filed by Tajonera Plaintiffs.

site of the hot work[;]" and (3) "[T]here was poor communication among the [Black Elk] construction and production management as to the scope and manner of the work to be done on the LACT modification project."[9] Tajonera Plaintiffs seek to exclude only the second of Barnhill's conclusions, arguing that it is inappropriate because Barnhill "is not a welder, has never created or implemented welding processes or procedures, and freely admits he is not a welding expert."[10]

According to Tajonera Plaintiffs, Federal Rule of Evidence 702 requires the Court to disqualify experts if they do not "possess a higher level of knowledge, skill, experience, training, or education than an ordinary person."[11] Tajonera Plaintiffs argue that, although Barnhill "may have expertise in certain disciplines," with regard to welding procedures, Barnhill lacks the requisite expertise, citing deposition testimony in which Barnhill stated that he was not a welding expert or a certified welder, and that he had "written procedures that require welding be done, but as far as the specifics of how the welder did his work, [he] did not [write such procedures]."[12] By comparison, Tajonera Plaintiffs cite the deposition testimony of Plaintiffs' expert Geoffrey Egan, who stated that he had expertise in welding processes and procedures based on decades of experience focused on welding.[13]

Furthermore, Tajonera Plaintiffs assert, Barnhill's opinion that workers should take certain steps before welding is not based on any objective standard, and is an inadmissible

---

[9] Rec. Doc. 662-1 at 3.

[10] *Id.* at 1.

[11] *Id.* at 3 (citing Fed. R. Evid. 702; Fed. R. Evid. 104(a); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)).

[12] *Id.* at 4 (citing Calvin Barnhill Dep., Rec. Doc. 662-4 at 100:13–14, 99:25–100:3; 55:6–22).

"common sense" conclusion.[14] According to Tajonera Plaintiffs, the Fifth Circuit has explained that experts who reach their conclusions by using generally accepted principles, including standards and customs common in a particular profession, do not offer admissible evidence.[15] Here, Tajonera Plaintiffs contend, that is exactly the sort of testimony offered by Barnhill.[16] According to Tajonera Plaintiffs, Barnhill compared his own methodology to that employed by the Bureau of Safety and Environmental Enforcement ("BSEE"), which conducted a year-long panel investigation into the accident at issue, by stating that his relied on a "practical, commonsense having worked in the industry standpoint," in contrast to the BSEE's discussion of "supervising and regulatory things."[17]

Tajonera Plaintiffs argue that not only are common sense opinions excluded, but also those offered under the guise of "common sense as it relates to years of a particular experience."[18] Tajonera argues that Barnhill claims that he can opine as to welding procedures because he has 45 years of experience in the oil business, and "welding is an integral part of what we do in the oil industry."[19] Tajonera Plaintiffs contend, however, that such experience no more qualifies him as an expert on welding than it would a landman, reservoir engineer,

---

[13] *Id.* at 4 n.11 (citing Rec. Doc. 527 at p. 6).

[14] *Id.* at 5.

[15] *Id.* (citing *United States v. St. Bernard Par.*, No. 13-321, 2013 WL 1563242, at *6 (E.D. La. 2013) (citing *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013))).

[16] *Id.*

[17] *Id.* (citing Calvin Barnhill Dep., Rec. Doc. 662-4 at 33:3–20).

[18] *Id.* at 6 (citing *St. Bernard Par.*, 2013 WL 1563242, at *7).

[19] *Id.* (citing Calvin Barnhill Dep., Rec. Doc. 662-4 at 55:17–18).

geologist, or oil and gas attorney with 40 years of experience in the business.[20]

Tajonera Plaintiffs aver that Barnhill bears the burden of furnishing some objective, independent validation of his methodology, and "the expert's assurances that he has utilized generally accepted [principles] is insufficient."[21] However, Tajonera Plaintiffs assert, Barnhill testified that he had no objective basis, such as a statute, regulation, or even corporate procedure, for his opinion that welders should take certain steps before welding.[22] Tajonera Plaintiffs quote Barnhill's deposition testimony, in which he stated that he was "not basing [his opinion] on a regulation . . . [He was] basing it on 45 years of experience in the business."[23] Therefore, Tajonera Plaintiffs contend, Barnhill's testimony clearly shows that his opinion is impermissibly based on a layman's observations of welders and his own common sense.[24]

## B.   Wood Group's Arguments in Opposition to Motion to Exclude Barnhill's Opinions Regarding Welding Procedures

In opposition, Wood Group first avers that Barnhill is the leading expert in oil and gas operations, widely sought by litigants in the industry, including at least two other parties in this case who sought his expertise after he had already been retained by Wood Group.[25] Wood Group also argues that it is uncontroverted that the explosion and fire in this matter began when welders employed by D&R were instructed by the GIS supervisor to cut into a pipe that ran from a sump

---

[20] *Id.*

[21] *Id.* (quoting *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

[22] *Id.* at 7.

[23] *Id.* (quoting Calvin Barnhill Dep., Rec. Doc. 662-4 at 99:11–100:14).

[24] *Id.* at 8.

[25] Rec. Doc. 665 at 1–2.

to the wet oil tank, and which had not been isolated.[26] Furthermore, Wood Group contends, most parties agree that GIS and Compass Engineering and Consultants failed to request a hot work permit for the area or advise any Wood Group operator of their intent to do hot work on the pipe at the time in question.[27] Therefore, Wood Group avers, this case does not involve the quality of any weld, the choice of welding equipment, the method selected for welding, or the mechanics of welding, but instead involves practices and procedures universally utilized in offshore operations, the interaction of construction and production activities, the method by which contractors (including welders) communicate their intentions to others, and the methods and procedures whereby hot work can be performed safely offshore.[28]

Wood Group asserts that Barnhill, a certified petroleum engineer with more than 45 years of experience in oil and gas operations, has extensive experience in both production and construction activities, has served in the same capacity as a number of the individuals involved in the operations in question, has performed the activities necessary to "safe out" areas for hot work on offshore and onshore locations, has worked for and with welders, and has had welders work for him.[29] Wood Group argues that the Fifth Circuit has recognized that an expert witness is not strictly confined to his area of practice, but may testify concerning related applications.[30]

Furthermore, Wood Group avers that although the Supreme Court in *Daubert v. Merrel Dow Pharmaceuticals, Inc.* recognized that courts may look to a number of factors that may be

---

[26] *Id.* at 2.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 3 n.1 (citing *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013)).

relevant to the reliability analysis, such as whether the technique can be tested or whether it has been subjected to peer review, those factors do not constitute "a definitive list or checklist."[31] According to Wood Group, because not every expert opinion will be based on a test or study that may be subject to scientific testing, "[t]he reliability inquiry must remain flexible."[32] Similarly, Wood Group contends, although testimony should be excluded if it deals only with common sense matters that would not assist the trier of fact, expert testimony is relevant if it would assist the jury by shedding light on facts at issue.[33] For example, Wood Group argues, testimony concerning the safe offshore operation of a pneumatic wrench has been accepted as relevant and not merely "common sense" when offered by an offshore safety expert.[34]

Wood Group argues that Barnhill's opinion is based on his experience supervising oil and gas workers, and his report outlines that the methodology he used in making his assessment of the incident and forming his opinions included reviewing job safety analyses, hot work permits, and extensive testimony of witnesses to the incident, methods which are comparable to those used by experts in his field, as evidenced by the expert reports submitted by other parties in this litigation.[35] Wood Group recites the details of Barnhill's resume, stressing his experience and credentials, and citing numerous cases in which Barnhill was allegedly qualified as an expert.[36]

---

[31] *Id.* at 4 (citing 509 U.S. 579, 593 (1993)).

[32] *Id.* (quoting *Paes v. Rowan Cos., Inc.*, 2013 WL 757646, at *2 (E.D. La. Feb. 27, 2013)).

[33] *Id.* at 5.

[34] *Id.* (citing *McDowell v. Atl. Sounding Co., Inc.*, 2012 WL 1656262, at *2 (E.D. La. May 10, 2012)).

[35] *Id.* at 5–6.

[36] *Id.* at 6–7 (citing *Taylor v. Diamond Offshore Drilling, Inc.*, 2009 WL 961273 (E.D. La. Apr. 7, 2009) (Lemmon, J.); *Ezell v. Pride Offshore, Inc.*, 2006 WL 5127550, at *1 (E.D. La. Apr. 6, 2006) (Lemmon, J.); *In re TT Boat Corp.*, 1999 WL 1276837 (E.D. La. Dec. 21, 1999) (Duval, J.); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 2014 WL 4375933 (E.D. La. Sept. 4, 2014) (Barbier, J.); *In re Delta Towing LLC*,

Wood Group contends that, although he is not a certified welder, Barnhill has designed equipment that required welding and hot work procedures, has worked for welders and had welders work for him, and is intimately familiar with the way hot work is performed at both offshore and onshore locations.[37] Wood Group asserts that in *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, a Southern District of Texas case, the court determined that a fire and explosion investigator was qualified to testify as an expert in a case involving welding and hot work as a cause of the incident, despite the fact that the investigator did not hold any welding licenses and had never worked as a welder.[38]

Furthermore, Wood Group alleges, Barnhill's opinions are not based on "common sense" that any lay person may have, but on 45 years of experience in a variety of roles.[39] Wood Group avers that Barnhill was qualified to testify as an expert in a case concerning how cargo was loaded and whether it was normal work routinely performed by rig personnel, whether the plaintiff had the necessary training to safely perform the work, whether the plaintiff should have been able to prevent the incident, whether the defendant did anything wrong, and whether the rig was fit for its intended purpose.[40] In another case, Wood Group contends, Barnhill was allowed to testify concerning the proper number of people required to safely offload casing from a supply boat.[41] According to Wood Group, Barnhill was allowed to testify about offshore operations,

---

2008 WL 4829617 (E.D. La. Nov. 5, 2008) (Africk, J.)).

[37] *Id.* at 7–8.

[38] *Id.* at 8 (citing 662 F. Supp. 2d 623, 664 (S.D. Tex. 2009)).

[39] *Id.*

[40] *Id.* (citing *Brewer v. Transocean Offshore USA, Inc.*, 2003 WL 25665232 (W.D. La. June 23, 2003)).

[41] *Id.* (citing *Jenkins v. Sonat Offshore U.S.A., Inc.*, 705 So. 2d 1184, 1188 (La. App. 1st Cir. 1997)).

despite the fact that he was not specially trained in loading or offloading cargo, based on his considerable experience working offshore.[42] Wood Group contends that Barnhill's testimony ought to be allowed because this case focuses on the manner in which hot work activities are performed in the offshore industry, and the respective roles of platform owners, production operators, construction personnel and construction inspectors, which requires consideration of the manner in which offshore welders and their supervisors communicate with their customers and other contractors to ensure safe operations.[43] Wood Group avers that it would "strain[] all credulity" to suggest that Barnhill lacks the experience or knowledge to assist lay jurors in understanding how offshore operations work.[44]

## C.   *Tajonera Plaintiffs' Arguments in Further Support of Motion in Limine*

In reply, Tajonera Plaintiffs argue that Wood Group has portrayed Barnhill as an expert without limitation, who could opine on all things oil and gas, "[f]rom fracking to finance, or wells to wellness policies."[45] Tajonera Plaintiffs contend that Wood Group seems to argue that, because the work took place offshore, Barnhill is an expert in safe welding procedures, but a "man who is not a safe welding expert onshore is not suddenly transformed to a safe welding expert when the welding moves offshore."[46]

Tajonera Plaintiffs allege that, although Wood Group claims that Barnhill "has advised clients on welders' roles in multiple incidents and has testified concerning welding operations

---

[42] *Id.* at 8–9.

[43] *Id.* at 9.

[44] *Id.*

[45] Rec. Doc. 672 at 2.

[46] *Id.* at 2 n.2.

with respect to blowouts and fires," there are no citations or evidence in Wood Group's motion to support such a claim.[47] Instead, Tajonera Plaintiffs contend, the cases cited by Wood Group actually support the exclusion of Barnhill's testimony, as none of the cases cited by Wood Group show Barnhill being accepted as an expert on hot work methods or procedures.[48] According to Tajonera Plaintiffs, in *Ezell v. Pride Offshore, Inc.*, an Eastern District of Louisiana case cited by Wood Group, Barnhill was excluded on the basis that his opinion would not assist the trier of fact and offered, "at best, common sense evaluation."[49] By contrast, Tajonera Plaintiffs aver, in *Taylor v. Diamond Offshore Drilling, Inc.*, another case cited by Wood Group, Barnhill based his opinion on his personal experience in performing the activity in question, not welding, and considered relevant government regulations and the existence of corporate procedures when giving his opinion.[50] Here, Tajonera Plaintiffs argue, Barnhill's opinion does neither, as he has no personal experience welding or authorizing safe welding policies, and he did not consider government regulations or corporate policies when giving his opinion.[51]

Similarly, Tajonera Plaintiffs contend, *In re TT Boat Corp.*, a case cited by Wood Group in which Barnhill testified (and where, Wood Group notes, his opinion was rejected by the court), did not involve welding or safety, and in that case, Barnhill testified as a petroleum engineer regarding the value of deferred production in an oil well.[52] Tajonera Plaintiffs argue

---

[47] *Id.* at 2.

[48] *Id.* at 3.

[49] *Id.* (citing 2006 WL 5127750, at *1 (E.D. La. Apr. 6, 2006)).

[50] *Id.* (citing 2009 WL 961273, at *4 (E.D. La. Apr. 7, 2009)).

[51] *Id.*

[52] *Id.* (citing 1999 WL 1276837, at *7 (E.D. La. Dec. 21, 1999)).

that in another case in which Barnhill testified, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, his opinions were limited to drilling operations, drilling margins, and well pressure, not hot work or welding.[53] Tajonera Plaintiffs allege that one case cited by Wood Group in support of Barnhill's acceptance as an expert, *In re Delta Towing LLC*, concerns dismissal of indemnity claims between contractors and appears to have no mention of Barnhill at all.[54] Finally, Tajonera Plaintifs argue, Wood Group cited *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.* for the general proposition that an individual does not need to hold welding licenses to opine about welding.[55] According to Tajonera Plaintiffs, however, in *Suzlon*, the expert witness was designated to testify about what physically ignited the fire and was certified as a fire and explosion investigator by the National Association of Fire Investigators, had conducted numerous investigations that involved welding or hot work as the cause or origin of a fire, and based his opinions on specific standards.[56]

Here, Tajonera Plaintiffs contend, Barnhill relies only on "common sense," and therefore cannot opine on the safety precautions a welder, grinder and fire watch should take prior to beginning hot work.[57] Tajonera Plaintiffs argue that Wood Group's response to their argument regarding Barnhill's unreliability was contained in just one paragraph stating that Barnhill's experience stemmed from "45 years of experience in the business," but contained no cases or authority controverting the well-settled law "that an expert may not give a common sense

---

[53] *Id.* at 3–4 (citing 21 F. Supp. 3d 657, 673, 684 (E.D. La. 2014)).

[54] *Id.* at 4 (citing 2008 WL 4829617 (E.D. La. Nov. 5, 2008)).

[55] *Id.* (citing 662 F. Supp. 2d 623, 664 (S.D. Tex. 2009)).

[56] *Id.* (citing *Suzlon*, 662 F. Supp. 2d at 664–65).

[57] *Id.*

opinion."[58] Tajonera Plaintiffs argue that this case is a prime example of an expert overreaching and attempting to offer common sense opinions under the guise of expertise, which the Federal Rules of Evidence are designed to prohibit.[59] Tajonera Plaintiffs contend that Wood Group similarly has no answer for Barnhill's failure to base his opinions on objective standards, and it is Barnhill's burden to provide some objective, independent validation of his methodology.[60]

### III. Law and Analysis

#### A.    *Legal Standard*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[61] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[62] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based upon sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the witness [must apply] the principles and methods reliably to the facts of the case.[63]

---

[58] *Id.* at 5.

[59] *Id.*

[60] *Id.* (citing *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

[61] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[62] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[63] Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[64] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[65] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[66] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[67]

In *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[68] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in

---

[64] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[65] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[66] *See Daubert*, 509 U.S. at 589.

[67] *See id.* at 590.

[68] *See id.* at 592–94.

every case.[69] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[70] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[71] Here, the parties do not dispute the relevance of the testimony.

A court's role as a gatekeeper does not replace the traditional adversary system,[72] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[73] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[74] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[75]

## B.    *Analysis*

In their motion, Tajonera Plaintiffs seek to exclude Barnhill's opinion regarding welding

---

[69] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[70] *Kumho Tire*, 526 U.S. at 152.

[71] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[72] *See Daubert*, 509 U.S. at 596.

[73] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[74] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[75] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

and hot work safety procedures on the bases that: (1) Barnhill is not qualified to testify regarding welding procedures; and (2) Barnhill's testimony is not based on a reliable methodology. The Court will address each argument in turn.

### 1.    Qualifications

Tajonera Plaintiffs attack Barnhill's qualifications to testify regarding the welding procedures on the basis that although Barnhill "may have expertise in certain disciplines," with regard to welding procedures, Barnhill has, in his own deposition testimony, clearly admitted that he lacks the requisite expertise. Wood Group responds that, regarding oil and gas operations, Barnhill's experience is unparalleled, and his opinion is aimed at safety procedures to which he is qualified to speak, rather than the quality of any weld, the choice of welding equipment, the method selected for welding, or the mechanics of welding.

It is undisputed that Barnhill has extensive experience in the oil and gas industry in general, and Tajonera Plaintiffs concede that Barnhill is qualified to opine as to the first and third conclusions contained in his expert report, regarding whether the explosion could have been prevented had supervisors aboard the West Delta 32 ensured that the permit to work and the Hot Work permit reflected the current work location, and the allegedly poor communication among the Black Elk construction and production management as to the scope and manner of the work to be done on the LACT modification project.[76] Indeed, Barnhill has been qualified to testify as an expert witness on issues including offshore drilling (including the proper checks and precautions that a drill crew should have engaged in once rig pumps were shut down),[77] whether

---

[76] Rec. Doc. 662-1 at 3.

[77] *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 21 F. Supp. 3d 657, 714 (E.D. La. 2014) (Barbier, J.).

a derrick man who was "tailing pipe" on a mechanical rig should have braced his foot against a track while pushing an 1800-pound strand of pipe on a muddy floor,[78] the proper measure of economic harm after the remains of a drilling unit struck and damaged a pipeline,[79] and whether the failure, over a six-month period, to fix an issue in which certain pieces of equipment were not properly fitting together, was an improper action and safety violation.[80]

Although Tajonera Plaintiffs accuse Wood Group of attempting to trot out Barnhill as an expert "on all things oil and gas . . . [f]rom fracking to finance, or wells to wellness policies," the fact that Barnhill has been accepted as an expert on a wide variety of issues that arise in oil and gas litigation does not disqualify him from opining on the issue in this matter. Barnhill openly admits that he is not a "welding expert,"[81] but as Wood Group accurately frames the matter, this "case does not involve the quality of any weld, the choice of welding equipment, the method selected for welding, or the mechanics of welding."[82] As he did in *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,[83] *Crane v. Diamond Offshore Drilling, Inc.*,[84] and *Mitchell v. Diamond Offshore Drilling, Inc.*,[85] Barnhill in this case seeks to testify

---

[78] *See Crane v. Diamond Offshore Drilling, Inc.*, 99-166 (La. App. 5 Cir. 9/15/99), 743 So. 2d 780, 786.

[79] *In re ENSCO Offshore Co.*, 990 F. Supp. 2d 751, 754 (S.D. Tex. 2014); *see also Contango Operators, Inc. v. United States*, 9 F. Supp. 3d 735, 756 (S.D. Tex. 2014) *aff'd sub nom. Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 F. App'x 281 (5th Cir. 2015) (finding Barnhill's model for deferred production damages more reliable than that of another expert witness).

[80] *Mitchell v. Diamond Offshore Drilling, Inc.*, 2005-396 (La. App. 3 Cir. 11/2/05), 916 So. 2d 465, 469 *writ denied*, 2005-2503 (La. 3/31/06), 925 So. 2d 1260.

[81] *See* Rec. Doc. 662-1 at 4.

[82] Rec. Doc. 665 at 2.

[83] 21 F. Supp. 3d at 714.

[84] 743 So. 2d at 786.

[85] 916 So. 2d at 469.

regarding the safety precautions that workers aboard an offshore oil platform ought to have taken certain measures to prevent an unsafe situation from arising.

Specifically, Barnhill's expert report concludes that, prior to the actual hot work beginning, the welder, grinder and fire watch "should have checked all potential supply routes and made sure they were either locked out, blanked off by skillet or otherwise secured and that any lines and or vessels were opened, purged and ready to receive hot work before striking an arc, cutting with a torch or grinding."[86] Furthermore, Barnhill concludes, a gas detector should have been utilized at the site of the hot work, the area should have been checked thoroughly before the work began and frequently during the hot work, and the work should have been stopped and the area thoroughly checked once fluid was noted coming out of the line or someone suggested a gas smell.[87]

In support of his qualifications to opine as to matters of safety precautions aboard an offshore oil rig, Barnhill cites the fact that he is a registered professional petroleum engineer with two degrees in petroleum engineering, as well as 45 years of experience in many aspects of the oil and gas industry from an engineering and operational standpoint, including "evaluat[ing] fires and explosions for both litigation and noon-litigation purposes."[88] Barnhill's resume also lists extensive experience overseeing safety operations for drilling operations and well control, rig site supervision, and other offshore operations.[89] Although Tajonera Plaintiffs attempt to narrow the issue to one of expertise in welding, which Barnhill admits he does not have, Barnhill's

---

[86] Rec. Doc. 662-3 at 9.

[87] *Id.*

[88] *Id.* at 11.

[89] *See* Rec. Doc. 665-1.

expert report specifically describes safety precautions that should have been taken prior to the performance of hot work, and Tajonera Plaintiffs have failed to convince the Court that only a certified welder, rather than someone who has "worked with welders," "worked for welders," and had welders work for him,[90] could be an expert on such matters.

As the Fifth Circuit noted in *United States v. Wen Chyu Liu*, "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."[91] In that case, the Fifth Circuit held that the district court abused its discretion when it excluded the testimony of an expert with extensive experience working in chemical plants and 50 years of engineering experience in a variety of high-level positions, finding that had worked with polymers that had "many similarities" and "a lot of commonality" with the manufacturing process at issue in the case, even though he lacked experience with the specific substance at issue.[92] Similarly, in *Dixon v. International Harvester Co.*, the Fifth Circuit held that an expert did not lack qualifications to testify about the design of a crawler tractor, based on his review of blueprints and photographs, despite a lack of prior experience approving crawler tractor designs.[93] Here, Barnhill has experience working with and for welders, and supervising safety procedures on offshore rigs, and has served in capacities similar to those very individuals who are alleged to have been

---

[90] *See* Calvin Barnhill Dep., Rec. Doc. 665-2 at 55:15–17.

[91] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[92] *Id.* at 169.

[93] *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985)

responsible for the events at issue in this case.[94] Thus, he is qualified to opine regarding the precautions that should have been taken before hot work began on the West Delta 32.

Although Tajonera Plaintiffs unfavorably compare Barnhill's qualifications with regard to welding to that of Geoffrey Egan,[95] an expert retained by the plaintiffs, such a comparison is irrelevant to the consideration of whether Barnhill is qualified to testify in this matter. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[96] If Tajonera Plaintiffs believe Egan is the more qualified expert, they are free to argue so to the jury. Barnhill may be less qualified regarding welding, but he is not insufficiently qualified to opine as to matters of safety precautions to be taken before initiating hot work on an offshore platform. The Court therefore declines to exclude Barnhill's testimony on the ground that he is not qualified as an expert.

### 2.    Reliability

Next, Tajonera Plaintiffs assert that Barnhill's opinion is unreliable as it was not based on any objective standard, and is an inadmissible "common sense" conclusion. Tajonera Plaintiffs argue that not only are common sense opinions excluded, but also those offered under the guise of "common sense as it relates to years of a particular experience."[97] In response, Wood Group argues that Barnhill's report outlines that the methodology he used in making his assessment of

---

[94] *See* Calvin Barnhill Dep., Rec. Doc. 665-2 at 44:13–48:1.

[95] Rec. Doc. 662-1 at 4 n.11.

[96] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

[97] Rec. Doc. 662 at 6 (citing *United States v. St. Bernard Par.*, No. 12-321, 2013 WL 1563242, at *7 (E.D. La. Apr. 12, 2013)).

the incident and forming his opinions included reviewing job safety analyses, hot work permits, and extensive testimony of witnesses to the incident, methods which are comparable to those used by experts in his field, as evidenced by the expert reports submitted by other parties in this litigation.[98] Furthermore, Wood Group alleges, Barnhill's opinions are not based on "common sense" that any lay person may have, but on 45 years of experience in a variety of roles.[99]

As noted above, when expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony.[100] "To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology."[101] Rather, some objective, independent validation of the expert's methodology is required.[102] However, as a general rule, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[103] It is "the role of the adversarial system, not the court, to highlight weak evidence."[104]

Here, Tajonera Plaintiffs contend that Barnhill offers nothing but "common sense" conclusions based on "years of a particular experience," and that such testimony must be excluded. In support, they cite *United States v. St. Bernard Parish*, a case in which another

---

[98] Rec. Doc. 665 at 5–6.

[99] *Id.*

[100] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998).

[101] *Dearman v. Transocean Offshore Deepwater Drilling, Inc.*, No. 11-750, 2012 WL 441167, at *5 (E.D. La. Feb. 10, 2012) (Fallon, J.).

[102] *Moore*, 151 F.3d at 269.

[103] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

[104] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

section of the Eastern District of Louisiana interpreted the Fifth Circuit's decision in *Brown v. Illinois Central Railroad Co.* and concluded that "common sense" observations are not redeemed by an expert's assertion that it relates to 40 years of experience in the relevant field.[105] However, the court in *St. Bernard Parish* did not end its analysis there. Although the Court found that "an opinion based on this type of cumulative expert experience is exactly what the Fifth Circuit disallowed in *Brown*," the court then went on to state that the expert had explained in his report that he reviewed the pleadings in the case, as well as various other materials, and that the expert had explained how "his conclusions are supported by his methodology."[106] Thus, although the court expressed skepticism that he would be able to do so, it concluded that while the expert could not provide testimony "based only on his experience," he was permitted "to provide his conclusions which this Court finds to be supported by his methodology."[107]

In *Brown*, on which *St. Bernard Parish* relied, the Fifth Circuit held that an "expert's assurances that he has utilized generally accepted [principles] is insufficient."[108] The court upheld a district court's decision to exclude the testimony of an expert who professed to base his findings on the standards and customs of the transportation engineering profession.[109] There, the expert's preliminary report mentioned a variety of public and private guidelines and publications on roadway design and traffic control devices, but failed to explain how any of those authorities

---

[105] No. 12-321, 2013 WL 1563242, at *7 (E.D. La. Apr. 12, 2013) (Berrigan, J.) (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

[106] *Id.*

[107] *Id.*

[108] *Brown*, 705 F.3d at 536 (quoting *Moore*, 151 F.3d at 276).

[109] *Id.*

supported the expert's specific conclusions.[110] There, despite the expert's emphasis on his own

"education and experience," the Fifth Circuit concluded that "[w]ithout more than credentials

and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[111]

Here, Barnhill does not, as Tajonera Plaintiffs assert, rely solely on his own "common

sense" interpretation of the events to reach his conclusions. However, in explaining his

methodology, Barnhill cites only "the information and data furnished to date and my education,

training, knowledge and experience in the oil and gas industry."[112] In coming to his conclusions

that, prior to the hot work beginning, the welder, grinder and fire watch should have taken

certain precautions, he cites no objective standards or criteria, let alone describes how any such

standards would inform the outcome he reaches.[113] Furthermore, as highlighted by Tajonera

Plaintiffs, Barnhill's deposition testimony further underscores the fact that he did not base his

opinions "on a particular hot work procedure" or "a particular federal regulation," but "on 45

years of experience in the business."[114] Although Barnhill's extensive experience in the field, as

noted above, qualifies him to opine as to matters of safety, he cannot do so based solely on

subjective opinion, but must tie his opinions to a reliable methodology that "properly can be

applied to the facts in issue."[115]

Although it is a general rule that "questions relating to the bases and sources of an

---

[110] *Id.*

[111] *Id.* at 536–37 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)).

[112] Rec. Doc. 662-3 at 11. Elsewhere, Barnhill states that the report "is based on information and data furnished through discovery, depositions and data coupled with BSEE information and data." *Id.* at 1.

[113] *See id.* at 8–10.

[114] Rec. Doc. 662-1 at 7.

[115] *Brown*, 705 F.3d at 535.

expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration,"[116] the Fifth Circuit held in *Brown* that it is insufficient for an expert to base his or her opinion on education and experience alone.[117] The Court recognizes that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[118] In fact, in a 2015 case, *Kovaly v. Wal-Mart Stores Texas, L.L.C.*, the Fifth Circuit acknowledged that, in considering the reliability of some professionals, such as pharmacists, certain *Daubert* factors will not readily apply, and courts "must consider other factors when determining admissibility, such as whether the expert has enough education and relevant experience to reach a reliable opinion."[119] Even in *Kovaly*, however, the Fifth Circuit noted that the expert had a "sufficiently reliable basis" to come to his conclusions because he "specifically analyzed how . . . various regulations overlap and how the history of the regulations led to the codification of particular exceptions but not others. He explained that his opinion was based not only on the regulations but also on their history, accepted practice, and pharmacist training."[120]

Here, Barnhill has acknowledged that some objective standards and regulations do exist, and some methodologies, including looking at "regulatory things," can be used in assessing the

---

[116] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

[117] *Brown*, 705 F.3d at 536.

[118] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[119] 627 F. App'x 288, 291 (5th Cir. 2015) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)).

[120] *Id.*

events at issue in this case, as they were by BSEE in writing its report.[121] By Barnhill's own admission, however, his opinions are not based on such standards, but rather on "a practical, commonsense having worked in the industry standpoint."[122] Furthermore, to the extent that Barnhill may have relied on objective criteria, his report does not explain how, if at all, such criteria informed his opinion. Such is exactly the sort of expert testimony that the Fifth Circuit deemed inadmissible in *Brown*. Therefore, this Court concludes that Barnhill's opinions regarding welding procedures, which rely on no ascertainable methodology, regulations, standards, or other objective criteria, are unreliable under Federal Rule of Evidence 702 and the Supreme Court's holding in *Daubert*, and will therefore be excluded.

### IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Tajonera Plaintiffs' "Motion to Exclude Calvin Barnhill's Opinions Regarding Welding Procedures"[123] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this __28th__ day of March, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[121] *See* Calvin Barnhill Dep., Rec. Doc. 662-4 at 33:15–20.

[122] *Id.* at 33:3–5.

[123] Rec. Doc. 662.