| | |
|---|---|
| **EDNA TAJONERA, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0366** <br> **c/w 13-0550, 13-5137, 13-2496,** <br> **13-5508, 13-6413, 14-374, and** <br> **14-1714** |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, L.L.C., et al.** | **SECTION: "G"(5)** |

## ORDER

Before the Court is Black Elk Energy Offshore Operations, LLC's ("BEEOO") "Motion in Limine to Exclude and/or Limit the Expert Report and Testimony of John Hughett."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

This litigation arises out of an explosion that occurred on November 16, 2012 on the Black Elk Energy West Delta 32 Block Platform ("West Delta 32"), located in the Gulf of Mexico approximately 17 miles southeast of Grand Isle, Louisiana. The explosion killed three men and injured many more.

On October 14, 2014, BEEOO filed a motion seeking to exclude or limit the testimony of Grand Isle Shipyard, Inc.'s ("Grand Isle") liability expert, John Hughett ("Hughett").[2] Grand Isle

---

[1] Rec. Doc. 509.

[2] *Id.*

filed an opposition on October 21, 2014.[3] On October 29, 2014, BEEOO filed a reply memorandum.[4] BEEOO then filed a supplemental memorandum in further support of its motion on January 30, 2015.[5] On February 3, 2015, Wood Group PSN, Inc. ("Wood Group") filed a memorandum in support of BEEOO's motion in limine.[6]

## II. Parties' Arguments

### A.    *BEEOO's Arguments in Support of Excluding or Limiting Hughett's Testimony*

BEEOO seeks to exclude or limit Hughett's proposed testimony on the basis that: (1) his opinions constitute impermissible legal conclusions, and in doing so, misstate the law; (2) Hughett's opinions ignore disputed facts, which allows him to focus only on those facts benefiting Grand Isle; and (3) Hughett is not qualified as an expert in this matter.[7] According to BEEOO, Hughett seeks to offer eleven major opinions in this case, largely stating that BEEOO, as the operator of the West Delta 32 platform, was ultimately responsible for the activities that took place aboard the platform, that it failed to coordinate the work that took place there, and that it was ultimately responsible for any safety violations that resulted in the explosion and fire.[8] BEEOO argues that Hughett ignores Grand Isle's own negligence in the matter, makes no reference to any testimony from any witnesses pertaining to Grand Isle, and otherwise exemplifies the kind of

---

[3] Rec. Doc. 526.

[4] Rec. Doc. 550.

[5] Rec. Doc. 579.

[6] Rec. Doc. 582.

[7] Rec. Doc. 509-1 at 1.

[8] *Id.* at 2.

"hired gun" experts that are now regularly used within the industry.[9] BEEOO avers that a review of Hughett's report reveals that he purposefully ignored the "bad" facts of his clients' case in favor of those that supported his client, rendered legal conclusions and opinions, and did so outside the scope of his expertise, and therefore his opinions should be excluded.[10]

BEEOO alleges that Hughett intends to testify at trial that BEEOO is "wholly responsible for assuring that its construction operations (including that of its providers) are conducted in a safe and responsible manner that is consistent with all applicable laws and regulations including its own recommended practices."[11] However, BEEOO contends, to do so would constitute an impermissible use of an expert to establish governing law, as the duties and responsibilities of BEEOO, as owner of an offshore platform, are set by the applicable contracts and the governing law.[12] According to BEEOO, courts have consistently held that legal opinions are not a proper subject of expert testimony.[13] Here, BEEOO avers, Hughett seeks to tell the Court both what law applies to the case and how to rule, and thus his opinions should be excluded.[14]

Next, BEEOO argues that Hughett's opinions are both impermissible and legally incorrect, as whether and to what extent BEEOO owes a duty as a platform owner is a purely legal issue addressed in BEEOO's motion for partial summary judgment.[15] BEEOO alleges that it clearly had

---

[9] *Id.* at 3.

[10] *Id.* at 5.

[11] *Id.* at 6.

[12] *Id.*

[13] *Id.* (citing *Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999); *Askanse v. Fatijo*, 130 F.3d 657, 672–73 (5th Cir. 1997); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).

[14] *Id.* at 7.

[15] *Id.* (citing Rec. Doc. 270).

no legal duty to supervise, direct, instruct, or otherwise ensure that its independent contractors and their employees performed their work in a safe manner.[16] Therefore, BEEOO contends, Hughett should not be allowed to testify as to his unsound legal opinions at trial.[17]

Similarly, BEEOO avers, Hughett intends to testify concerning the governance and terms of the Business Alliance Agreement ("BAA") between BEEOO and Grand Isle, although whether the BAA pertains to Grand Isle's work on the West Delta 32 is disputed by the parties.[18] BEEOO claims that Hughett's intended testimony regarding his interpretation of the contract should be excluded, as his report contains no support for any argument that Hughett has the requisite expertise to review legally binding contracts, and because the interpretation of a contract is a legal issue.[19] According to BEEOO, if Hughett reached his conclusions on his own, they are beyond the scope of his expertise and are impermissible; if Grand Isle instructed Hughett that the BAA applied, then his resulting opinions are simply unreliable and lack foundation as he ignores the disputed facts and legal implications of the contracts, including the Master Service Agreement ("MSA").[20] BEEOO alleges that the MSA provides the duties and relationships between Grand Isle and BEEOO, yet Hughett "conveniently ignores it, further weakening his opinions."[21]

Next, BEEOO alleges that Hughett's other opinions regarding BEEOO are prejudicial and

---

[16] *Id.* (citing *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 908 (5th Cir. 1985); *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir. 1984); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979)).

[17] *Id.*

[18] *Id.* at 8.

[19] *Id.*

[20] *Id.*

[21] *Id.*

irrelevant.[22] Specifically, BEEOO argues that Hughett's references to BEEOO's prior Incidences of Non-Compliance ("INCs") should be excluded as irrelevant and prejudicial pursuant to Federal Rules of Evidence 402 and 403.[23] According to BEEOO, Hughett also offers additional, unsubstantiated opinions to prejudice the jury, such as his assertion that it is "well known in the industry" that BEEOO does not "work with the service companies in a team-like environment to provide good safe platform construction."[24] BEEOO avers that Hughett offers no relevant support for this comment, and only states that in reviewing the documents and testimony set forth in this case, Hughett has concluded that BEEOO's "culture . . . did not invite or respect the provider."[25] BEEOO claims that an opinion based on Hughett's personal belief is not a "sound methodology" for an expert to employ and such conclusory statements should not be allowed at trial.[26]

Finally, BEEOO contends that Hughett "is not likely qualified to render the opinions he offers in this case" because his expertise is in drilling operations and well consulting, whereas the West Delta 32 is a production platform and, in November 2012, there were no drilling or downhole operations being performed aboard it.[27] According to BEEOO, Hughett's relevant experience clearly focuses on drilling, and his only possibly relevant experience is his claim that he "fully understands the various perspectives of the service company, drilling contractor, and the operator and can speak to the relationships [between them]," a statement BEEOO alleges is inaccurate as

---

[22] *Id.* at 9.

[23] *Id.*

[24] *Id.* (citing Hughett Report, Rec. Doc. 509-2 at 15).

[25] *Id.* at 9–10.

[26] *Id.* at 10 (citing *Hayes v. Raythion Co.*, 808 F. Supp. 1326, 1331 (M.D. Ill. 1992)).

[27] *Id.*

evidenced by Hughett's misstatements of the law in his report.[28]

## B. *Grand Isle's Arguments in Opposition to Excluding or Limiting Hughett's Testimony*

In opposition, Grand Isle avers that Hughett, a mechanical and petroleum engineer, has extensive experience in all phases of oilfield operations from "staking the well all the way to management of production" and is therefore qualified to testify in this case.[29] Grand Isle argues that Hughett has managed all operations for an international oil and gas production company with offices worldwide, and has also had experience in the oilfield industry in the area of production.[30] Grand Isle argues that Hughett's general oilfield qualifications satisfy the requirements of Federal Rule of Evidence 702.[31] Grand Isle cites *Metrejean v. REC Marine Logistics, L.L.C.*, an Eastern District of Louisiana case, for the proposition that even if the Court has doubts about Hughett's areas of specialization, his overall breadth of experience is sufficient to qualify him as an expert in this case.[32] Grand Isle avers that if the Court has any questions regarding Hughett's qualifications, a *Daubert* hearing should be held.[33]

Grand Isle also alleges that BEEOO's objections to Hughett's testimony are largely based on other motions they intend to file regarding striking certain evidence, and that it would be premature for the Court to rule on the scope of Hughett's testimony before the Court rules on those motions.[34] According to Grand Isle, although BEEOO broadly claims that Hughett usurps the

---

[28] *Id.* at 10–11.

[29] Rec. Doc. 526 at 2.

[30] *Id.*

[31] *Id.* at 5.

[32] *Id.* (citing No. 08-5049, 2009 WL 3062622, at *2 (E.D. La. Sept. 21, 2009) (Vance, C.J.)).

[33] *Id.*

[34] *Id.* at 4. Grand Isle specifically refers to Hughett's opinions concerning INCs, as well as BEEOO's

Court's role as the source of law, BEEOO does not point to any specific opinion that it contends is impermissible.[35] Grand Isle asserts that a close look at Hughett's report reveals that he does not simply offer legal conclusions under the guise of expert testimony, and although he offers testimony regarding industry customs, he does not offer opinions concluding that a breach of those customs breached any standard of care.[36] Citing *Francois v. Diamond Offshore Co.*, an Eastern District of Louisiana case, Grand Isle argues that distinguishing between admissible testimony regarding the facts of a case compared with the general practices in the industry, and inadmissible ultimate legal conclusions, is often a fine line that cannot be drawn until specific questioning or testimony is presented to the Court.[37] Grand Isle avers that, because BEEOO has not identified specific opinions that it contends constitute legal opinions, the motion should be denied.[38]

Next, Grand Isle contends that any disputes regarding the factual basis of Hughett's report are subject to cross examination and presentation of contrary evidence.[39] Grand Isle argues that simply disagreeing with the underlying facts relied upon by an expert is not grounds for excluding that expert under *Daubert*.[40] According to Grand Isle, although BEEOO takes issue with Hughett's alleged minimization of Grand Isle's involvement in the activities ongoing at the West Delta 32,

---

allegations that Hughett makes "legally incorrect statements," contrary to the law BEEOO alleges applies in its motion for summary judgment. *Id.* The Court has since ruled on both issues, as addressed below.

[35] *Id.* at 6.

[36] *Id.*

[37] *Id.* at 7 (citing No. 11-2956, 2013 WL 654635, at *2 (E.D. La. Feb. 21, 2013) (Morgan, J.)).

[38] *Id.*

[39] *Id.*

[40] *Id.* (citing *Martinez v. Offshore Specialty Fabricators, Inc.*, 2011 U.S. Dist. LEXIS 27143, at *3 (E.D. La. March 2, 2011); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.2d 546, 562 (5th Cir. 2004)).

that is not grounds to exclude Hughett's testimony, and BEEOO can cross-examine Hughett regarding the sources and materials he used to form his opinions.[41] Finally, Grand Isle asserts that although BEEOO has argued that certain of Hughett's testimony is "prejudicial," Federal Rule of Evidence 403 does not exclude all prejudicial evidence, but only "unfair prejudice," and only if its probative value is substantially outweighed by such prejudice.[42]

## C.     *BEEOO's Arguments in Further Support of Excluding or Limiting Hughett's Testimony*

In reply, BEEOO asserts that regardless of the Court's rulings on other motions, Hughett should not be allowed to testify because his resume and report reveal that he has no expertise that is relevant or helpful to the jury in this case.[43] BEEOO urges the Court to conduct a full *Daubert* hearing on Hughett's qualifications in order to decide whether Hughett is qualified to offer his various opinions regarding process safety and platform operations.[44] BEEOO alleges that, on the date of the incident, it was not drilling or performing any work to the platform wells, areas that might be within Hughett's expertise, and therefore Hughett is not qualified to testify.[45]

Next, BEEOO contends that Grand Isle's suggestion that Hughett does not intend to offer any conclusions as to whether any particular party breached a legal standard or custom is absurd in light of Hughett's report, which states that BEEOO "ignored accepted industry practices," "failed to meet" its own stated safety goals, and did not possess a set of operating management

---

[41] *Id.*

[42] *Id.* at 8.

[43] Rec. Doc. 550 at 2.

[44] *Id.* at 2–3.

[45] *Id.* at 3.

standards that met industry standards.[46] BEEOO asserts that Hughett's report concludes that BEEOO violated at least a dozen best practices, and that whereas it might be admissible for Hughett to explain industry standards in the context of the parties and circumstances in the case, here, he seeks to tell the jury that BEEOO violated those standards and that therefore Grand Isle was not "able to prevent a catastrophic explosion."[47] Furthermore, BEEOO argues, Hughett intends to usurp the role of the judge by instructing the jury as to the law, such as when he opines that BEEOO is "wholly responsible for assuring that its construction operations (including that of its providers) are conducted in a safe and responsible manner that is consistent with all applicable laws and regulations including its own recommended practices."[48] BEEOO argues that even if the Court were to conclude that BEEOO had certain legal duties and responsibilities, as Hughett opines, he still would not be allowed to instruct the jury on the law.[49]

BEEOO also avers that Grand Isle offers no argument to support Hughett's opinions regarding the BAA between BEEOO and Grand Isle, and Hughett has no expertise sufficient to make legal interpretations about what that contract provides.[50] Even if he were qualified, BEEOO alleges, it is nevertheless impermissible for Hughett to offer such an opinion, regardless of what this Court concludes regarding the contract.[51]

---

[46] *Id.*

[47] *Id.* at 4.

[48] *Id.*

[49] *Id.* at 5.

[50] *Id.*

[51] *Id.* (citing *Crosby Mem'l Hosp. v. Abdallah*, 48 F. App'x 102 (5th Cir. 2002); *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n.4 (5th Cir. 2001)).

## D.    *BEEOO's Supplemental Memorandum in Further Support of Excluding or Limiting Hughett's Testimony*

In a supplemental memorandum filed after Hughett's deposition, BEEOO argues that many of Hughett's opinions specifically pertain to "process safety," an area in which he admittedly has no expertise or experience.[52] Specifically, BEEOO alleges, Hughett's report states that the "major cause of the accident" was BEEOO's "process safety system failures," but neither his resume nor his report mentions "process safety" or anything arguably related to process safety as an area of experience or expertise.[53] Moreover, BEEOO argues, Hughett admitted as much at his deposition, stating that he had no education in process safety but had "practical experience" in that area.[54] BEEOO quotes deposition testimony in which it asked Hughett, "Is that true today, you do not consider yourself to be an expert in process safety?" to which Hughett responded "Yes, sir," and later stated that he could nevertheless "identify . . . a process safety issue."[55] BEEOO contends that Hughett's testimony revealed that, while he may be able to spot process safety issues, he does not consider himself a "process safety expert," and therefore neither should the Court.[56]

BEEOO also argues that Hughett's opinions about BEEOO's "culture" are overly prejudicial, unreliable, speculative, and offered solely for inflammatory purposes.[57] According to BEEOO, Hughett has opined that the "ingrained procedures in [BEEOO's] culture were counter to good operational practices" and that BEEOO's "culture differs from that of the other operators"

---

[52] Rec. Doc. 579 at 1.

[53] *Id.* at 2.

[54] *Id.*

[55] *Id.* at 3.

[56] *Id.*

[57] *Id.* at 6.

in that BEEOO does not work with service companies in a team-like environment.[58] BEEOO asserts that Hughett's deposition confirmed BEEOO's concern that Hughett lacked any foundation for his opinions, as Hughett testified that his comments were based solely on "just talk that you hear" from individuals Hughett said he had spoken to by phone but could not name or identify, and that he could not provide any e-mails or text message conversations with others in the industry that would bolster his allegations.[59] BEEOO argues that "[e]videntiary reliability is not present when the opinion is premised upon [a] fundamentally unsound basis or a factually deficient amount of data."[60] BEEOO avers that, because Hughett cannot identify any particular individuals that he spoke to and has no records of any communications with alleged "industry" sources, it is likely that he is simply speculating, and such opinions should not be allowed to reach the jury.[61]

Furthermore, BEEOO claims, when Hughett was challenged on his opinions about BEEOO's reputation or culture, he could only vaguely recall that he may have read something to that effect.[62] For example, BEEOO contends, when asked about his opinion that BEEOO utilized an "autocratic culture that did not invite or respect the provider," Hughett stated that he believed that in certain e-mails from BEEOO employee Monte Richard, he "told Compass what to do rather than invite options from Compass Engineering."[63] In addition, BEEOO alleges, Hughett stated that he based his opinion that BEEOO "ingrained in its personnel a culture of immediate profit as the

---

[58] *Id.*

[59] *Id.* at 7–8.

[60] *Id.* at 8 (citing *Reynaud v. Martin-Marietta Corp.*, 749 F. Supp. 1545, 1552–53 (D. Colo. 1990); *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1382, 1393 (W.D. Mo. 1994)).

[61] *Id.*

[62] *Id.* at 9.

[63] *Id.*

Number 1 concern above all else" on "some e-mails" that he could not identify and did not cite in his report.[64] According to BEEOO, Hughett admitted that costs are an appropriate consideration for an oil company, but took issue with the "tone" of the unidentified e-mail.[65]

BEEOO alleges that Hughett was also retained by Halliburton in the BP Oil Spill litigation, and there, he offered several very similar "process safety" opinions against BP.[66] BEEOO avers that, in this case, it appears that Hughett's opinions, which he says are based on unidentified e-mails, are actually just carried over from his BP report, which contains nearly verbatim opinions.[67] BEEOO provides a table comparing side-by-side eight opinions appearing in both the BP report and the one Hughett produced for this litigation, such as "BP has certainly made mistakes," and "Black Elk has certainly made mistakes" and "BP utilized an autocratic culture on Macondo, a culture that did not invite or respect provider input," and "Black Elk utilized an autocratic culture on West Delta 32, a culture that did not invite or respect the provider."[68] BEEOO argues that the table it provided illustrates that Hughett "repeatedly parroted many of his opinions from his BP report; mainly those without any evidentiary support," and that although experts may copy and paste formatting, introductory commentary, and resume-related information, for Hughett to simply replace BP's name with "Black Elk" on many of the most accusatory and significant opinions offered by Hughett "lacks any reliability on its face."[69]

---

[64] *Id.* at 9–10.

[65] *Id.* at 10.

[66] *Id.* at 4.

[67] *Id.* at 10.

[68] *Id.*

[69] *Id.* at 11.

Next, BEEOO reiterates its argument that Hughett's opinions about the applicability of the BAA are inappropriate because an expert may not interpret a contract for the jury.[70] According to BEEOO, Hughett admitted in his deposition that his opinion that the BAA "covers the general conditions of the contract between the parties, the scope of the work, and safety procedures" is not accurate.[71] Finally, BEEOO avers that Hughett "admitted that none of the expertise listed in his report—all based on drilling experience—was used in this case."[72]

### E.    *Wood Group's Memorandum in Support of BEEOO's Motion in Limine*

In a separate memorandum supporting BEEOO's motion, Wood Group adopts and joins in BEEOO's motion, and adds that it wishes to draw the Court's attention to a portion of Hughett's deposition testimony in which he stated various areas in which he held expertise, and that this case does not involve the areas in which Hughett is an expert.[73] Wood Group contends that Hughett's testimony evidences his "dearth of expertise in areas relevant to this matter."[74]

## III. Law and Analysis

### A.    *Legal Standard*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[75] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training

---

[70] *Id.* at 12.

[71] *Id.*

[72] *Id.* at 13.

[73] Rec. Doc. 582 at 2.

[74] *Id.* at 4.

[75] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[76] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based upon sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the witness [must apply] the principles and methods reliably to the facts of the case.[77]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[78] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[79] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[80] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[81]

In *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been

---

[76] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[77] Fed. R. Evid. 702.

[78] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[79] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[80] *See Daubert*, 509 U.S. at 589.

[81] *See id.* at 590.

subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[82] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[83] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[84] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[85]

A court's role as a gatekeeper does not replace the traditional adversary system,[86] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[87] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[88] "As a general rule, questions

---

[82] *See id.* at 592–94.

[83] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on the "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[84] *Kumho Tire*, 526 U.S. at 152.

[85] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[86] *See Daubert*, 509 U.S. at 596.

[87] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[88] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[89]

### B.    *Analysis*

BEEOO and Wood Group (collectively, "Moving Defendants") ask the Court to exclude or limit Hughett's proposed testimony on the basis that: (1) his opinions constitute impermissible legal conclusions; (2) Hughett's opinions are prejudicial and irrelevant; and (3) Hughett is not qualified as an expert in this matter. The Court will address each argument in turn.

### 1.    Legal Conclusions

Moving Defendants assert that some of Hughett's opinions are inadmissible because his report states a number of opinions that impermissibly establish governing law, such as his statement that BEEOO is "wholly responsible for assuring that its construction operations (including that of its providers) are conducted in a safe and responsible manner that is consistent with all applicable laws and regulations including its own recommended practices."[90] Moving Defendants contend that the duties and responsibilities of the owner of the West Delta 32 are set by the applicable contracts and governing law, and for Hughett to offer an opinion as to what those contracts and laws require is to impermissibly usurp the role of the judge.[91] Additionally, BEEOO contends that Hughett's opinions are legally incorrect because BEEOO had no legal duty to ensure that its independent contractors performed their work safely, and furthermore alleges that any opinions regarding the BAA or MSA should be stricken as they would amount to nothing more

---

[89] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[90] Rec. Doc. 509-1 at 6.

[91] *Id.*

than an interpretation of a contract.[92] In response, Grand Isle argues that Hughett does not offer impermissible legal conclusions, but merely offers testimony regarding industry custom, rather than opinions that the breach of such customs breached a standard of care.[93]

Federal Rule of Evidence 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." "The rule was enacted to change the old view that the giving [of] an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[94] The rule, however, does not "open the door to all opinions."[95] "The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions."[96] In *Owen v. Kerr-McGee Corp.*, the Fifth Circuit explained that "the task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one," requiring courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's view of how its verdict should read."[97]

An expert witness may not merely tell the jury what a defendant's duty was, how it breached it, and how the damages resulted from that breach.[98] However, the line between permissible and impermissible lines of questioning can be difficult to draw, particularly without

---

[92] *Id.* at 7–8.

[93] Rec. Doc. 526 at 6.

[94] *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] *Askanase*, 130 F.3d at 673.

the context of live testimony at trial.[99] Although BEEOO objects that Hughett's opinions are based on incorrect statements of law, as BEEOO explains in its motion for summary judgment, the Court has since ruled on that motion and concluded that genuine, disputed issues of material fact remained regarding whether BEEOO retained operational control over its independent contractors and whether BEEOO had an independent duty to maintain the safety of the workers aboard its platform.[100] Nevertheless, although Hughett's opinions are not objectionable merely on the basis that they allegedly rely on incorrect assumptions of law, to the extent that Hughett would seek to inform the jury as to the law to apply, such opinions should be excluded. For example, Hughett may not tell the jury that "Black Elk, as operator of the West Delta 32 Platform E, was ultimately responsible for the design, operation and control of the platform,"[101] or that "Black Elk is wholly responsible for assuring that its construction operations (including that of its providers) are conducted in a safe and responsible manner that is consistent with all applicable laws and regulations . . . ,"[102] as that would  "merely allow the witness to tell the jury what result to reach."[103] Similarly, Hughett may not explain to the jury his interpretation of what either the MSA or BAA required, as expert witnesses may not simply interpret a contract for the jury.[104] However, Hughett is not prohibited from explaining to the jury his opinion on the ways in which operators and service companies typically interact. Therefore, although wholesale exclusion of Hughett's testimony on

---

[99] *Owen*, 698 F.2d at 240.

[100] Rec. Doc. 748.

[101] Rec. Doc. 509-2 at 10.

[102] *Id.* at 11.

[103] *Owen*, 698 F.2d at 240.

[104] *See, e.g.*, *Waste Mgmt. of La., L.L.C. v. Jefferson Par.*, No. 13-6764, 2015 WL 5798029, at *13 (E.D. La. Oct. 5, 2015) (Brown, J.).

the basis that he impermissibly seeks to offer legal conclusions and opinions would be premature at this point, the parties should also anticipate that the Court will not admit expert testimony at trial that amounts to nothing more than legal conclusions.

### 2. Opinions Regarding INCs and BEEOO's Culture and Reputation

BEEOO also objects to a number of Hughett's opinions on the grounds that they are prejudicial, irrelevant, or otherwise inadmissible.[105] For example, BEEOO avers that Hughett's references to BEEOO's prior INCs are irrelevant and prejudicial pursuant to Federal Rules of Evidence 402 and 403. Because this Court has already determined that evidence of INCs and BSEE reports issued prior to November 12, 2012 is inadmissible except potentially as impeachment testimony,[106] Hughett is likewise barred from testifying as to BEEOO's prior INCs.

According to BEEOO, Hughett also offers additional, unsubstantiated opinions to prejudice the jury, such as that it is "well known in the industry" that BEEOO does not "work with the service companies in a team-like environment to provide good safe platform construction."[107] BEEOO avers that an opinion based on Hughett's personal belief is not a "sound methodology" for an expert to employ and such conclusory statements should not be allowed at trial.[108] Grand Isle broadly responds that any disputes regarding the factual basis of Hughett's report are subject to cross examination and presentation of contrary evidence.[109] In a supplemental memorandum, BEEOO further elaborates on its argument, arguing that Hughett's deposition revealed that he

---

[105] Rec. Doc. 509-1 at 9.

[106] Rec. Doc. 1021 at 9.

[107] Rec. Doc. 509-1 at 9 (citing Hughett Report, Rec. Doc. 509-2 at 15).

[108] *Id.* at 10 (citing *Hayes v. Raythion Co.*, 808 F. Supp. 1326, 1331 (M.D. Ill. 1992)).

[109] Rec. Doc. 526 at 7.

could not identify any individuals he spoke with to corroborate his assessment regarding BEEOO's reputation.[110] Furthermore, BEEOO claims, each time Hughett was challenged on his opinions about BEEOO's reputation or culture, at best, he could only vaguely recall that he may have read something to that effect.[111] BEEOO also points out that portions of Hughett's report, particularly conclusory statements regarding BEEOO's reputation or culture, are nearly identical to portions of a report Hughett submitted in separate litigation about different companies.[112]

The Court agrees that those portions of Hughett's report that speak to BEEOO's "reputation" and "culture" are inadmissible as they do not aid the trier of fact. Hughett's report does not list any experience, expertise, or methodology Hughett could uniquely offer as an expert witness to substantiate his opinions regarding BEEOO's culture or reputation. Courts in the Eastern District of Louisiana, including this one, regularly exclude expert testimony that seeks to inform the jury of facts that they can evaluate "using only their common experience and knowledge,"[113] such as testimony regarding a failed "safety culture."[114] Similarly, Grand Isle points to nothing in Hughett's report or testimony that provides a sound methodology for his

---

[110] Rec. Doc. 579 at 7–8.

[111] *Id.* at 9.

[112] *Id.* at 10.

[113] *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

[114] *See, e.g.*, *Sapp v. Wood Grp. PSN, Inc.*, No. 15-3, 2016 WL 147427, at *4 (E.D. La. Jan. 12, 2016) (Brown, J.) (concluding that testimony regarding whether the defendants complied with applicable job safety manuals was inadmissible); *Bouton v. Susan, Inc.*, No. 96-902, 1997 WL 61450, at *3 (E.D. La. Feb. 6, 1997) (Vance, J.) (holding that expert testimony was not necessary to assist the jury in deciding whether a ship's captain had failed to provide a clean, safe workplace or to decide whether the deck of the ship on which the plaintiff had allegedly slipped and fell was slippery); *Matherne v. MISR Shipping Co.*, No. 88-2261, 1991 WL 99426, at *1 (E.D. La. May 31, 1991) (Livaudais, J.) (holding that safety expert testimony was unnecessary as a jury was competent to determine the liability issues regarding whether the vessel stairs were properly secured to the gangway and, if not, whether defendant acted reasonably in failing to secure them).

opinions or qualifies him to testify regarding BEEOO's reputation. In *Daubert*, the Supreme Court stated that Rule 702 "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify," and that an expert's "scientific knowledge" must rest on "more than subjective belief or unsupported speculation."[115] Because the Court cannot credit the reliability of the methodology used by Hughett—which, according to his deposition, appears to have consisted of, at most, calling up certain unnamed and unmemorable sources and recalling fragments of assessments concerning BEEOO's reputation that were read or heard in unknown places[116]—the Court concludes that Hughett's testimony regarding BEEOO's reputation and culture is unreliable and will not assist a trier of fact.

### 3. Qualifications

Finally, BEEOO avers that Hughett is generally not qualified to render the opinions he offers in this case.[117] BEEOO and Grand Isle both request a *Daubert* hearing aimed at examining Hughett's qualifications and whether they are sufficient for him to testify in this matter.[118] Therefore, the Court will hold a *Daubert* hearing during trial, out of the presence of the jury, prior to the introduction of any testimony by Hughett, and defer until then any conclusions regarding Hughett's qualifications.

---

[115] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–590 (1993).

[116] *See, e.g.*, Dep. Tr. of John Hughett, Rec. Doc. 579-1 at 66:6–68:9 ("Q: Sir, you say on Page 15, 'It is well-known in the industry that Black Elk does not utilize its providers in such a way.' How is it well-known in the industry? A. It's just talk that you hear. Q. Who did you hear the talk from? A. You know, I don't recall; but there's a number of people. I mean, it's just talk. . . . A. I did ask several people about Black Elk, but I don't recall whom I asked specifically at what time. . . . Q: And just so we're clear, as we sit here right now, you cannot identify one person in the industry to say that Black Elk does not utilize its providers in such a way? A: I just don't recall. Not at the present time.").

[117] Rec. Doc. 509-1 at 10.

[118] Rec. Docs. 526 at 5; 550 at 7.

## IV. Conclusion

For the reasons stated above, the Court concludes that Hughett may not offer to the jury any legal conclusions regarding the MSA, the BAA, or any legal duties BEEOO would have owed to the workers aboard the West Delta 32 pursuant to applicable law. Furthermore, Hughett may not testify regarding BEEOO's INCs or its reputation or safety culture. However, to the extent that his testimony is not otherwise barred, the Court will hold a *Daubert* hearing during trial to determine whether Hughett is qualified to opine regarding any other facts or opinions contained within his expert report.

Accordingly,

**IT IS HEREBY ORDERED** that BEEOO's "Motion in Limine to Exclude and/or Limit the Expert Report and Testimony of John Hughett"[119] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Court will hold a *Daubert* hearing during trial to assess Hughett's qualifications regarding any opinions he seeks to offer that have not otherwise been excluded.

**NEW ORLEANS, LOUISIANA**, this __25th__ day of May, 2016.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[119] Rec. Doc. 509.