UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDNA TAJONERA, et al.** | CIVIL ACTION |
| **VERSUS** | NO. 13-0366<br>c/w 13-0550, 13-5137, 13-2496, 13-5508, 13-6413, 14-374, and 14-1714 |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, L.L.C., et al.** | SECTION: "G"(5) |

## ORDER

Before the Court is Tajonera and Corporal Plaintiffs' "Motion to Exclude Testimony of Steven Arendt."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

### I. Background

This litigation arises out of an explosion that occurred on November 16, 2012 on the Black Elk Energy West Delta 32 Block Platform ("West Delta 32"), located in the Gulf of Mexico approximately 17 miles southeast of Grand Isle, Louisiana. The explosion killed three men and injured many more.

On January 19, 2016, Tajonera and Corporal Plaintiffs filed a motion seeking to prohibit Black Elk Energy Offshore Operations, LLC's ("BEEOO") liability expert, Steven Arendt ("Arendt"), from testifying that Plaintiffs Tajonera or Corporal contributed to the cause of the explosion by failing to invoke their stop-work authority.[2] Grand Isle Shipyards, Inc. joined

---

[1] Rec. Doc. 826.

[2] *Id.*

1

Tajonera and Corporal Plaintiffs' motion on January 26, 2016.[3] Also on January 26, 2016, BEEOO filed an opposition,[4] to which Tajonera and Corporal Plaintiffs filed a reply on February 3, 2016.[5]

## II. Law and Analysis

*A.     Legal Standard*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony.[6] Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[7]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[8] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[9]

---

[3] Rec. Doc. 852.

[4] Rec. Doc. 849.

[5] Rec. Doc. 889.

[6] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[7] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[8] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[9] *Kumho Tire*, 526 U.S. at 152.

2

A court's role as a gatekeeper does not replace the traditional adversary system,[10] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[11] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[12] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[13]

### B.   *Analysis*

Tajonera and Corporal Plaintiffs[14] do not seek to exclude the bulk of Arendt's testimony; instead, they take issue with an implication raised by just one of the four factors cited by Arendt as leading to the incident at issue in this case.[15] Specifically, Tajonera and Corporal Plaintiffs object to Arendt's conclusion that one cause of the accident was that "Contractors ([GIS and D&R personnel]) failed to stop work when unexpected conditions arose during performance of the LACT project."[16] In his expert report, Arendt states that certain unidentified GIS and D&R personnel should have stopped work once they noticed either of two conditions: (1) a clear liquid,

---

[10] *See Daubert*, 509 U.S. at 596.

[11] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[12] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[13] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[14] Although GIS has joined in the motion filed by Tajonera and Corporal Plaintiffs, for the sake of brevity, the Court will refer to the motion as one filed by Tajonera and Corporal Plaintiffs.

[15] Rec. Doc. 826-1 at 2.

[16] Arendt Expert Report, Rec. Doc. 826-3 at 4.

3

thought to be water, that drained out throughout the cutting of the common sump discharge line; and (2) a gas odor one individual smelled just before performing the tack welding.[17] According to Arendt, either unexpected occurrence "should have indicated to personnel that the line may not have been isolated and drained as it should have been," and work should then have stopped.[18]

Tajonera and Corporal Plaintiffs do not object to Arendt's overall conclusion, his qualifications to render his opinion, or the relevance of his testimony. Instead, Tajonera and Corporal Plaintiffs argue that the problem with Arendt's conclusion is that he lacks a sufficient factual basis to assert specifically that Avelino Tajonera or Ellroy Corporal should have exercised their stop-work authority.[19] According to Tajonera and Corporal Plaintiffs, when questioned specifically about which GIS or D&R personnel Arendt had concluded acted improperly, Arendt could not point to any evidence that either Tajonera or Corporal had seen liquid or smelled gas.[20] Tajonera and Corporal Plaintiffs assert that the only individual who Arendt could identify was Antonio Tamayo, who has been alleged to have smelled gas and told others that he did so.[21] Tajonera and Corporal Plaintiffs argue that "Arendt's opinion that a worker should invoke stop work authority when an unexpected event occurs is predicated on the individual experiencing the unexpected event," and assert that because Arendt has admitted that he has no evidence that either Tajonera or Corporal witnessed an unexpected event, there are no facts to support his opinion that

---

[17] *Id.* at 5.

[18] *Id.*

[19] Rec. Doc. 826-1 at 2.

[20] *Id.* at 4–5.

[21] *Id.* at 5–6.

4

they should have invoked their stop work authority.[22]

BEEOO responds that Arendt's opinion is properly based on findings made by the Bureau of Safety and Environmental Enforcement, and that while the underlying facts are in dispute, Arendt has sufficiently identified the basis of his opinion so that it may be challenged on cross-examination.[23] BEEOO contends that the issue would be different if Arendt sought to state that specifically Tajonera and Corporal personally smelled gas and saw the liquid from the cut, and opined that they caused the explosion, but because he did not do so and stated only broadly that GIS and D&R personnel were at fault, his testimony is not inadmissible.[24] Tajonera and Corporal Plaintiffs reply, however, that the Court's gatekeeping function requires it to prevent Arendt from testifying in the first place regarding opinions that lack any factual basis, rather than require the issue to be resolved through cross-examination.[25]

Here, the Court agrees with BEEOO that Tajonera and Corporal Plaintiffs' objection to Arendt's testimony is precisely the sort that is best addressed through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[26] As BEEOO points out, nowhere in Arendt's expert report or in his deposition testimony did he state that Tajonera and/or Corporal smelled gas, saw a clear liquid, or otherwise were

---

[22] *Id.* at 9.

[23] Rec. Doc. 849 at 6.

[24] *Id.*

[25] Rec. Doc. 889 at 2.

[26] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

personally responsible for not exercising their stop-work authority. Instead, his report states only that certain unnamed personnel "failed to stop work when they observed unexpected conditions."[27]

Although Tajonera and Corporal Plaintiffs request that this Court prematurely order, before any evidence has been submitted to the jury, that Arendt specify exactly which personnel he is referring to and omit any reference to Tajonera or Corporal, the Court declines to do so. A court's role as a gatekeeper does not replace the traditional adversary system,[28] and "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[29] Because cross-examination would effectively serve Tajonera and Corporal Plaintiffs' ultimate purposes, and because questions relating to the bases of an expert's opinion generally go to the weight, rather than the admissibility, of an expert opinion, the Court herein denies Tajonera and Corporal Plaintiffs' motion.

### III. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Tajonera and Corporal Plaintiffs' "Motion to Exclude Testimony of Steven Arendt"[30] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this ___2nd___ day of June, 2016.

*[signature]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[27] Arendt Expert Report, Rec. Doc. 826-3 at 5.

[28] *See Daubert*, 509 U.S. at 596.

[29] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[30] Rec. Doc. 826.