UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDNA TAJONERA, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-0366**<br> c/w 13-0550, 13-5137, 13-2496, 13-5508, 13-6413, 14-374, and 14-1714 |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, L.L.C., et al.** | **SECTION: "G"(5)** |

## ORDER

Before the Court is Plaintiffs Edna Tajonera, Jade Tajonera, Mary Jean Corporal, Roberto Corporal and Monica Corporal's ("Tajonera Plaintiffs") "Motion to Exclude Testimony of Ashley Dees."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion in part and deny it in part.

## I. Background

This litigation arises out of an explosion that occurred on November 16, 2012 on the Black Elk Energy West Delta 32 Block Platform ("West Delta 32"), located in the Gulf of Mexico approximately 17 miles southeast of Grand Isle, Louisiana. The explosion killed three men and injured many more.

On January 19, 2016, Tajonera Plaintiffs filed their motion seeking to exclude Ashley Dees' ("Dees") testimony from trial.[2] On January 26, 2016, Black Elk Energy Offshore

---

[1] Rec. Doc. 836.

[2] *Id.*

1

Operations, LLC ("BEEOO") filed an opposition to the motion.[3] On February 3, 2016, with leave of Court, Tajonera Plaintiffs filed a reply memorandum in further support of their motion in limine.[4]

## II. Parties' Arguments

*A.     Tajonera Plaintiffs' Arguments in Support of Motion in Limine*

Tajonera Plaintiffs contend that the testimony of Dees is not helpful to the jury, and therefore should be excluded in its entirety.[5] They note that BEEOO designated Dees, an immigration attorney, to "testify concerning [Avelino Tajonera and Ellroy Corporal's] immigration status prior to November 16, 2012, and [their] anticipated status after November 16, 2012, absent [their] death, and other related topics."[6] According to Tajonera Plaintiffs, at her deposition, Dees stated that she intended to authenticate copies of passports and visas, explain the types of visas that Avelino Tajonera and Ellroy Corporal had, explain the regulations applicable to those types of visas, and explain the number of months that Avelino Tajonera could expect to work annually had he lived.[7] Tajonera Plaintiffs assert that Dees is not qualified to render opinions on authenticity of documents or future economic gain, contends that her discussion of immigrant status could be handled by the judge, and argues that her opinions are within the realm of understanding of a common juror.[8] Therefore, Tajonera Plaintiffs contend that Dees should be

---

[3] Rec. Doc. 848.

[4] Rec. Doc. 892.

[5] Rec. Doc. 836 at 1.

[6] Rec. Doc. 836-1 at 1.

[7] *Id.* at 2.

[8] *Id.*

excluded from testifying.[9]

Tajonera Plaintiffs contend that Dees is not qualified to render an opinion in this case.[10] They contend that she has never testified as an expert witness regarding immigration issues and has not published any scholarly articles.[11] Tajonera Plaintiffs contend that nothing in Dees' education and experience qualifies her to opine on the authenticity of government immigration documents or likely future earnings of Avelino Tajonera and Ellroy Corporal.[12] They assert that "[w]hile counsel certainly gains knowledge practicing law, that knowledge does not qualify counsel an expert witness on topics that are the subject of her practice."[13]

Tajonera Plaintiffs contend that Dees' report regarding Avelino Tajonera gives Dees' opinion as to the application of immigration statutes and extrapolates how various immigration laws might have affected Avelino Tajonera had he survived.[14] According to Tajonera Plaintiffs, Dees intends to testify to the following: (1) the authenticity of various immigration documents; (2) the different types of visas available to immigrant workers; and (3) her opinion that, based on his past work history, Avelino Tajonera would likely have worked six months out of a year had he lived.[15] Tajonera Plaintiffs contend that testimony authenticating the immigration documents is unnecessary because there is no dispute that the documents are true copies of the originals and that

---

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.* at 3–4.

[12] *Id.* at 4.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 4–5.

Avelino Tajonera and Ellroy Corporal came to the United States on B-1 visas.[16] Moreover, Tajonera Plaintiffs assert that "an explanation of the policies and differences between various types of visas is irrelevant to this case."[17]

Tajonera Plaintiffs also state that it is not disputed that B-1 visas are valid for a period of six months, and that there is no mandatory waiting period between the issuance of visas.[18] Accordingly, they contend that there is no need for Dees to testify about the length of a B-1 visa.[19] According to Tajonera Plaintiffs, Dees also intends to testify on the contents of 8 C.F.R. § 214.1(a), which includes the requirements for non-immigrant admission into the United States, a role that could be performed by the Court.[20] Tajonera Plaintiffs assert that Dees' testimony regarding Ellroy Corporal is even more limited because she has no opinion as to the length of time he would work in the United States.[21] Accordingly, Tajonera Plaintiffs contend that BEEOO cannot meet its burden of explaining why the testimony of Dees is helpful.[22]

## B.  BEEOO's Arguments in Opposition to Motion in Limine

In opposition, BEEOO contends that Dees is the only witness who is qualified to testify about the types of work visas that the Filipino Plaintiffs were using, the effects and characteristics of those visas, and the likelihood that the Filipino Plaintiffs would qualify for future work in the

---

[16] *Id.* at 5–6.

[17] *Id.* at 7.

[18] *Id.* at 8.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 9.

[22] *Id.* at 10.

United States.[23] Because these issues have direct effects on the Filipino Plaintiffs' claims for loss of future wages, BEEOO asserts that Dees should be allowed to testify at trial.[24]

BEEOO notes that Tajonera Plaintiffs have not challenged Dees' qualifications as an immigration expert.[25] BEEOO asserts that it requested that Dees issue an expert report to assist the jury in understanding the "complex immigration issues that directly bear upon their likelihood of future employment in the United States."[26]

BEEOO intends to introduce Dees' reports and testimony to explain the following: (1) Avelino Tajonera and Ellroy Corporal each entered the United States on B-1/OCS visas; (2) Avelino Tajonera's visa was issued on October 17, 2008; (3) Ellroy Corporal's visa was issued on May 17, 2012; (4) B-1 visas have a 10-year validity, which "is separate from the allotted periods allowed for a B-1 Visa holder to remain in the United States by U.S. Customs and Board Protection;" and (5) B-1 visas are typically issued for periods of 1–6 months, with 6 months being the maximum.[27] Based upon the immigration documents showing Avelino Tajonera's work history of 6 months each year, BEEOO states that Dees will opine that Avelino Tajonera would likely "continue to do so in the same pattern each year."[28] BEEOO contends that this opinion directly relates to Tajonera Plaintiffs' future wage loss claim.[29] BEEOO notes that Ellroy Corporal did not

---

[23] Rec. Doc. 848 at 1.

[24] *Id.*

[25] *Id.* at 3.

[26] *Id.*

[27] *Id.* at 4.

[28] *Id.*

[29] *Id.*

have a similar work history, as his visa was issued six months before his death, but given Dees' "explanation that a B-1 visa is valid for a maximum of 6 months at a time, the jury will also be assisted in their evaluation of Corporal's future loss of earnings, if any."[30]

BEEOO contends that Tajonera Plaintiffs' argument that Dees is not qualified to render opinions on authenticity of the documents or future economic gain "misses the point."[31] BEEOO asserts that it does not intend to challenge the authenticity of the immigration documents of the Filipino workers.[32] Instead, as part of the foundation for her opinions, BEEOO asserts that it will ask Dees to "identify those documents for the jury, explain what they are, and how they affect Plaintiffs work eligibility."[33] Moreover, BEEOO states that it does not intend to elicit from Dees any testimony about Plaintiffs' "future economic gain" or "future earnings."[34]

BEEOO asserts that Dees is qualified to testify on immigration issues as she has practiced immigration law full time and exclusively since 2009.[35] It notes that she gave eight immigration CLEs in 2015, is the founder and Chair of the Louisiana State Bar Association Immigration Law Section and CLE, and has spoken at the Federal Bar Association Immigration Law Conference and American Immigration Lawyers Association Annual Conference each of the past three years.[36] BEEOO asserts that Dees "very clearly understands what it takes for U.S.-based employers to

---

[30] *Id.*

[31] *Id.* at 7.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 8.

6

obtain B-1 visas for non-immigrant workers, how long that process usually takes, and thus, the likelihood and length of time that one of the Filipino Plaintiffs could work in the U.S. in the future."[37] Accordingly, BEEOO contends that Dees possesses the requisite knowledge, skill, experience and training under Rule 702 to testify as an expert on immigration documents.[38]

BEEOO also argues that Tajonera Plaintffs are incorrect in their assertion that Dees' testimony will not assist the jury.[39] Initially, BEEOO contends that Tajonera Plaintiffs have not stipulated that Avelino Tajonera and Ellroy Corporal worked under B-1 visas, that those visas were authentic or that a B-1 visa lasts six months, as Tajonera Plaintiffs assert.[40] Additionally, even if such stipulations were entered, BEEOO asserts that without Dees there would be no witness to present the evidence to the jury or discuss the nature of those documents.[41] Furthermore, BEEOO argues that "the important disputed issues are not necessarily whether the documents are authentic . . . but, how those documents affect the Plaintiffs' future loss wage claims."[42]

BEEOO disputes Tajonera Plaintiffs' assertion that an average person could identify the immigration documents.[43] They assert that the Supreme Court has recognized that immigration law is complex.[44] Moreover, they cite a portion of Dees' deposition transcript where she corrected

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 9.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 10.

[44] *Id.*

Tajonera Plaintiffs' counsel when he misidentified one of the immigration documents.[45] According to BEEOO, "if the lawyers in this case (including undersigned) need assistance from Mrs. Dees to even correctly identify the relevant documents, then the lay juror will certainly lack the common knowledge to understand what these documents mean."[46]

BEEOO contends that Dees' testimony concerning Avelino Tajonera's work visa would aid the jury in understanding his work history and the likelihood of his future work in the United States had he survived.[47] According to BEEOO, Dees will testify that in her review of Avelino Tajonera's visa history, he only came into the United States in six-month increments.[48] BEEOO points to a portion of Dees' deposition testimony where she states that Border Patrol examines an individual's admissibility when they enter the United States on a B-1 visa, and part of the admissibility requirement is "non-immigrant intent."[49] Dees also stated that "[a] return within the next 6 months for 6 months will normally red flag your case by Customs and Border Protection where they would say you're really not entering as a non-immigrant anymore."[50] BEEOO also points to the portion of Dees' testimony where she stated that the B-1/OCS visa requires that the foreign national receive an exemption from the United States Coast Guard, and the foreign national would have to return to his country to obtain a new exemption letter.[51] BEEOO notes that Dees

---

[45] *Id.*

[46] *Id.* at 11.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 12.

[50] *Id.*

[51] *Id.*

admitted that Avelino Tajonera could legally return to the United States after only a few weeks in the Philippines, but in her opinion it was more likely that his re-entries would be more spread out based on his prior history of re-entering the United States.[52]

BEEOO asserts that these opinions are relevant to the Filipino Plaintiffs' future employability with D&R Resources, LLC and Grand Isle Shipyard, Inc. "in part because of the fact that D&R is no longer in business, and the economic downturn in the Gulf has made U.S. workers more available."[53] BEEOO asserts that Dees "is the only witness qualified to discuss the grounds upon which a B-1 visa would be issued to a non-immigrant, and how these Filipino Plaintiffs could get employment in the U.S. in the future."[54] Finally, BEEOO asserts that Dees is qualified to discuss the issues of prevailing wage calculations raised by Plaintiffs' economist, Peter Nickerson, and testified that it was her understanding that B-1/OSS employers do not make an application with the Department of Labor to establish a prevailing wage.[55] According to BEEOO, without Dees' testimony, "the jury will hear nothing on these topics and likely would never see the immigration documents either."[56]

BEEOO notes that Tajonera Plaintiffs argue that the regulations referenced by Dees could easily be offered to the jury by the Court.[57] However, BEEOO asserts that Plaintiffs have offered

---

[52] *Id.*

[53] *Id.* at 13.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 14.

9

no proposed jury instruction on this topic.[58]

C.  *Tajonera Plaintiffs' Arguments in Further Support of Motion in Limine*

In reply, Tajonera Plaintiffs assert that BEEOO "[r]eveals its true reason for designating Ashley Dees as an expert witness . . . to remind the jury that the dead and their families are not Americans."[59] They contend "[t]hat Black Elk should choose to defend itself by emphasizing that plaintiffs are foreigners is its right, and not surprising in this case where defendants have taken the position that Filipino families are deserving of fewer damages than their American counterparts."[60] Tajonera Plaintiffs assert that the jury does not need an explanation of the vagaries of B-1 visas.[61] They assert that "[i]f Black Elk were only concerned with the amount of time a Filipino can work in the U.S. under a B-1 visa and how those limits effect economic damages, it can present its own designated expert economist, who will opine on the issue, and cross examine the Plaintiffs' economist, who will testify about the same."[62] Tajonera Plaintiffs contend that Dees is not an economist and knows nothing of potential future earnings.[63] Accordingly, they assert that Dees' only role in this case is to remind the jury that Plaintiffs are foreigners.[64]

---

[58] *Id.*

[59] Rec. Doc. 892 at 1.

[60] *Id.*

[61] *Id.* at 1–2.

[62] *Id.* at 2.

[63] *Id.*

[64] *Id.* at 1–2.

10

## III. Law and Analysis

*A.     Legal Standard*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[65] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[66] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based upon sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the witness [must apply] the principles and methods reliably to the facts of the case.[67]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[68] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[69] The reliability inquiry requires

---

[65] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[66] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[67] Fed. R. Evid. 702.

[68] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[69] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[70] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[71]

In *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[72] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[73] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[74] The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in other words, whether it is relevant.[75]

---

[70] *See Daubert*, 509 U.S. at 589.

[71] *See id.* at 590.

[72] *See id.* at 592–94.

[73] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[74] *Kumho Tire*, 526 U.S. at 152.

[75] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

A court's role as a gatekeeper does not replace the traditional adversary system,[76] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[77] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[78] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[79]

**B.    *Analysis***

In their motion, Tajonera Plaintiffs seek to exclude Dees' testimony on the bases that: (1) Dees is not qualified to render an opinion in this case; and (2) Dees' opinions will not assist the jury because they do not concern disputed fact issues and are within a common person's understanding. The Court will address each argument in turn.

**1.    Qualifications**

Tajonera Plaintiffs allege that Dees is not qualified to render the opinions she offers in this case because she has never testified as an expert witness regarding immigration issues and has not published any scholarly articles. Tajonera Plaintiffs contend that nothing in Dees' education and experience qualifies her to opine on the authenticity of government immigration documents or likely future earnings of Avelino Tajonera and Ellroy Corporal. BEEOO, on the other hand,

---

[76] *See Daubert*, 509 U.S. at 596.

[77] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[78] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[79] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

contends that Dees is qualified to testify on immigration issues as she has practiced immigration law full time and exclusively since 2009. BEEOO asserts that it does not intend to challenge the authenticity of the immigration documents of the Filipino workers. Moreover, BEEOO states that it does not intend to elicit from Dees any testimony about Plaintiffs' future economic gain or future earnings.

It is undisputed that Dees has extensive experience in immigration law. Dees graduated from the Paul M. Hebert Law Center in 2008.[80] She has practiced immigration law full time and exclusively since 2009.[81] In 2015, Dees gave eight CLEs on the topic of immigration.[82] She is the Chair of the Louisiana State Bar Association Immigration Law Section and CLE.[83] She spoke at the Federal Bar Association Immigration Law Conference in 2013 and American Immigration Lawyers Association Annual Conference in 2012, 2013 and 2014.[84]

As the Fifth Circuit stated in *United States v. Wen Chyu Liu*, "an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."[85] "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of

---

[80] Rec. Doc. 836-3 at 2.

[81] *Id.* at 3.

[82] *Id.*

[83] *Id.* at 2.

[84] *Id.*

[85] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

fact, not its admissibility."[86] To the extent that Tajonera Plaintiffs believe that Dees is not qualified to opine on the facts at issue in this matter, they may attack Dees' conclusions through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[87] The Court therefore declines to exclude Dees' testimony on the ground that she is not qualified as an expert.

### 2. Opinions and Testimony

Next, Tajonera Plaintiffs assert that Dees' testimony is unnecessary because: (1) there is no dispute that the immigration documents are true copies of the originals that were issued to Avelino Tajonera and Ellroy Corporal; (2) nothing in Dees' opinion regarding the statutes and regulations governing B-1 visas will assist the jury in understanding a disputed fact; and (3) nothing in Dees' opinion regarding the length of time that Avelino Tajonera could remain in the United States will assist the jury in understanding a disputed fact. In response, BEEOO contends that Dees' testimony will assist the jury because she is the only witness who can present evidence regarding Avelino Tajonera and Ellroy Corporal's immigration status to the jury. BEEOO asserts that Dees' testimony concerning Avelino Tajonera's work visa would aid the jury in understanding his work history and the likelihood of his future work in the United States.

It is undisputed that Avelino Tajonera and Ellroy Corporal entered the United States with B-1/OCS visas and that B-1 visas are valid for a period of six months. However, as noted by BEEOO, Tajonera Plaintiffs have not stipulated that Avelino Tajonera and Ellroy Corporal worked under B-1 visas, that those visas were authentic or that a B-1 visa lasts six months. Additionally,

---

[86] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

[87] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

even if such stipulations were entered, BEEOO asserts that without Dees there would be no witness to present the evidence to the jury or testify regarding the nature of those documents. While Tajonera Plaintiffs are correct that this evidence could be presented to the jury without Dees' testimony, the Court finds that Dees' testimony will aid the jury in understanding this evidence by providing some context for the immigration documents that would be absent from the record if the documents were simply offered into evidence by BEEOO.

Tajonera Plaintiffs also assert that Dees should not be allowed to testify regarding the length of time a B-1 visa is valid because this is a legal issue on which the Court could instruct the jury. In response, BEEOO contends that it intends to offer Dees' testimony concerning Avelino Tajonera's work visa to aid the jury in understanding his work history and the likelihood of his future work in the United States had he survived. BEEOO points to a portion of Dees' deposition testimony where she states that Border Patrol examines an individual's admissibility when he enters the United States on a B-1 visa, and part of the admissibility requirement is "non-immigrant intent."[88] It also points to a portion of Dees' deposition testimony where she explained that "[a] return within the next 6 months for 6 months will normally red flag your case by Customs and Border Protection where they would say you're really not entering as a non-immigrant anymore."[89] BEEOO notes that Dees admitted that Avelino Tajonera could legally return to the United States after only a few weeks in the Philippines, but in her opinion it was more likely that his re-entries would be more spread out based on his prior history of re-entering the United States.[90]

---

[88] Rec. Doc. 848 at 12.

[89] *Id.*

[90] *Id.*

Federal Rule of Evidence 704 states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." "The rule was enacted to change the old view that the giving [of] an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury."[91] The rule, however, does not "open the door to all opinions."[92] "The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions."[93] In *Owen v. Kerr-McGee Corp.*, the Fifth Circuit explained that "the task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one," requiring courts to exclude questions or answers from experts that "would supply the jury with no information other than the expert's view of how its verdict should read."[94]

To the extent that BEEOO intends to call Dees to testify regarding the immigration regulations applicable to Avelino Tajonera and Ellroy Corporal, such testimony is improper because the Court must instruct the jury on the applicable law. However, Dees, as an expert in the field of immigration, can explain to the jury the practices employed by Customs and Border Protection when granting admission into the United States. Dees' opinion that, while Avelino Tajonera could legally return to the United States after only a few weeks in the Philippines, it was more likely that his re-entries would be more spread out based on his prior history of re-entering the United States, will assist the jury in determining the loss of future wages claims. Tajonera

---

[91] *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[92] *Id.*

[93] *Id.*

[94] *Id.*

Plaintiffs may challenge such conclusions through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ."[95]

Finally, BEEOO intends to introduce testimony by Dees regarding the issues of prevailing wage raised by Plaintiffs' economist, Peter Nickerson. In its Order granting in part and denying in part the motions to exclude testimony of Peter Nickerson, the Court excluded testimony regarding the "prevailing wage," finding that such testimony was not relevant to any fact in dispute.[96] Accordingly, the Court will exclude Dees' testimony regarding the "prevailing wage."

## IV. Conclusion

For the reasons stated above, the Court concludes that Dees is qualified to testify as to the matters at issue in this case, and that any testimony regarding immigration practices employed by Customs and Border Patrol is admissible. However, the Court also concludes that testimony regarding the immigration regulations applicable to Avelino Tajonera and Ellroy Corporal is inadmissible as these issues are questions of law on which the Court must instruct the jury. Finally, the Court will exclude testimony regarding the "prevailing wage," as such testimony is not relevant to any fact in dispute. Accordingly,

---

[95] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[96] Rec. Doc. 1038.

**IT IS HEREBY ORDERED** that Tajonera Plaintiffs' "Motion to Exclude Testimony of Ashley Dees"[97] is **GRANTED IN PART** and **DENIED IN PART**.

**NEW ORLEANS, LOUISIANA**, this ___7th___ day of June, 2016.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[97] Rec. Doc. 836.